FILED
2008 Sep-08  AM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| ANTHONY BOYD, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Case No. 1:05-cv-01215-KOB-HGD |
| | ) | |
| DONAL CAMPBELL, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| | ) | |
| Respondent | ) | |

## **MEMORANDUM OPINION**

Petitioner, Anthony Boyd, a prisoner in the custody of the State of Alabama, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the validity of his 1995 conviction in the Circuit Court of Talladega County for capital murder. On March 16, 1995, the jury recommended that he be sentenced to death. On May 19, 1995, the trial court followed the jury's recommendation and sentenced Boyd to death, finding that the crime was aggravated by virtue of it being especially heinous, atrocious and cruel and that it was accomplished during the course of the kidnaping of the victim. In reaching this decision, the trial court found no non-statutory mitigating factors and only one statutory factor, that the defendant had no prior significant criminal history.

During the trial and direct appeal of this case, petitioner was represented by appointed counsel, William J. Willingham, an experienced attorney, and S. Dale Price, an attorney with no experience.

On June 15, 1995, trial counsel filed a Motion for New Trial or Reconsideration of Sentence.  (CR at 73).[1]  The motion was denied.  Petitioner appealed his conviction to the Alabama Court of Criminal Appeals and the Alabama Supreme Court, both of which affirmed his conviction and sentence.  The details of these proceedings are outlined *infra*.  That appeal was handled by trial counsel.

On October 20, 1999, Boyd, through new counsel, filed a motion for relief from his conviction and sentence pursuant to Rule 32, Ala. R. Crim. P.  The State responded by filing a motion to dismiss several of Boyd's claims and Boyd filed several motions for discovery.  On January 29, 2002, the State filed a Motion to Amend its answer to the petition.  (CR32 at 54).  The State simultaneously filed its Amended Answer.  (CR32 at 60).  In response, Boyd informed the Court that he intended to amend his original petition, which he did on May 15, 2002.  (CR32 at 570-636).  On June 19, 2002, a hearing was held on the State's motion to dismiss.  Boyd specifically addressed claims presented in the Amended Petition and, in addition, made an offer of proof in support of them.

---

[1] For purposes of this Report and Recommendation, references to documents contained in the Clerk's Record of the trial will be noted as "CR at <u>Bates Stamp Page Number</u>."  References to the trial transcript will be noted as "TR at <u>Transcript Page Number</u>."  References to the Clerk's Record of the Rule 32 proceedings will be noted as "CR32 at <u>Bates Stamp Page Number</u>" and the Rule 32 transcript will be referenced as "TR32 <u>Transcript Page Number</u>."  The Clerk's trial record is found in Volumes 1 through 10.  The Rule 32 records begin in Volume 11.

On July 8, 2002, the State filed an objection to the offer of proof and the amended petition, stating that petitioner was unnecessarily dilatory in making these claims and presenting the offer of proof.  (CR32 at 556-62).

The Offer of Proof and its contents were not initially part of the Clerk's Record in the Rule 32 proceedings due to the failure of the court reporter to retain them.  It was subsequently added by a Motion to Supplement the Record filed by petitioner during the appeal to the Alabama Court of Criminal Appeals of the trial court's denial of the Rule 32 petition.  *See* Vol. 15, State Court-Collateral Appeal Supplemental Transcript.  This Offer of Proof contains numerous statements of witnesses which petitioner believes support his claim of ineffective assistance of counsel.  All but one of these statements are signed by the witness and dated July 17 or 18, 2001.  However, one statement by Sharon Bush recanting her trial testimony is signed by her and dated September 19, 1999.

The State argued that the trial court would be well within its discretion to deny any amendment because of Boyd's lack of diligence.  As authority, the State cited *Miles v. State*, 845 So. 2d 830 (Ala. Crim. App. 2001), which, in turn, quoted from *Cochran v. State*, 548 So. 2d 1062, 1075 (Ala. Crim. App. 1989), for the proposition that an amendment to a Rule 32 petition may be disallowed if the petitioner fails to demonstrate due diligence.[2]

---

[2]  Subsequent to this filing, but before the appeal of the denial of  petitioner's Rule 32 petition, the Alabama Supreme Court explicitly overruled *Cochran* in *Ex parte Rhone*, 900 So. 2d 455 (Ala.  2004), holding that a petitioner seeking to amend a petition for postconviction relief does not have an initial burden of showing diligence in filing the amendment or that the facts underlying the amendment were unknown to him before filing of the original petition.

Subsequently, the trial court denied Boyd's original petition without addressing the matters set out in his amended petition or making a of lack of diligence or undue delay sufficient to deny the amendments. (CR32 at 454-504). It simply ignored the amended petition. Petitioner appealed to the Alabama Court of Criminal Appeals and to the Alabama Supreme Court, but was denied relief by each of these Courts for reasons presented *infra*. Thereafter, petitioner filed the instant petition seeking relief from his conviction and death sentence pursuant to 28 U.S.C. § 2254.

## FACTUAL BACKGROUND

The trial of this case began with the testimony of Jessie Smith. Smith testified that he went to the Hall Grove Ballpark in Talladega County on Sunday, August 1, 1993, with some friends. When he got to the ballpark, he discovered a body and called the Talladega County Sheriff's Office. (TR at 336-37). The scene was secured and evidence collected including photographs and two latent fingerprints. (TR at 431-33).

Marietta Prevost, a certified latent print examiner for the Alabama Department of Public Safety, testified that the prints matched those of Dennis Surrett, a police investigator. No prints were found of Boyd or others subsequently charged with him, including Quintay Cox, Shawn Ingram and Monique Marcel Ackles. (TR at 442-43). She also identified the victim as being Gregory Huguley. (TR at 448).

John Case, a forensic scientist for the Alabama Department of Forensic Sciences, examined debris and soil samples collected from the scene and the victim's body.  Case examined a charred board collected from near the victim's body.  He identified the presence of duct tape residue on the board.  (TR at 457, 459-62).  Case testified that the melting point for the polyester fibers used in making duct tape is more than 400° Fahrenheit.  (TR at 467-69).  Case also examined soil samples taken from various places at the scene.  He identified gasoline in a soil sample taken from the area of the victim's body.

Dr. Joseph Embry is a State Medical Examiner with the Alabama Department of Forensic Sciences.  (TR at 488).  He performed an autopsy on the body of the victim, Gregory Huguley.  He also collected evidence from the body of the victim.  (TR at 490-93).

Dr. Embry testified that his examination revealed that the victim's tongue, throat and epiglottis were all burned and swollen, and soot was in the victim's trachea.  According to Dr. Embry, this evidence indicated that the victim "was breathing the smoke that probably came from his body when his clothes were burning."  (TR at 495-96).  He also found evidence of tape on the victim's body, on his right forearm and across his mouth.  (TR at 496-97).  Dr. Embry found the cause of death to have been the result of thermal burns.

Samples from the fluids in the victim's body showed the presence of carbon monoxide, cocaine, cocaethylene and cocaine metabolites.  This finding reflected

that the victim had recently ingested alcohol and cocaine prior to his death.  (TR at 497).

Donique Cox also testified for the State.  He is the brother of co-defendant Quintay Cox.  (TR at 516).  Donique Cox testified that he was in Anniston, Alabama, at the Glenn Addie Apartments on July 31, 1993, when he had a conversation with Anthony Boyd.  Boyd told Donique that "they had found Greg." (TR at 517-18).  Boyd told him that "they" were riding on 15th Street in a van when they saw him, picked him up and took him to the ballpark.  Boyd told Donique that "they" killed him.  Donique did not know who "they" were.  (TR at 519).  Boyd further stated to Donique that "they shot him and set him on fire." (TR at 520).

Sabrina Mack also testified for the State.  According to Mack, about two weeks prior to July 31, 1993, she saw Boyd, Marcel Ackles and Shawn Ingram at the Glenn Addie Apartments.  She was asked if she had seen "New York," a nickname for the victim, Gregory Huguley.  She told them "no" and asked why. (TR at 540-41).  She testified that Ackles stated that "New York had took something from them."  (TR at 541).  Ackles said that Huguley had taken their dope.  (TR at 541).  Ackles further stated that "We tried to trust him but he done f----d up now."  (TR at 542-43).  One of the others stated "That's all right.  We will get his a--."  (TR at 543).

Amy Jernigan testified that she is Quintay Cox's aunt and she lives in Anniston, Alabama.  (TR at 552).  She testified that on July 31, 1993, she saw

Anthony Boyd between 5:00 and 5:30 p.m.  (TR at 552-53).  He asked her to page Quintay Cox, which she did.  He subsequently talked to Cox on the telephone and then walked over toward the Glenn Addie Apartments where she saw him approach Shawn Ingram.  (TR at 553-55).  Later, Quintay Cox came over to bring her some supplies to get her hair done.  He also asked to borrow her automobile.  (TR at 555).  She agreed to let him borrow it as long as he returned it by 9:30 or 10:00 p.m. so she could go out.  He later returned the automobile at about 9:15 p.m.  (TR at 555-56). According to Jernigan, Quintay Cox owned a gun that she described as looking like a MAC-11 owned by the Sheriff's Department.  (TR at 563).

Linda Green testified that she lives in Anniston, Alabama, and knew Gregory Huguley.  Green stated that she saw Huguley on 15th Street on July 31, 1993, in an area that surrounds a tree known as the "Happy Tree."  (TR at 565-66). While there, she observed a van pull up and saw someone with a gun get out.  The person was not Anthony Boyd.  (TR at 568-69).  The man with the weapon told Huguley to come over to the van and Huguley said "Please don't kill me."  (TR at 571).  She testified that the man with the gun said "Motherf----r, come here now!" Huguley replied "No, man.  I know you are going to kill me."  The man with the gun stated "If you don't come, I'm going to kill you right here."  He then grabbed Huguley and put him in the van.  (TR at 572).  At least ten people were standing around when this occurred.  (TR at 574).

Sharon Ackles also testified that she lived in Anniston and knows Boyd, Marcel Ackles, Quintay Cox and Shawn Ingram.  (TR at 581-82).  She and Marcel Ackles are first cousins.  (TR at 582).  According to Sharon Ackles, on July 31, 1993, she observed a blue van being used by Marcel Ackles.  She observed Ackles and the van on 15th Street on July 31, 1993, when it was still daylight.  (TR at 583-84).  The van was parked by the "Happy Tree."  (TR at 585).  She testified that the van did not have tinted windows and that she observed Anthony Boyd, "Cell" (Marcel Ackles), "Tay" (Quintay Cox) and Shawn (Shawn Ingram) inside the van.  (TR at 592).

Sharon testified that she saw Ingram get out of the van with a gun.  (TR at 587).  Ingram pointed the gun at "New York" (Gregory Huguley).  (TR at 587).  Ingram told Huguley not to make him "shoot nobody on 15th Street."  She did not hear a response from Huguley.  When she heard this, she went to hide.  (TR at 588).  She stated that she was across the street and about 15 to 20 feet away when she saw and heard this conversation.  (TR at 589).

Rod Connoway, an employee of Smitty's Auto Wholesale and Rental Cars, located in Anniston, Alabama, testified that the company's records show that Monique (Marcel) Ackles rented a 1987 Aerostar van on July 29, 1993.  (TR at 596-97).  It was due back on July 30, 1993, but was not returned until August 2, 1993, when it was left at the lot.  (TR at 598-99).  The van had been driven 708 miles.  (TR at 600).

Roderick Dye also testified that he was on 15th Street on the evening of July 31, 1993, sometime prior to sunset.  (TR at 601-03).  Dye observed a blue van pull up occupied by Boyd, Ackles, Ingram and Cox.  (TR at 605, 610).  Ingram exited the van.  (TR at 606).  However, Dye was not focused on what Ingram and the others were doing and did not notice whether Ingram had a gun in his hand.  (TR at 607).  At the time Ingram exited the van, "New York" was in the vicinity of the van.  (TR at 607-08).  He observed "New York" walk toward the van.  (TR at 611).  When Dye next looked, the van was leaving and Ingram and "New York" were gone.  (TR at 607-08, 613).

Lewis Butts also testified for the State.  He is a resident of Anniston, Alabama.  He testified to a conversation that he overheard outside the Glenn Addie Apartments a few days prior to the death of Huguley.  The overheard conversation occurred between Anthony Boyd, Shawn Ingram and Marcel Ackles.  According to Butts, Anthony Boyd made the statement that Huguley owed them money for drugs and they had to get him.  (TR at 616-18, 624-25).

Butts also testified that, in the early evening of July 31, 1993, he was in the area of the Happy Tree when he observed a van pull up.  He identified Marcel Ackles as the driver, Anthony Boyd as a passenger and Shawn Ingram in the back.  (TR at 619-21).  He did not notice Quintay Cox.  (TR at 621).  According to Butts, he next heard New York yell "I ain't getting in 'cause y'all goin' to kill me."  He heard Shawn Ingram reply "You're goin' to get in now, or I'll kill you now."  (TR at 622).  Butts then observed Ingram pull New York into the van.  (*Id.*).

The next witness called by the State was co-defendant Quintay Cox.  Cox had been called earlier but had refused to testify.  A hearing was held outside the presence of the jury where Cox, represented by counsel, was advised that he had entered into a plea agreement with the State to testify against Boyd in return for a recommended parole-eligible life sentence.  The court advised him that, if he persisted in his refusal to testify as he had previously agreed, he would be breaching the plea agreement and would be subject to prosecution for the capital offense and would face the possibility of being sentenced to death or life without parole.  (TR at 475-487, 670).

Subsequently, Cox apparently decided to testify and was called as a witness by the State.  (TR at 633).  Cox acknowledged that he was a co-defendant with Boyd in the murder of Huguley and was testifying pursuant to a plea agreement with the State.  The agreement provided that, in return for his truthful testimony, he would be allowed to plead to non-capital murder and would receive a sentence of life.  (TR at 634-35).

Cox testified that, on July 31, 1993, he first spoke to Boyd by telephone. He stated that Boyd advised him that he wanted to talk to him.  Cox proceeded to the Glenn Addie Apartments and met up with Boyd who advised him that he had been robbed and that he wanted Cox to help him find the person who had done this.  Cox testified that he got a gun from his aunt's house and that he and Boyd then proceeded to look for the person who robbed him.  (TR at 636-37).  The firearm he obtained was a MAC-11.  (TR at 637).

Thereafter, he, Boyd and Shawn Ingram then began to look for "Dexter." (TR at 637-38).  "Dexter" is later identified as Dexter Spinks.  (TR at 640).  They looked for about 30 minutes but did not find him.  (TR at 638).  They then came across Marcel Ackles who was driving a blue Astro van.  (TR at 638-39).  They all then proceeded in this one vehicle to look for Dexter.  They still could not find him.  (TR at 639).  After searching for about 15 minutes, they were proceeding down 15th Street  when Ingram spotted Gregory Huguley in the area around the Happy Tree.  (TR at 640-42).  At this time, Ingram jumped out of the van with the gun.  (TR at 642).  He told Huguley to come over to the van.  According to Cox, Huguley stated "Please don't kill me.  Just beat me."  (TR at 644).  According to Cox, Ingram did not reply but just grabbed Huguley and pushed him into the van. (TR at 645).  They then proceeded to Cooper Homes where Cox left the van and got his own car.  He then followed them to a gas station in the Munford, Alabama, area, near a ball field.  (TR at 647-49).

At the gas station, Ackles got out of the van and went into the store.  He then returned and pumped some gas into a plastic container.  (TR 650-51).  Ackles passed the gasoline through a window to Ingram and got back into the van.  (TR at 652).  Cox got out of his car and asked what was going on, but no one answered him.  (TR at 652-53).

They then proceed to the ball field where Ingram, still holding the gun, proceeded to remove Huguley from the van.  The others also exited the van and Cox exited his car.  (TR 653-54).  Ingram then made Huguley lie down on a bench

in the ball park.  (TR at 654).  Gray duct tape was used to tape Huguley.  Ackles taped his hands and mouth and Boyd taped his feet.  Before his mouth was taped, Huguley was begging not to be killed.  (TR at 657).  He was taped to the bench, face down.  (TR at 654).  Ingram then doused Huguley with gasoline and made a trail with gasoline for a foot or two from the bench.  (TR at 654-55).  Ingram then lit the trail of gasoline.  (TR at 655).

The match lit the gasoline which then set Huguley on fire.  They watched him burn for 10 or 15 minutes.  Eventually, Huguley's body rolled off the bench.  (TR at 656-58).  After this, Ingram and Ackles got into the van and Boyd got in Cox's automobile with him.  They proceeded back to Anniston.  On the way back, Boyd stated "Well, we all in this together now."  Cox dropped Boyd off at Glenn Addie Apartments and then went home.  (TR at 659-60).  He believes that he let Boyd out of his car sometime around 7:45 to 8:00 p.m.  It was dark at this time.  Cox testified that he went home and stayed for the rest of the evening.  (TR at 661).

During the cross-examination of Cox, an outburst from a spectator in the courtroom occurred.  The jury was removed to the jury room.  (TR at 673).  The spectator was removed from the courtroom.  Neither the trial judge nor counsel for petitioner could understand what the spectator said.  However, the judge offered to instruct the jury to ignore whatever it was.  (TR at 674).  When the jurors returned to the courtroom, the trial judge instructed them to ignore the outburst, but he did not individually poll the jurors on their ability to do so.  (TR at 677).

On cross-examination, Cox testified that all of the instructions were being given by Shawn Ingram and that Ingram was the only one who was armed, the one who instructed Ackles to get the gasoline, the one who gave the order to tape Huguley, the one who poured on the gasoline and the one who lit the match that set Huguley on fire.  Cox stated that he was afraid Ingram would shoot him if he did not do as he said.  (TR at 679-80).  After the testimony of Cox, the State rested its case-in-chief.  (TR at 691).

The first witness called by the defense was Willie Lynch.  Lynch testified that he went to the ball field where the death of Huguley occurred on July 31, 1993, and was there from 5:00 p.m. until almost dark.  He was there to watch a ball game.  He left when the game ended.  (TR at 699).  When he left, a few hundred people were still there.  (TR at 696-97).

Officer Nigel Raines testified next.  He stated that he had known Boyd a long time.  He further testified that, though not sure of the exact date, he chased Boyd through the Glenn Addie Apartments sometime between 6:00 and 8:00 p.m. in July 1993.  (TR at 701-02).  According to Raines, he did not make a report of this incident but was on the radio with his dispatcher during the chase advising about what he was doing. He checked for any radio logs for this time period but found that they are discarded after a certain period of time.  (TR at 704).  On cross-examination, Officer Raines conceded that he was uncertain even as to the month in which this incident occurred.  (TR at 705, 707).

Bertha Ackles testified that on July 31, 1993, her niece Sharon Ackles lived with her. She testified that, during that day, Sharon never left the area of her house but only walked up and down the block in front of the house. (TR at 710-11). She is the mother of co-defendant Monique Marcel Ackles. (TR at 712). Despite a witness sequestration order, Bertha Ackles was in the courtroom when Sharon Ackles testified. (TR at 714).

Ms. Willie Watson was called as the next witness for the defense. Her birthday is July 31 and a friend gave her a birthday celebration on that date in 1993. (TR at 716). She knows Anthony Boyd and saw him at her party at around 10:00 or 11:00 that night. (TR at 717).

Catherine Jones lives in Anniston at the Glenn Addie Apartments. She gave the party for Ms. Watson on July 31, 1993. The party started about 9:00 p.m. However, most people did not begin to arrive until about 9:30 p.m. She knows Boyd and saw him at the party between 10:00 and 11:00 p.m. Ms. Jones first saw him on her front porch with Quintay Cox. She invited them in. (TR 720-21, 723).

Felicia Jones testified that she was also at this party. According to Felicia Jones, she arrived at the party at about 7:00 p.m. People were already there when she arrived. About five or ten minutes after she arrived she observed Boyd at the party. The last time she saw him that evening was around 10:30 or 11:00 p.m. when she left to go home. (TR 725). When she saw Boyd, Quintay Cox was with him. (TR at 727).

Felicia Parker is Catherine Jones' daughter. She also went to Ms. Watson's party. Although she does not recall when she arrived, it was after dark. (TR 729-30). She recalled seeing Boyd at the party, but could not recall what time it was. (TR at 730).

Charlene Wolfe, another daughter of Catherine Jones, testified that she also recalls that Anthony Boyd was at the party. However, she was too drunk to remember any details. (TR at 732-33).

Tracy McDonald also went to Ms. Watson's birthday party on July 31, 1993. She arrived with her boyfriend, Pierre Jones, at about 9:00 p.m. She was at the party for approximately two hours when she observed Boyd. When she left the party at about 12:30 or 1:00 a.m., he was still there. Quintay Cox was also present at the party with Boyd. (TR at 735-37).

Lagunia Pearson testified that she was Boyd's girlfriend in 1993. She saw him at about 11:30 p.m. on July 31, 1993 when he came to her home accompanied by Ackles and Donique Cox. They were in a van driven by Ackles. She and Boyd were dropped off at the Executive Inn of Oxford where they remained for the rest of the night. (TR 739-41).

The State and the defendant stipulated that official sunset on July 31, 1993, was at 7:46 p.m. C.D.T. (TR 744-45).

After closing arguments and receiving the Court's charge, the jury retired to consider the evidence. They subsequently returned a verdict finding Boyd guilty

of capital murder.  A poll of the jury reflected that the verdict was unanimous.
(TR 836-37).

The case then proceeded to the punishment phase.  The State presented no
additional evidence at this stage.  (TR at 851).

The defense called several witnesses at the punishment phase of the trial.
The first witness called was Teresa Gilbert.  She testified that she had known
Boyd for six or seven years and that he had watched her two children on a number
of occasions.  He was a positive influence in their lives.  He also would cut hair
for children in the neighborhood and participated in sports with little boys at the
Glenn Addie Youth Center.  She testified that she believed his life was worth
saving.  (TR at 853-54).

Velma Northard testified that she had known Boyd for 16 or 17 years.  He
grew up with her boys.  She stated that he was always very quiet and got along
well with other kids in the neighborhood.  She believed that he had a positive
influence on her children and asked the jury to spare his life.  (TR at 855-57).

Roderick Henderson is Velma Northard's son.  He testified he had known
Boyd for about 15 years and lived with him for about three years after his mother
kicked him out for selling drugs.  (TR at 858-59).  He testified that Boyd was a
positive influence on him.  He, Boyd and others helped clean up and decorate a
basketball court.  (TR at 859).  Henderson testified that he was asking the jury to
spare Boyd's life because he had always been a positive role model and was
always looking out for kids in the community.  (TR at 860).

James C. Brown testified that he worked with Boyd for eight or nine months at Glenn Franklin Wood Products approximately three to four years before.  He described Boyd as a good person to work with.  (TR at 862-63).  Brown stated that he considered Boyd to have been a positive influence in his life while he worked with him and asked the jury to spare his life.  (TR at 863-64).

Durane Allen also testified that Boyd was a good influence on people and kids in the comunity and asked the jury to spare his life.  (TR at 865-67).

Barbara Franklin testified that she had employed Boyd at her business, Franklin Wood Products, from September 21, 1991, to May 15, 1992.  She described him as "a very average person."  (TR at 868).  He got along with his co-employees extremely well and never caused any problems.  She testified that she believed he was a positive influence around the workplace and asked the jury to spare his life.  (TR at 869-70).

William H. Butler testified that he worked at the Glenn Addie Community Center and knew Boyd during the time he was employed there.  Boyd had coached a ten-and-under basketball team for at least three years and had been awarded a plaque of appreciation for his efforts.  He testified that Boyd had been a positive influence on the kids and asked the jury to spare his life.  (TR at 870-72).

Walter DeWayne Garrett testified that he had known Boyd for between 13 and 14 years.  They coached at the same time.  He considered Boyd to have been a positive influence on the kids and asked the jury to spare his life.  (TR at 873-75).

Lagunia Pearson was recalled to the stand.  She testified that, after Boyd was arrested, she had given birth to a daughter.  She stated that she wanted her daughter to have Boyd around.  She stated that she did not know if Boyd could be a good influence on their daughter from jail, but said that he had been a positive influence on her and asked the jury to spare his life.  (TR at 876-77).

Gretta Parker testified that she used to go to school with Boyd and that they had a child together who was four years old.  She testified that Boyd was a good father and a good influence on their daughter.  She asked the jury to spare his life. (TR at 878-79).

Patricia Ann Boyd McGrew testified that she was Boyd's mother.  She stated that he had never given her any problems.  He went to the twelfth grade in school.  According to Ms. McGrew, Boyd was never a violent person and she believed he could be a positive influence on the family even from jail.  She described him as a caring brother to his younger brother and a good father to his oldest daughter.  (TR at 881-82).

Emma Boyd testified that she was Anthony Boyd's grandmother.  She stated that he was a good grandson who helped take care of her when he was working. He got along with everyone and finished high school.  She asked the jury to spare his life.  (TR at 883-84).

Sylvester Maurice Boyd is Anthony Boyd's then-11-year-old brother.  He testified that Boyd coached his basketball team and helped him with school and

homework.  He testified that Boyd spent time with him and took him to places like the movies and Six Flags.  (TR at 885-87).

Sylvester McGrew testified that he had been Boyd's stepfather since Boyd was four years old.  He stated that he had never had any disciplinary problems with him and believed he had been a positive influence on his son, Sylvester.  He asked the jury to spare his life.  (TR at 888-89).

After further arguments by the parties regarding the appropriate sentence, the Court charged the jury on the law it was to follow to reach a verdict.  After consideration of the evidence, the jury returned a verdict recommending a sentence of death by a vote of ten-to-two.  The jury was polled and this was determined to be the correct verdict.  (TR at 943-44).

On May 19, 1995, a sentencing hearing was held before the trial judge.  No further evidence was presented by either side.  Boyd was asked if he had anything to say before sentencing and he asked that his life be spared.  Thereafter, in accordance with the recommendation of the jury, the court sentenced Boyd to death by electrocution.  (TR at 947-52).

In its sentencing memorandum, the trial court found two statutory aggravating circumstances: that the crime was committed while petitioner was engaged in the commission of a kidnaping and that the crime was especially heinous, atrocious and cruel compared to other capital offenses.  (CR at 75-76).

The trial court found as a mitigating factor that petitioner had no significant prior criminal history.  (CR at 77).  The trial court found no other statutory or non-

statutory mitigating factors to exist.  (CR at 78).   Thereafter, the trial court

concluded that the appropriate sentence was death by electrocution.  (CR at 79).

## POST-TRIAL PROCEEDINGS

### Motion for New Trial

On June 15, 1993, Boyd's trial counsel filed a Motion for New Trial or

Reconsideration of Sentence.  (CR at 73).  He listed the following grounds:

1.  That the verdict of the jury was contrary to the weight of the evidence;

2.  That the verdict was contrary to the law and evidence in the case;

3.  That the Court erred in denying the defendant's *Batson* motion;

4.  That the Court erred in failing to sustain each and every motion made by the defendant during the course of the trial;

5.  That the Court erred in allowing into evidence State's Exhibits 24, 25, 26, 30, 31, 32, and the pictures taken of the autopsy, including Exhibits 72-93;

6.  That the Court erred in denying the Defendant's motions to exclude the evidence presented by the State;

7.  That the sentence is in violation of the Eighth Amendment to the U.S. Constitution against cruel and unusual punishment; or, in the alternative, is not in keeping with the spirit of the Eighth Amendment;

8.  That the sentence is not consistent with the facts of the crime as alleged; and

9.  That the sentence is unwarranted under the evidence and is in violation of the laws of the State of Alabama in that the mitigating circumstances outweighed the aggravating circumstances.

A hearing on the motion took place before the trial court on August 17,

1995.  Trial counsel for Boyd made a short argument to the trial court essentially

reiterating the contents of his written motion.  (TR at 954-55).  Thereafter, the trial

court denied the motion.  (TR at 956).

## **Direct Appeal**

Petitioner then appealed his conviction and sentence to the Alabama Court

of Criminal Appeals.  He made the following claims:

I.  His conviction was obtained by the admission of irrelevant and
prejudicial penalty phase evidence at the guilt phase of the
proceedings (autopsy photographs);

II.  The State's use of its peremptory challenges discriminated on the
basis of gender and race;

III.  The trial court failed to instruct the jury on the lesser-included
offense of felony murder;

IV.  The trial court erred in denying Boyd's motion for a continuance;

V.  The State improperly used evidence of prior bad acts and bad
character against Boyd;

VI.  The trial court failed to consider mitigating evidence and
improperly failed to find that many mitigating circumstances existed;

VII.  The trial court gave an improper kidnaping instruction;

VIII.  The trial court's instructions regarding aggravating
circumstances were improper;

IX.  Prosecutorial misconduct including:

A.  The prosecutors improperly told the jury not to
consider evidence favorable to Boyd;

B.  The prosecutors prejudicially contrasted Boyd's
constitutional rights with the rights of the victim;

C.  The prosecutors obtained a conviction and death
sentence on the basis of inadmissible hearsay;

D.  The prosecutors asked so many leading questions that, in essence, they testified for the State's most crucial witnesses; and

E.  The prosecutors improperly expressed their personal opinions on the sufficiency of the evidence and Boyd's guilt;

X.  The trial court improperly granted the State's challenges for cause;

XI.  The trial court improperly excluded venire members from serving on the jury;

XII.  The trial court's reasonable doubt instruction was unconstitutional;

XIII.  The trial court erred in instructing the jury that it could infer Boyd's guilt based on flight to avoid prosecution;

XIV.  The trial court failed to inform the jury that they could consider mercy and sympathy in determining whether Boyd should be sentenced to death;

XV.  The jury's general verdict recommending death failed to specify which, if any, statutory aggravating circumstances were found;

XVI.  The capital sentencing statute is unconstitutional because it does not state what weight the court should give the jury recommendation in its consideration of a sentence;

XVII.  The State failed to prove accomplice corroboration at Boyd's trial;

XVIII.  The trial court should have ordered a change of venue for Boyd's trial;

XIX.  The trial court should have conducted fully sequestered voir dire;

XX.  The evidence presented at Boyd's trial was insufficient to support a capital murder conviction;

XXI.  The double counting of kidnaping as an element of the capital offense and as an aggravating factor was improper;

XXII.  The jury's sense of responsibility was diminished when the trial court and the prosecutors told the jury that its sentence would only be a recommendation;

XXIII.  The Alabama statute limiting court appointed attorney's fees to $1000 for out-of-court work in each phase of capital cases violates State and federal constitutional law;

XXIV.  The manner of execution used by the State of Alabama constitutes cruel and unusual punishment; and

XXV.  The cumulative effect of all the above listed claims of error entitles Boyd to a new trial and sentencing hearing under State and federal law.

(CR at Vol. 7, Appellant's Brief).

The Alabama Court of Criminal Appeals addressed each of the issues raised by Boyd, except issue VIII (regarding the trial court's charge regarding aggravating and mitigating circumstances) and found each to be without merit. *Boyd v. State*, 715 So. 2d 825, 851 (Ala. Crim. App. 1997).

The first claim considered by the appellate court was Claim I regarding the admissibility at the trial stage of photographs of the victim.  The Court of Criminal Appeals held that the trial court committed no error in admitting these photographs into evidence at trial, citing numerous prior holdings regarding similar photographs.  *E.g., Dabbs v. State*, 518 So. 2d 825 (Ala. Crim. App. 1987) (holding that photographs taken of victim's head injuries during autopsy were gruesome but necessary to demonstrate extent of injuries).  *Boyd*, 715 So. 2d at 832-33.

The Court next considered Claim II, that the State's peremptory challenges were discriminatory as to both race and gender.  The Court of Criminal Appeals reviewed the transcript of the jury selection proceedings and upheld the trial court's conclusion that petitioner failed to make a case showing racially discriminatory strikes by the State.  *Id.* at 833-36.

Boyd's claim that the State engaged in gender-based discrimination in removing females from the jury with peremptory challenges was also held to be without merit.  After a review of the strikes, the Court upheld the trial court's conclusion that there was no showing of purposeful discrimination by the State. *Id.* at 836.

Boyd next argued that the trial court erred when it failed to charge the jury on the lesser-included offense of felony-murder.  The appellate court noted that the record indicated that the trial court instructed the jury on the lesser-included offenses of intentional murder and kidnaping in the first degree.  The appellant did not object to the trial court's failure to charge the jury on felony-murder. Therefore, the claim was analyzed under the plain error rule, Rule 45A, Ala.R.App.P.  The appellate court concluded that there was no evidence presented at trial to support a charge on felony-murder and no evidence that petitioner was forced to participate in the offense.  The State's evidence indicated that petitioner was a willing participant in the offense.  The appellate court also cited § 13A-1-9(b), *Code of Alabama* (1975), which states "The Court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict

convicting the defendant of the included offense."  It further noted that, pursuant to § 13A-3-30(d)(2), *Code of Alabama* (1975), the defense of duress is inapplicable to a charge of capital murder and therefore could not support a lesser-included offense instruction in a capital murder case where such an instruction would be based on that theory.  *Boyd*, 715 So. 2d at 836-37.

The next claim pursued by petitioner was that the trial court committed reversible error in denying his motion for a continuance.  The appellate court reviewed the record concerning the times and events that occurred between the time petitioner was indicted and the beginning of trial.  It concluded that there was no indication in the record that the appellant was deprived of any witness, evidence or investigation.  He presented testimony of a number of witnesses at both stages of the trial.  Furthermore, it noted that petitioner never made a showing of the anticipated evidence that he would have obtained from a continuance.  Likewise, no showing was made that petitioner was prejudiced by receiving the grand jury transcripts the week before trial, especially since the record reflected that counsel for petitioner at trial was able to use some of the testimony in these transcripts for the cross-examination of witnesses at trial.  Consequently, no error arose in denying the continuance.  *Id.* at 837-38.

Petitioner next argued that the State improperly used evidence of prior bad acts and bad character against him.  He referenced testimony from a witness concerning the victim's kidnaping, implying, he argued, that he was a drug dealer.  The record reflects that a number of witnesses testified that the victim had been

threatened by petitioner because the victim owed him and the accomplices money for drugs he had purchased from them.  Testimony was also present that the victim was a drug runner for Boyd.

The Court of Criminal Appeals held that the evidence concerning the furnishing and selling of drugs by petitioner and the victim was admissible as evidence of motive.  Furthermore, petitioner did not object to the admission of this testimony and elicited similar testimony concerning the victim.  Because this evidence was admissible, no error occurred in its admission.  *Id.* at 838-39.

The appellate court also found that petitioner's claim that the trial court should have found additional mitigating circumstances was without merit.  *Id.* at 839-40.

Petitioner also argued that the prosecutors obtained his conviction with inadmissible hearsay.  He cited testimony from a witness who stated that he heard the victim pleading for his life as he was being kidnaped.  The appellate court noted that petitioner's trial counsel made no objection to the admission of this testimony or its subsequent use in closing arguments.  It held that this testimony was admissible as a spontaneous exclamation.  *Id.* at 840-41.

Petitioner also argued that the prosecutors improperly expressed their personal opinions concerning the sufficiency of the evidence and petitioner's guilt by using terms such as "I think the State has proved to you beyond a reasonable doubt."  The Court of Criminal Appeals held that, when these comments were read in the context of the entire argument, it was clear that the statements were

legitimate inferences from the evidence.  Therefore, there was no error.  *Id.* at 841.

Petitioner also argued that the trial court improperly granted the State's challenges for cause of certain jurors.  Four jurors were excused because they held a fixed opinion against capital punishment.  Three stated that they would not be able to put aside their personal views against capital punishment and follow the law in a case involving the death penalty.  The other potential juror stated "I'm opposed to the death sentence."  This juror then gave an equivocal response concerning whether her views would impair her performance as a juror but, in follow-up questioning, stated that her views on capital punishment would interfere with her ability to consider the death sentence.  *Id.* at 842.

The Court of Criminal Appeals held that, pursuant to *Wainwright v. Witt*, 469 U.S. 412, 105 S. Ct. 844, 83 L.Ed. 2d 841 (1985), these potential jurors were properly excused.  The proper standard to be applied was whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  *Id.* at 424, 105 S. Ct. at 852.  The appellate court found that, under this standard, the challenges for cause were properly allowed.  *Boyd*, 715 So. 2d at 842.

The Court of Criminal Appeals also addressed petitioner's claim that the trial court improperly excluded venire members for reasons not listed in § 12-16-60, *Code of Alabama* (1975).  Specifically, petitioner was referring to individual jurors who requested to be excused because of their personal circumstances and hardships.  After  reviewing the record and the reasons given by these jurors, the

appellate court found that there was no abuse of discretion by the trial court in allowing these potential jurors to be excused. *Id.* at 842-43.

Petitioner also challenged the trial court's instruction on reasonable doubt, claiming that the instruction was unconstitutional in light of *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990). The appellate court noted that petitioner made no objection to this instruction at trial. It further noted that the standard announced in *Cage* had been overruled. *Boyd*, 715 So. 2d at 843. *See Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).[3]

Examining the trial court's reasonable doubt instruction in the context of the entire oral jury charge, the Court of Criminal Appeals held that there was no reasonable probability that the jury could have reached its verdict based on factors other than the evidence presented or that the jurors would have applied this instruction on an improper fashion. Therefore, it denied relief on this claim. *Boyd*, 715 So. 2d at 843-44.

Petitioner also objected to the trial court's instruction to the jury that it could infer guilt based on petitioner's flight to avoid prosecution. The appellate court held there was sufficient evidence of flight to justify the giving of this instruction. *Id.* at 844-45.

---

[3] In *Estelle*, 502 U.S. at 72 n.4, 112 S. Ct. at 482 n.3, the Supreme Court reasserted that the standard to be applied is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380, 110 S. Ct. 1190, 1198, 108 L. Ed. 2d 316 (1990).

Petitioner next argued that the trial court erred when it failed to inform the jury that it could consider mercy and sympathy in determining whether Boyd should live or die.  The appellate court noted that petitioner did not request such a charge or object to its omission at trial.  It also noted that the jury was instructed that it should base its verdict only on the evidence and that there was no place for the influence of passion, prejudice or other arbitrary factors in their deliberations. The Court of Criminal Appeals held that the instructions, as given, were correct and had been upheld against constitutional challenges in *California v. Brown*, 479 U.S. 538, 543, 107 S. Ct. 837, 840, 93 L. Ed. 2d 934 (1987).  *Boyd*, 715 So. 2d at 845-46.

Petitioner also argued that the prosecutor improperly argued to the jury that it should avoid acting out of sympathy to petitioner.  The appellate court held that this claim was without merit, citing Alabama case law and *Brown*, 107 S. Ct. at 840.

The Alabama Court of Criminal Appeals quickly disposed of petitioner's claim that the jury's verdict recommending the death sentence was improper for failing to specify which statutory aggravating circumstances were found.  It held that there is no statutory or constitutional requirement that the jury make specific findings as to aggravating circumstances during the sentencing phase of a capital murder case in Alabama.  *Boyd*, 715 So. 2d at 846.

Petitioner further argued that the Alabama capital sentencing statute was unconstitutional because it fails to state what weight the court should give to the

jury's recommendation as to sentencing in its consideration of a sentence.  The
Court noted that petitioner failed to raise this issue at trial.  It then held that there
is no constitutional violation arises by a statute requiring a trial court to consider a
jury's verdict and trusting the trial court to give it proper weight, citing *Harris v.
Alabama*, 513 U.S. 504, 115 S. Ct. 1031, 130 L. Ed. 2d 1004 (1995).  *Boyd*, 715
So. 2d at 846.

The appellate court also rejected petitioner's claim that the State failed to
corroborate his accomplice's testimony at his trial, in violation of § 12-21-222,
*Code of Alabama* (1975).  After reviewing the evidence, the Court concluded that
sufficient evidence existed of corroboration under State law.  This claim was held
to be without merit.  *Boyd*, 715 So. 2d at 846-47.

Petitioner also argued that the trial court should have ordered a change of
venue because of prejudicial pretrial publicity.  The Court of Criminal Appeals
noted that petitioner failed to make such a motion at trial.  It also held that no
indication in the record suggested any prejudicial pretrial publicity concerning the
offense.  During voir dire, jurors were asked whether they had read or heard
anything about this event.  Of those potential jurors who indicated that had some
prior knowledge, only one indicated that she could not put what she had read out
of her mind.  She was excused.  The remaining jurors all stated that they could
decide the case based on the evidence at trial.  Under these circumstances, the
appellate court found this claim to be without merit.  *Id.*

The appellate court also quickly disposed of petitioner's claim that the trial court should have conducted a fully sequestered individual voir dire of the potential jurors because of excessive and pervasive pretrial publicity. The Court of Criminal Appeals noted that the venire was divided into three panels for separate examination. Following this, there was some individual questioning of jurors who gave certain responses, including whether they had seen or heard any pretrial publicity. It concluded, after a complete review of the record concerning the voir dire questioning, that this method of conducting voir dire was proper. *Id.* at 848-49.

Petitioner also challenged the sufficiency of the evidence upon which his conviction was based. The Court of Criminal Appeals reviewed the evidence against petitioner and concluded that there was sufficient evidence to support the verdict in this case. *Id.* at 849.

Petitioner next challenged the "double-counting" of kidnaping as an element of the capital offense and as an aggravating circumstance to justify a death sentence. However, the appellate court noted that the use of an element of the underlying offense as an aggravating factor is constitutional, citing, among other cases, *Lowenfeld v. Phelps*, 484 U.S. 231, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988), and *Brown v. State*, 651 So. 2d 641, 657-58 (Ala. Crim. App. 1993).

Boyd also claimed that the jury's sense of responsibility was diminished when it was told that its sentence would only be a "recommendation." The Court noted that petitioner failed to raise this issue at trial. It held that, after a review of

the record, these comments were not intended to, and did not, serve to diminish the jury's sense of responsibility in arriving at its advisory verdict. Therefore, this claim was held to be without merit. *Boyd*, 715 So. 2d at 850-51.

Petitioner next asserted that the Alabama statute limiting fees of court-appointed attorneys to $1000 for out-of-court work in each phase of a capital case violated state and constitutional law. However, the appellate court noted that this same argument had been repeatedly rejected in prior decisions. Therefore, this claim was without merit. *Id.* at 851.

The appellate court also found petitioner's claim that death by electrocution was unconstitutional to be without merit, based on previous holdings by that Court. *Id.*

Boyd also argued that the cumulative effect of all the above-listed claims of error was prejudicial and entitled him to a new trial and sentencing hearing under State and federal law. However, the Court held that, because no single instance of alleged improper conduct constituted reversible error, the Court would not consider the cumulative effect to be greater error. *Id.*

The Court also performed its statutorily-mandated duty to search the record of the trial for any error not asserted by petitioner. *Id. See* § 13A-5-53, *Code of Alabama* (1975). It found that the record reflected petitioner's sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor. Furthermore, it performed a proportionality review and found, after independently weighing the aggravating and mitigating circumstances, that petitioner's death

sentence was an appropriate sentence.  It found that the sentence was not disproportionate nor excessive when compared to the sentences imposed in similar cases.  *Boyd*, 715 So. 2d at 851-52.

Finally, the Court of Criminal appeals stated that it had searched the entire record for any error that might adversely affect petitioner's substantial rights and found none.  Therefore, the judgment of the circuit court was affirmed.  *Id.* at 852.

Boyd then petitioned for review by the Alabama Supreme Court, making the same claims raised in his appeal before the Alabama Court of Criminal Appeals. (CR at Vol. 8, Petition for Writ of Certiorari to the Alabama Supreme Court).

The Alabama Supreme Court considered the issues and issued an opinion specifically addressing three of Boyd's claims.  *Ex parte Boyd*, 715 So. 2d 852 (Ala. 1998).  These claims were (1) the claim that the autopsy photographs were punishment phase evidence improperly admitted at the trial stage of the proceedings, (2) the claim that the court's kidnaping instruction was inadequate, and (3) the claim that the trial court miscalculated Boyd's age therefore improperly failing to consider his young age as a mitigating factor.

The Supreme Court found these issues to be without merit and adopted the opinion of the Alabama Court of Criminal Appeals in affirming Boyd's conviction of the capital offense and the death sentence imposed in the case.  The Supreme Court also reviewed the record for evidence of passion or prejudice and found none.  It also concluded that the trial court and the Court of Criminal Appeals properly weighed the mitigating and aggravating circumstances and that Boyd's

death sentence was proper and proportional to the penalties imposed in similar

cases. *Id.* at 856.

## State Collateral Proceedings

On October 20, 1999, petitioner, now represented by new counsel, filed a

Petition for Relief From Conviction and Sentence Pursuant to Rule 32 of the

Alabama Rules of Criminal Procedure.  (CR32 at 391-432).  The claims for relief

contained in that initial petition are as follows:

**I.  Ineffective Assistance of Counsel at the Guilt and Penalty
Phases of Trial Due to:**

**A.  Grossly Inadequate Compensation.**

In this claim, petitioner alleged that the $1000 cap and $20 per hour rate of

compensation for out-of-court work for each phase of the trial was inadequate and

resulted in defense counsel going uncompensated for work done in excess of 50

hours.  No details were provided as to how this lack of compensation specifically

affected trial counsel's ability to prepare for the guilt or punishment stage of the

proceedings.

**B.  The Court's Denial of Boyd's Motion for a
Continuance.**

In this claim, petitioner asserted that he was forced to go to trial without

adequate time to investigate the case and prepare his defense.  Defense counsel

moved for a continuance because his mitigation investigation was not complete.

Furthermore, the trial was due to commence on March 13, 1995, and the State did

not turn over grand jury testimony until March 6, 1995.  Finally, one of Boyd's

attorneys was not appointed until February 17, 1995, less than a month before the beginning of the trial.

Although petitioner cited law indicating that due process requires that a defendant be given an adequate time to prepare for trial, he did not provide any details as to how this failure to receive a continuance prejudiced him in the preparation for the guilt phase of the trial. Although he specified that he needed more time to prepare for the penalty phase of the trial, he failed to show how this affected his ability to present evidence favorable to petitioner at the penalty phase of the trial.

## C. Ineffective Assistance of Trial Counsel

### 1. Trial Counsel Failed to Adequately Investigate and Challenge the State's Capital Murder Charge Against Boyd.

In this claim, petitioner claimed that trial counsel failed to thoroughly investigate each and every avenue of defense available to Boyd. He alleged that trial counsel failed to interview their own witnesses prior to trial, uncover exculpatory evidence, contest the constitutionality of his arrest or adequately cross-examine witnesses. Petitioner also made claims that his trial counsel failed to investigate the circumstances surrounding the case and failed to uncover critical exculpatory evidence. He also claimed that trial counsel failed to adequately examine or cross-examine a number of witnesses during the trial.

### 2. Trial Counsel Failed to Procure Necessary Expert Assistance.

Petitioner alleged that trial counsel failed to procure expert testimony to counter the testimony presented by the State regarding the victim's death.

However, once again petitioner failed to provide any details as to what expert testimony the defense team could have obtained or how it would have helped petitioner's case.

### 3.  Trial Counsel Failed to Present, Adequately Argue and Obtain Favorable Rulings on Numerous Motions.

#### a.  Trial Counsel Failed to Object to the Court's Failure to Give a Lesser-Included Offense Instruction.

Petitioner asserted that trial counsel failed to object to the trial court's failure to give a lesser-included offense charge of felony murder despite the evidentiary support for such a charge.  Petitioner incorporated issue IV, *infra*, by reference.

In Issue IV, *infra*, petitioner objected to the trial court's failure to give the lesser-included felony murder instruction.  Petitioner stated that part of his defense at trial was that he was not a willing participant in the kidnaping of the victim and that it was not he, but co-defendant Ingram, who started the fire that killed the victim.  He asserted that, given the strong leadership role of Ingram and the fact that he was the one who started the fire, the jury likely believed that Boyd was guilty of felony murder.

#### b.  Trial Counsel Failed to Challenge the Court's Unconstitutional Reasonable Doubt Instruction.

In this claim, petitioner alleged that the trial attorneys failed to object to the court's unconstitutional instructions on reasonable doubt.  He alleged that the reasonable doubt instruction improperly allowed the burden of proof to be shifted

back to petitioner.  No further specifics are provided.  However, he incorporated Issue XII, *infra*, by reference.

In Issue XII, *infra*, petitioner asserted that the trial court's reasonable doubt instruction was unconstitutional.  He objected to the trial court's use of the term "moral certainty" in its instruction, claiming that it violated the standard set out in *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072-73, 25 L. Ed. 2d 368 (1970).  He also objected to the trial court advising the jury that a reasonable doubt is "a doubt for which a reason can be assigned."  (CR at 256).  He asserted that this language is improper because it requires jurors to be capable of articulating or "assigning" a reason for acquittal.  He stated that, ultimately, the court's reasonable doubt instruction shifted the burden of proof to Boyd to assign the reason for the doubt and that this shift is unconstitutional.

### c.  Trial Counsel Failed to Object to the Court's Improper Kidnaping Instruction.

In this claim, petitioner asserted that trial counsel were ineffective because they failed to object to the court's kidnaping charge which, they alleged, failed to define a key element of the offense.  He did not state which element was not defined in this claim but incorporated by reference Issue VII, *infra*, of his petition.

In Issue VII, *infra*, petitioner noted that he was charged with an intentional murder during the course of an abduction with the intent to inflict physical injury or to terrorize.  The trial court never defined the word "terrorize," except to tell the jurors to use their common judgment and understanding as to what this word means.  (CR at 817).  Petitioner asserted that this instruction violated the

requirement that the jurors in a capital offense be instructed as to each element of the offense.  He claimed that this omission violated his constitutional rights to due process and a fair trial as protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments and the Alabama Constitution.

### d.  Trial Counsel Failed to Object to the Court's Improper Instructions Concerning Aggravating Circumstances.

In this claim, petitioner alleged that trial counsel were ineffective for failing to object to the trial court's instruction regarding aggravating circumstances, which he alleged made the aggravating circumstances seem weightier than they should have been.  He gave no further details concerning this claim other than to incorporate by reference Issue VIII, *infra*, of his petition.

Issue VIII, *infra*, alleged that the trial court's instructions regarding aggravating circumstances were improper.  He claimed that, in this case, the trial court gave too much weight to the aggravating circumstances by telling the jury on six different occasions that an aggravating circumstance had already been found by the guilty verdict.  In contrast, petitioner noted that the trial court only instructed the jury about mitigating circumstances once.

In addition, he asserted that the trial court told the jury that the statute listed eight aggravating circumstances, thus allowing them to consider aggravating circumstances that did not apply to the case.  In a footnote, petitioner also claimed that the court's instruction constituted a violation of his right to be free from double jeopardy.  According to Boyd, this instruction violated his constitutional rights.

### e.  Trial Counsel Failed to Object to the Court's Improper Granting of the State's Challenges for Cause.

Petitioner asserted that the trial court improperly excluded several jurors from serving on the jury, without objection from defense counsel.  He stated that such exclusion violated his constitutional rights.  He gave no details but incorporated by reference Issue X, *infra*, of his brief.

In issue X, *infra*, petitioner asserted that the jurors excluded by the State's challenges for cause were excluded despite the fact that they "indicated they could follow the law even though they had opinions about the death penalty."  (Petition at 35).  According to petitioner, these jurors' answers to voir dire questions did not demonstrate that their views would "prevent or substantially impair" the performance of their duties in accordance with the court's instructions.  However, petitioner makes no citation to the record of any of the voir dire proceedings that back up this claim.  Nonetheless, he asserted that this action by the trial court violated his constitutional rights.

### f.  Trial Counsel Failed to Object to the Improper Exclusion of Venire Members from Serving on Mr. Boyd's Jury.

Petitioner claimed that the trial court improperly excused two venire members, Pilkington and Pruit, for reasons not listed in the appropriate statute of the Alabama Code.  In support of this claim he incorporated by reference Issue XI, *infra*, of his petition.

In Issue XI, *infra*, petitioner stated that the trial court excused venire member Pruit because he stated that it would be hard for him to serve because of

employment responsibilities.  (CR at 67).  He also asserted that venire member Pilkington was improperly removed because of problems finding someone to look after her children although she stated that she "could possibly" have someone else look after them.  (CR at 72).

Petitioner also objected to the excusing of venire member Crawford because he was taking final exams, and venire members McDonald and Drewberry "for reasons not specified in the statute." (Petition at 36).  However, petitioner's claim that trial counsel were ineffective because they failed to object to the excusing of certain jurors did not include jurors Crawford, McDonald or Drewberry.

### g.  Trial Counsel Failed to Request that the Court Individually Voir Dire Jurors After an Outburst in the Courtroom.

Petitioner alleged that a spectator who was a relative of the victim had an outburst in the courtroom during Boyd's testimony.  While the jury was out, the trial court asked defense counsel if they wanted an instruction of some kind and defense counsel requested only that the court advise the jury to ignore the outburst.  According to petitioner, the failure to request individual voir dire of each juror as to the effect of the outburst on each juror was not explored.  He asserted that this failure to request individual voir dire resulted in ineffective assistance of counsel.

A review of the trial transcript does not reflect that the person responsible for the outburst was a relative of the victim, nor did it occur during any testimony by Boyd.  At the time of the outburst, co-defendant Quintay Cox was testifying. (*See* CR at 673, *et seq.*).

### h.  Trial Counsel Failed to Object to the Court's Unnecessary Pressure to Get Mr. Cox to Testify.

Petitioner alleged that Boyd's defense counsel failed to object when the trial court used excessive pressure to obtain Quintay Cox's testimony.  Cox initially entered into a plea agreement to testify for the State in exchange for a promise by the State not to seek the death penalty against him.  On the day he was due to testify, he balked.  According to petitioner, the trial court applied extreme pressure to Cox to get him to change his mind by making such statements as "[y]ou understand what you are doing.  You are determining what is going to happen to your life from here on out,"  (TR at 483) and "you understand that you are deciding your final destiny at this very moment --."  (TR at 484).

Petitioner asserted that these "coercion tactics" served to undermine Boyd's right to due process and a fair trial.  As a result, he asserted that trial counsel was ineffective.

### i.  Trial Counsel Failed to Adequately Argue and Win a Favorable Ruling on the Motion for a Judgment of Acquittal.

In this claim, Boyd complained that, although trial counsel made a motion for a judgment of acquittal at the close of the State's case, they did not present any evidence or any argument as to why the Court should grant the motion.  According to petitioner, trial counsel's motion for a judgment of acquittal consisted only of a claim that the State had failed to make out a *prima facie* case against Boyd.  Petitioner asserts that this argument is not effective advocacy.  However, nowhere in this claim did counsel for petitioner set out what evidence should have been

presented or what arguments should have been made and how the failure to present this evidence or these arguments prejudiced petitioner.

### j.  Trial Counsel Failed to Argue and Win a Favorable Ruling on the Motion for a New Trial.

Petitioner alleged that counsel did not effectively challenge Boyd's conviction in the motion for a new trial.  He asserted that trial counsel filed the motion 30 days after the deadline for filing had passed and that trial counsel failed to present any evidence or argument in support of the motion.  He asserted that these actions constituted ineffective assistance.

### k.  Trial Counsel Failed to Object When the Court Failed to Inform the Jury that It Could Consider Mercy and Sympathy in Its Verdict.

Petitioner stated that trial counsel was ineffective for failing to object when the prosecutor told the jury, during the penalty-phase argument, that it should not extend any sympathy to Boyd in its deliberation.

### l.  Trial Counsel Failed to Object to the Capital Sentencing Scheme.

Petitioner asserted that trial counsel was ineffective for failing to object to the Alabama Death Penalty Statute as unconstitutional because it did not state what weight the trial court is to give to the jury's recommendation.  According to petitioner, this lack of guidance violated the Eighth Amendment and the Equal Protection Clause of the U. S. Constitution.

**m.  Trial Counsel was Ineffective When the State Failed to Prove Accomplice Corroboration at Trial.**

According to petitioner, under Alabama law, a person accused of a crime may not be convicted based solely on the uncorroborated testimony of an accomplice, citing § 12-21-222, *Code of Alabama* (1975).  Petitioner asserted that he was convicted based solely on the uncorroborated testimony of co-defendant Quintay Cox.  He asserted that the failure to object to this fact was ineffective assistance.

**n.  Trial Counsel Failed to Adequately Move the Court for a Change of Venue.**

According to petitioner, the capital sentencing hearing was held in Talladega County, and the trial and sentencing were closely covered in the local media.  He alleges that the failure of trial counsel to move for a change in venue was ineffective assistance.  However, he makes no showing in this petition that the jury that was seated was not impartial.

**o.  Trial Counsel Failed to Adequately Challenge the Manner of Electrocution Used in Alabama.**

Trial counsel is alleged to have failed to "adequately" challenge death by electrocution as constituting cruel and unusual punishment under the U.S. Constitution.

**4.  Trial Counsel Failed to Object to Instances of Prosecutorial Misconduct.**

According to petitioner, trial counsel failed to object to improper comments to the jury by the prosecutor at every stage of the trial, such as:

a.  Trial counsel failed to object to the prosecutor telling the jury not to consider evidence favorable to the defense, incorporating Issue IX, *infra*, by reference.  Petitioner claimed that the prosecutor told the jury that if they did not like the plea agreement that was made with Cox to obtain his testimony, they should be mad at him (the prosecutor) because he ran the office and it was ultimately his responsibility.

b.  Petitioner claimed that the prosecutor prejudicially contrasted Boyd's constitutional rights with the rights of the victim.

c.  Petitioner also asserted that the State obtained a conviction and death sentence by use of inadmissible hearsay, including witnesses' testimony about what the victim was alleged to have said to his kidnapers at the time of his kidnaping.

d.  Petitioner argued that the prosecutor asked so many leading questions that he might as well have been testifying himself.

e.  The prosecutors improperly expressed their personal opinions about the sufficiency of the evidence and the guilt of the defendant.

f.  The prosecutor provided the jury with an improper definition of "reasonable doubt."

g.  Failing to object to these instances of prosecutorial misconduct, viewed collectively, constituted ineffective assistance of counsel.

**D.  Ineffective Assistance of Counsel During the Penalty Phase of the Trial**

**1.  Trial Counsel Failed to Adequately Investigate Mitigation Evidence Critical to Boyd's Penalty Trial Defense.**

Petitioner alleged that trial counsel failed to adequately investigate his background to provide experiences which would constitute mitigating evidence to the jury.  According to petitioner, trial counsel should have obtained information relevant to his medical history, educational history, employment and training history, family and social history, correctional history, and any religious or cultural influences.

While noting that trial counsel called numerous witnesses at the penalty phase of the trial to testify concerning petitioner's character, petitioner complained that counsel never interviewed these persons prior to their testimony.  He also did not explain the nature of mitigation phase to these witnesses so they would understand what would be significant about their testimony.  As a result, Boyd asserts these witnesses offered no narratives about Boyd but, rather, just answered "yes" or "no' to leading questions asked by the attorney for Boyd.

Petitioner also complains that trial counsel failed to call numerous other witnesses who could have testified as to Boyd's widespread, positive impact on the community, his leadership abilities and the manner in which he guided the young children around him.  Petitioner identifies numerous witnesses who could have been called to testify regarding these areas of mitigation.

### 2.  Trial Counsel Failed to Object to Numerous Instances of Improper Arguments and Instructions During the Penalty Phase.

Petitioner asserted that trial counsel failed to object to the prosecutor's expression of his personal opinion of Boyd's sentence.  He also faulted trial

counsel's failure to object to the prosecutor and the trial court referring to the jury's decision at the sentencing phase as a "recommendation" to the judge.

## II. Violation of *Brady v. Maryland*[4] by Failing to Turn Over Potentially Exculpatory Evidence and Information.

Petitioner asserted that the State failed to provide exculpatory statements made by Boyd while he was in police custody and the District Attorney's office prior to being charged with the crime.

He also claimed that the State failed to turn over exculpatory, mitigating and impeachment evidence obtained in interviews with petitioner's co-defendants, Quintay Cox, Shawn Ingram and Marcel Ackles. However, Petitioner provided information regarding the contents of these statements, in what manner they were exculpatory, mitigating or impeaching or how the failure to produce them caused prejudice to petitioner.

Boyd further asserted that the State failed to provide the defense with conflicting statements made by several State's witnesses and failed to turn over agreements made with some State's witnesses with criminal records. No elaboration is provided in this petition.

## III. The District Attorney Obtained a Conviction by Intentionally Using Irrelevant and Highly Prejudicial Penalty-Phase Evidence at the Guilt Phase of Boyd's Trial.

According to petitioner, the introduction of autopsy photographs at the guilt phase of the trial was error because it was probative solely of the heinous,

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

atrocious or cruel aggravating factor, relevant only during the sentencing phase of the trial.  Petitioner asserted that, because he had conceded that the victim was burned to death, the prosecutor had no need to introduce the autopsy photos in the guilt phase of the trial.  This conduct allegedly violated petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution.

### IV.  The Trial Court Failed to Instruct the Jury on the Lesser-Included Offense of Felony Murder.

Petitioner alleged that he was an unwilling participant in the kidnaping of the victim and that a murder occurred during the kidnaping.  He asserted that, given the strong evidence of the leadership role played by Shawn Ingram, and the fact that he was the one that started the fire that killed the victim, the jury likely believed that Boyd was guilty of a lesser-included offense of capital murder, felony murder.  Boyd alleged that failing to give such a charge violated his constitutional rights.

### V.  The Court Committed Reversible Error in Denying Boyd's Motion for a Continuance.

Petitioner asserted that he was forced to trial without sufficient time to prepare his case.  He stated that he did not receive grand jury transcripts until a week before trial and that one of his attorneys was not even appointed to represent him until less than a month before trial.  He further alleged that the denial of his request for a continuance impaired his right to present mitigating evidence.

### VI.  The State Improperly Used Evidence of Prior Bad Acts and Bad Character Against Boyd.

Petitioner alleged that during the guilt phase of the trial, the State improperly presented evidence that petitioner was a drug dealer.  He asserted that this violated his rights under the U.S. Constitution.

## VII.  The Trial Court Gave an Improper Instruction on Kidnaping.

Petitioner asserted that the trial court gave an improper kidnaping instruction because petitioner was indicted for an intentional murder committed in the course of an abduction with the intent to inflict physical injury or to "terrorize."  Because the trial court did not define "terrorize," petitioner asserts that this made the instruction inadequate and unconstitutional because it failed to clearly guide the jury on what is necessary to prove each element of the offense.

## VIII.  The Trial Court's Instructions Regarding Aggravating Circumstances Were Improper.

Petitioner asserted that the trial court gave too much weight to the aggravating circumstances by telling the jury on six separate occasions that an aggravating circumstance was already found by the guilty verdict.  In addition, he alleged that the trial court told the jury that the statute listed eight statutory aggravating circumstances, thus allowing them to consider aggravating circumstances that did not apply in this case.

## IX.  Prosecutorial Misconduct.

Petitioner asserted that the prosecutors committed misconduct for a variety of reasons including:

> A.  Allegedly telling the jury not to consider evidence favorable to the defense;

B.   Contrasting petitioner's constitutional rights with those of the victim;

C.   Obtaining the conviction using inadmissible hearsay;

D.   Asking so many leading questions that they, in essence, testified for the State's most crucial witnesses; and

E.   Improperly expressing their own personal opinions regarding the sufficiency of the evidence and Boyd's guilt.

## X.  The Trial Court Improperly Granted the State's Challenges For Cause.

Petitioner asserted that the trial court improperly excluded jurors Datcher, Cochran, Machen and Hearn from serving on his jury.  He stated that they were excluded even though they stated that they could follow the law despite their opposition to the death penalty and that their exclusion was, therefore, unconstitutional.

## XI.  The Trial Court Improperly Excused Venire Members From Serving.

In Issue XI, as noted above, petitioner stated that the trial court excused venire member Pruit because he stated that it would be hard for him to serve because of employment responsibilities.  He also asserted that venire member Pilkington was improperly removed because of problems finding someone to look after her children although she stated that she "could possibly" have someone else look after them.

Petitioner also objected to the excusing of venire member Crawford because he was taking final exams, and venire members McDonald and Drewberry "for reasons not specified in the statute." (CR32 at 426). No further elaboration is provided in the initial petition.

## XII.  The Trial Court Improperly Defined Reasonable Doubt.

In Issue XII, as noted above, petitioner asserted that the trial court's reasonable doubt instruction was unconstitutional. He objected to the trial court's use of the term "moral certainty" in its instruction, claiming that it violated the standard set out in *In re Winship*, 90 S. Ct. at 1072-73. He also objected to the trial court advising the jury that a reasonable doubt is "a doubt for which a reason can be assigned." (*See* CR at 256). He asserted that this instruction is improper because it required jurors to be capable of articulating or "assigning" a reason for acquittal. He stated that ultimately the court's reasonable doubt instruction shifted the burden of proof to Boyd to assign the reason for the doubt and that this burden shifting is unconstitutional.

## XIII.  As Applied, the Death Penalty Constitutes Cruel and Unusual Punishment and Violates the Eighth and Fourteenth Amendments to the U.S. Constitution.

Petitioner objected to the use of electrocution as the means of carrying out a death sentence in Alabama. (CR32 at 429-31).

After this petition was filed by Boyd's new counsel on October 20, 1999, the State filed a Motion for an Enlargement of Time to file an answer to the petition. This request was granted.

**The State's Response**

The State filed an answer on December 20, 1999. (CR32 335-66). On December 20, 1999, the State also filed a Motion for Partial Dismissal Pursuant to Alabama Rules of Criminal Procedure 32.6(b)[5] (CR32 at 367-71), and 32.2(a)[6] (CR32 at 376-80). The State moved, pursuant to Rule 32.6(b), Ala. R. Crim. P., to dismiss those parts of Claim I that pertained to petitioner's allegations that trial counsel were ineffective because they (1) were inadequately compensated, (2) failed to adequately challenge the State's capital murder charges, (3) failed to do adequate investigation into exculpatory evidence, (4) failed to challenge the State's investigation and presentation of its case, (5) failed to challenge the constitutionality of his arrest and the circumstances surrounding his pretrial detention, (6) failed to adequately cross-examine witnesses, (7) failed to object to

---

[5] Rule 32.6(b), Ala. R. Crim. P., as it existed in 2002, provided, in pertinent part:

> The petition must contain a clear and specific statement of the grounds upon which relief is sought, including a full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.

[6] As it existed in 1999, Rule 32.2(a), Ala. R. Crim. P., read, in pertinent part:

> (a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:
>
> * * *
>
> (2) Which was raised or addressed at trial; or
>
> (3) Which could have been but was not raised at trial . . . ; or
>
> (4) Which was raised or addressed on appeal . . . ; or
>
> (5) Which could have been but was not raised on appeal . . . .

irrelevant and prejudicial evidence introduced by the State, (8) allowed the State to win a conviction based on unchallenged evidence, (9) failed to procure necessary expert assistance, (10) failed to present evidence or argument as to why their motion for a judgment of acquittal should be granted, (11) failed to effectively challenge Boyd's conviction in the motion for a new trial, and (12) failed to adequately investigate mitigation evidence critical to Boyd's penalty phase defense.

The State also moved to dismiss Claim II, regarding its allegation that the State failed to comply with its obligations under *Brady*, pursuant to Rule 32.6(b), Ala. R. Crim. P. The gist of the State's motion was that these claims lack specificity and fail to provide a full disclosure of the factual basis for each. The State asserts that these claims are bare allegations with little or no supporting facts cited by petitioner.

The State further moved to dismiss that part of Claim I where petitioner alleged that trial counsel was ineffective because of grossly inadequate compensation, as precluded by Rule 32.2(a)(3) and (4), Ala. R. Crim. P.

The State moved to dismiss the remaining claims for the following reasons:

Claim II, precluded by Rule 32.2(a)(3) and (5);

Claim III, precluded by Rule 32.2(a)(2) and (4);

Claim IV, precluded by Rule 32.2(a)(3) and (4);

Claim V, precluded by Rule 32.2(a)(2) and (4);

Claim VI, precluded by Rule 32.2(a)(2)and (4);

Claim VII, precluded by Rule 32.2(a)(3) and (4);

Claim VIII, precluded by Rule 32.2(a)(3) and (4);

Claim IX, regarding the claims in ¶¶ 92-97[7] and 101-103[8], precluded by Rule 32.2(a)(3) and (4);

Claim IX, regarding the claim in ¶¶ 98-100, precluded by Rule 32.2(a)(2),(3) and (4);

Claim X, precluded by Rule 32.2(a)(2) and (4);

Claim XI, precluded by Rule 32.2(a)(2) and (4);

Claim XII, precluded by Rule 32.2(a)(3) and (4); and

Claim XIII, precluded by Rule 32.2(a)(3) and (4).

The case next saw action on December 29, 2000, when petitioner's counsel filed a motion for permission to proceed *ex parte* in a request for funds, an *ex parte* application for funds for the appointment of a forensic pathologist, an *ex parte* motion for funds for an investigator, a motion for the discovery of institutional records regarding petitioner, and a motion for discovery of the prosecution's files and records. No action was taken by the trial court with regard to these motions.

On January 31, 2002, the State of Alabama filed a Motion for Leave to File an Amended Answer noting that Rule 32.7(b), Ala. R. Crim. P., states that

---

[7] These claims are the allegations that the prosecutor improperly told jurors not to consider evidence favorable to the defense, prejudicially contrasted Boyd's rights with those of the victim, obtained a conviction and death sentence on the basis of inadmissible hearsay and improperly expressed their personal opinions on the sufficiency of the evidence and Boyd's guilt.

[8] This claim is the allegation that the prosecutors asked so many leading questions that, in essence, they testified for the State's most crucial witnesses.

"Amendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment." (CR32 at 54-59). The State asserted that the basis for its motion to amend was "changed circumstances." (CR32 at 54).

According to the State, more than a year had passed without any attempt by petitioner to further prosecute his case. It then cited an unpublished case from the Alabama Court of Criminal Appeals which it claimed upheld summary dismissal of a Rule 32 petition in a death penalty case.[9] Based on the holding in this unpublished opinion, the State asserted that it now believed that it would be appropriate to seek complete dismissal of Boyd's petition.

The State alleged that the State would be prejudiced if Boyd was allowed to continue to avoid his duty to prosecute his case, as witnesses got older and evidence possibly got misplaced. (CR32 at 55).[10] Unlike petitioner's motions which, up to this point had been ignored by the trial court, this motion was granted by order dated February 28, 2002. (CR32 at 8).

The State filed its amended answer on January 31, 2002. (CR32 at 60-82). In its answer, the State asserted that the petition was due to be dismissed because all of the claims were either procedurally barred or were without merit and that the

_____

[9] The case cited was *Trawick v. State*, 854 So. 2d 1215 (Ala. Crim. App. 2002) (Table, No. CR-00-1494).

[10] This position seems to the undersigned to be a rather disingenuous argument. Petitioner filed a petition and several motions in relation to the petition. The State filed a response. It would seem that the next step would have been for the trial court to either issue a scheduling order or set the matter down for a status conference, which is what the trial court eventually did. (*See* CR32 at 11, Notice of Hearing on June 14, 2002 on "All Pending Motions and Status Conference" entered February 27, 2002). To blame petitioner for the delay in this case is hypocritical. Delay occurred on the part of *all* the parties to this proceeding.

lack of merit was apparent based on a review of the record without the necessity of a hearing.

Concurrent with the filing of its amended answer, the State filed a Motion to Dismiss.  (CR32 at 13-53).  It moved to dismiss the following claims of petitioner for the following reasons:

I.  Ineffective Assistance Claims

    A.  At trial, based on:

        a.  Grossly Inadequate Compensation–Rule 32.2(a)(3) and (4);

        b.  Failure to Obtain a Continuance–Rule 32.7(d)[11] (substantive issue addressed on its merits by the Alabama Court of Criminal Appeals which held that the petitioner failed to show prejudice resulting from denial of motion, so no ineffective assistance shown);

        c.  Failure to Adequately Investigate and Challenge State's Evidence–Rule 32.6(b) (failure to state specific facts and meritless on the face of the record);

        d.  Failure to Procure Necessary Expert Assistance Regarding Victim's Death–Rule 32.6(b) (lack of specificity);

        e.  Failure to Object to Court's Failure to Instruct on a Lesser-Included Offense–Rule 32.7(d) (substantive issue addressed on its merits by the Alabama Court of Criminal Appeals which held that there was no evidentiary basis for a felony murder charge, so no prejudice shown);

---

[11] Rule 32.7(d), Ala. R. Crim. P., provides:

**Summary Disposition.**  If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition.  Leave to amend shall be freely granted.  Otherwise, the court shall direct that the proceedings continue and set a date for hearing.

f.  Failure to Object to the Court's Reasonable Doubt Instruction–Rule 32.7(d) (substantive issue addressed on its merits by the Alabama Court of Criminal Appeals which held that the instruction was correct, so no prejudice shown);

g.  Failure to Object to Kidnaping Instruction–Rule 32.7(d) (substantive issue addressed on its merits by the Alabama Supreme Court which held that the instruction was correct, so no prejudice shown);

h. Failure to Object to Court's Improper Instructions Regarding Aggravating Circumstances[12]–32.7(d) (review of the record reflects that this issue is without merit; therefor, no hearing necessary and the claim is due to be dismissed);

i.  Failure to Object to the State's Challenges for Cause–Rule 32.7(d) (substantive issue addressed on its merits by the Alabama Court of Criminal Appeals which held that the ruling by trial court was correct, so no prejudice shown);

j.  Failure to Object to the Exclusion of Certain Venire Members–Rule 32.7(d) (substantive issue addressed on its merits by the Alabama Court of Criminal Appeals which held that the ruling by trial court was correct, so no prejudice shown);

k.  Failure to Request Individual Voir Dire of Jurors After Outburst in Courtroom–Rule 32.7(d) (Rule 32 court should review the record which reflects that this issue is without merit; therefore, no hearing is necessary and the claim is due to be dismissed);

l.  Failure to Object to Trial Court "Pressuring" Cox to Testify–Rule 32.7(d) (Rule 32 court should review the record which reflects that this issue is without merit; therefore, no hearing necessary and the claim is due to be dismissed);

m.  Failure to Adequately Argue and Win the Motion for Judgment of Acquittal–Rule 32.7(d) (Rule 32 court should review the record which reflects that this issue is without merit;

---

[12]  This issue was raised as petitioner's issue VIII on direct appeal.  It was never specifically addressed by the Alabama Court of Criminal Appeals or the Alabama Supreme Court.

therefore, no hearing necessary and the claim is due to be dismissed);

n.  Failure to Adequately Argue and Win the Motion for New Trial–Rule 32.7(d) (Rule 32 court should review the record which reflects that this issue is without merit; therefore, no hearing necessary and the claim is due to be dismissed);

o.  Failure to Object to Failure of Court to Instruct Jury It Could Consider Mercy and Sympathy–Rule 32.7(d) (substantive issue addressed on its merits by the Alabama Court of Criminal Appeals which held that the ruling by trial court was correct, but that, even if it was not, no prejudice shown under Plain Error review);

p.  Failure to Object to Alabama's Capital Sentencing Scheme–Rule 32.7(d) (substantive issue addressed on its merits by the Alabama Court of Criminal Appeals which held that the ruling by trial court was correct, but that, even if it was not, no prejudice shown under plain error review);

q.  Failure to Object When the State Failed to Corroborate Accomplice Testimony at Trial–Rule 32.7(d) (substantive issue addressed on its merits by the Alabama Court of Criminal Appeal which held that the ruling by trial court was correct, so no prejudice shown);

r. Failure to Adequately Move for a Change of Venue–Rule 32.6(b) (claim lacks specificity) and Rule 32.7(d) (review of the record by Alabama Court of Criminal Appeals caused conclusion that no change of venue was warranted; therefore, there is no prejudice to petitioner);

s.  Failure to Adequately Challenge the Manner of Execution–Rule 32.7 (law well-established that this claim is without merit);

t.  Failure to Object to Instances of Prosecutorial Misconduct–Rule 32.7 (petitioner cannot show that no reasonable attorney would have failed to object to each instance because none of the statements were improper);

B.  At penalty phase, based on:

a.  Failure to Adequately Investigate Mitigation Evidence–Rule 32.6(b) (lack of specificity in that petitioner failed to set forth a single mitigating factor that would have been revealed by further investigation and petitioner had services of mitigation specialist);

b.  Failure to Object to Improper Arguments and Instructions During the Penalty Stage–Rule 32.2(a)(4) (this issues was raised and rejected on direct appeal);

II.  *Brady* Claims

A.  Failure of the State to Provide Exculpatory Statements Made by Petitioner–Rule 32.7 (petitioner was aware of his own statement and, thus, cannot show it was suppressed by the State) and Rule 32.6(b) (lack of specificity regarding substance of "exculpatory" statement warrants dismissal of claim);

B.  Failure to Provide Exculpatory Statements Made by Co-Defendants–Rule 32.6(b) (lack of specificity regarding substance of "exculpatory" statements warrants dismissal of claim);

C.  Failure of State to Turn Over Agreements with State's Witnesses–Rule 32.6(b) (lack of specificity regarding substance of the "agreements" and witnesses not identified by petitioner) and 32.2(a)(3) (issue could have been, but was not raised at trial);

III.  Use of Penalty Phase Evidence in Guilt Phase–Rule 32.2(a)(3) (raised and addressed at trial);

IV.  Failure to Instruct on Lesser-Included Offense of Felony Murder–Rule 32.2(a)(2) and (4) (raised and addressed at trial and on appeal);

V.  Denial of Motion for Continuance–Rule 32.2(a)(4) (raised and addressed on appeal);

VI.  Use of Evidence of Prior Bad Acts–Rule 32.2(a)(2) (raised and addressed on appeal);

VII.  Improper Kidnaping Instruction–Rule 32.2 (a)(3) (could have been, but was not, raised at trial) and Rule 32.2(a)(4) (raised and addressed on appeal);

VIII.  Improper Instruction Regarding Aggravating Circumstances–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and Rule 32.2(a)(4) (raised and addressed on appeal);

IX.  Prosecutorial Misconduct;

      A.  Jury Told Not to Consider Evidence Favorable to the Defense–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and Rule 32.2(a)(4) (raised and addressed on appeal);

      B.  State Improperly Contrasted Boyd's Constitutional Rights with the Rights of the Victim–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and 32.2(a)(4) (raised and addressed on appeal);

      C.  State Improperly Obtained Conviction and Death Sentence Based on Inadmissible Hearsay–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and Rule 32.2(a)(4) (raised and addressed on appeal);

      D.  Prosecutors Allowed to Ask Too Many Leading Questions–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and 32.2(a)(4) (raised and addressed on appeal);

      E.  Prosecutors Improperly Expressed Their Personal Opinions on the Sufficiency of the Evidence and Boyd's Guilt–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and 32.2(a)(4) (raised and addressed on appeal);

X.  Trial Court Improperly Granted Challenges for Cause–Rule 32.2(a)(2) (raised and addressed at trial) and Rule 32.2(a)(4) (raised and addressed on appeal);

XI.  Trial Court Improperly Excluded Certain Veniremen From Serving on Boyd's Jury–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and 32.2(a)(4) (raised and addressed on appeal);

XII.  Trial Court's Reasonable Doubt Instruction was Unconstitutional–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and 32.2(a)(4) (raised and addressed on appeal);

XIII.  The Manner of Execution in Alabama is Unconstitutional–Rule 32.2(a)(3) (could have been, but was not, raised at trial) and 32.2(a)(4) (raised and addressed on appeal).

(CR32 at 13-52).

**Petitioner's Response**

In response to the State's Motion to Dismiss, counsel for Boyd filed
Petitioner's Response to the State's Motion to Dismiss his Rule 32 Petition.  It was
dated February 28, 2002.  (CR32 at 2-7).[13]  In his opposition, petitioner asserted
that he believed he had sufficiently pled his claims and that he should not be
expected to state all of his facts until discovery was completed which, in turn,
depended on obtaining the funds he had requested in his previously-filed *ex parte*
motions.  He further stated that, out of an abundance of caution he would,
nevertheless, file an amended petition reciting in greater detail his factual basis for
relief.  (CR32 at 2-3).

**State's Surreply**

On March 8, 2002, the State filed a pleading titled State's Reply to Boyd's
Opposition to the Motion to Dismiss.  (CR32 at 722-30).  In this pleading, the
State asserted that petitioner was not entitled to discovery unless he survived the
State's Motion to Dismiss.  For instance, the State pointed out that, according to
the Alabama Court of Criminal Appeals, no discovery is allowed for procedurally
barred claims.  (CR32 at 723-24).

---

[13]  The Clerk's Records submitted in this case are somewhat difficult to navigate.  Documents
are filed out of order without regard to the date they actually were filed into the Clerk's Office.  For
instance, the State's Motion to Dismiss is found in Volume 11 at page 13.  Petitioner's Response
begins on page 2 of the same volume.  The State's Reply to Boyd's Opposition begins in Vol. 14 on
page 722.  The Amended Petition filed by petitioner begins in Volume 13 at page 570.  The State's
subsequently filed Opposition to the Petitioner's Offer of Proof is found in Vol. 13 beginning on
page 556.  This rather haphazard record-keeping is the reason that documents cited by the
undersigned frequently appear to be out of chronological order.

The State also asserted that the fact that Boyd had stated that he may file an amended complaint at some time in the future was insufficient to avoid a determination of the State's Motion to Dismiss currently before the trial court. The State claimed that petitioner must show due diligence for his failure to file the amended complaint before and that it was based on facts he could not have discovered earlier. It stated that the long delay in filing the amended complaint would prejudice the State.

The State also noted that a number of petitioner's claims may be decided without discovery. For instance, it asserted that the allegation that trial counsel failed to effectively cross-examine witnesses could be dismissed for vagueness pursuant to Rules 32.3 and 32.6(b), Ala. R. Crim. P., because it should have contained a statement as to what questions should have been asked. According to the State, failure to do so should result in this claim's dismissal.

According to the State, the law in Alabama is that Rule 32 is not a device for investigating possible claims, but a means of vindicating actual claims. Thus, Boyd's assertion that he must conduct discovery before he detailed his claims was evidence that these claims were due to be dismissed.

On March 15, 2002, the trial court set a hearing for all pending motions and a status conference regarding the case for June 14, 2002. (CR32 at 637).

**Amended Petition**

Counsel for petitioner filed an amended petition for relief on May 20, 2002. (CR32 at 570-636). In this petition, he reasserted the claims set out in his first

petition and added several new claims.  In some instances, regarding claims previously asserted, he provided more detail.  Others, such as his claim that counsel were ineffective because of grossly inadequate compensation, were essentially unchanged.  These claims are as follows:

## I.  Ineffective Assistance of Counsel at the Guilt and Penalty Phases of Trial Due To:

### A. Grossly Inadequate Compensation.

In his amended petition, Boyd again claimed that his trial counsel was rendered ineffective due to inadequate compensation.  He argued, as he did in his earlier petition, that the $1000 limit on out-of-court expenses payable at a $20 per hour rate of compensation required that trial counsel work without compensation for any work beyond 50 hours.  Counsel for Boyd claimed that this inadequate funding severely undermined trial counsel's willingness and ability to conduct the pretrial work necessary for the case.  However, he provided no proof beyond his bare assertion that he was "severely undermined" by this fact.  No examples were given to demonstrate how Boyd was prejudiced by this fact.

### B.  The Court's Denial of Boyd's Motion for a Continuance.

In his claim regarding failure to obtain a continuance, petitioner restated that he did not obtain grand jury testimony until the week before the trial and added that his mitigation expert advised the court that she would not be ready until mid-April.  However, he did not state what this expert would have been able to present that she was unable to accomplish due to the lack of a continuance.

Likewise, petitioner did not state how any testimony that was not obtained due to the lack of a continuance would have affected the outcome of the trial.

In addition, Boyd noted that co-counsel on his case, Mr. Dale Price, was not appointed until February 17, 1995, less that a month before trial. He also stated that Price had no relevant trial experience and, thus, could not provide any meaningful assistance prior to or during the trial. However, Boyd did not state how this resulted in prejudice to him.

### C. Ineffective Assistance of Trial Counsel

### 1. Trial Counsel Failed to Adequately Investigate and Challenge the State's Capital Murder Charge Against Boyd.

Regarding his claim that trial counsel failed to adequately investigate the State's case, he asserted for the first time that numerous alibi witnesses were not interviewed, were spoken to only briefly or were not asked about events during the alleged time of the victim's death. He claimed that witnesses could have presented a strong alibi defense which trial counsel should have, but did not, pursue. He provided the names and putative testimony of these witnesses. These included the following:

> 1. Sylvester Boyd, brother of the petitioner, would have testified that in the early afternoon of July 31, 1993, he spent about an hour-and-a-half watching his brother play basketball.
>
> 2. Sylvester McGrew, Boyd's stepfather, would have testified that at around 5:00 p.m. he went to a local convenience store and, on his way back home, he observed his son being chased by a police office, Nigel Raines. Boyd was given a warning by the officer and McGrew and Boyd then walked to the residence of Catherine Jones. McGrew stayed for a few minutes and then left, leaving Boyd there. Officer Raines also recalled this incident, but not the exact date.

3.  Felicia Parker would have testified that she was with Boyd and others at her mother, Catherine Jones', house preparing for a birthday party for Willie Maud Watson in the late afternoon/early evening hours of July 31, 1993.  Ms. Watson also would have testified that she had seen Boyd at about 4:00 p.m. to 5:00 p.m. and asked him to help Parker put up balloons for her birthday party that night.

4.  Felicia Y. Jones would have testified that she and Boyd left Catherine Jones' home early in the evening and went to Ms. Watson's house.  She would have testified that she stayed with Boyd until evening, after which she returned to Catherine Jones' house.

5.  Timothy Hawkins would have testified that he drove a blue van, the same as the type used in the kidnaping.  He would have testified that on July 31, 1993, he drove it from Anniston to Birmingham to pick up two women who had taken the bus from Tallahassee, Florida.  He would have testified that he left Birmingham to return to Anniston at about 9:00 or 9:30 p.m. and that Marcel Ackles was with him on this trip.

6.  Raymond Lee Edwards was expected to testify that he saw co-defendant Robert Ingram at the Glen Addie housing project at approximately 7:30 p.m. on July 31, 1993, which is the same time, according to the testimony of Quintay Cox, that Ingram killed the victim at the park, 15 to 20 miles away.

Furthermore, Boyd stated that his trial attorneys sent the family to make photos of certain areas and did not obtain them until the first day of trial and did not obtain grand jury testimony until the week before trial.  He noted areas of cross-examination that would have called into question the accuracy of the testimony of witnesses who claim they saw petitioner in the blue van with Shawn Ingram and took issue with trial counsels' failure to object to the admission of certain testimony and items of evidence.

Petitioner also asserted that cooperating co-defendant Quintay Cox's testimony was uncorroborated and inconsistencies in his testimony should have

been brought out by trial counsel.  For instance, petitioner noted that Cox testified that petitioner taped the victim's feet, yet no tape was found on the victim in that area or on the board to which he was bound.

### 2.  Trial Counsel Improperly Presented Both an Alibi Defense and a Coercion Defense.

Petitioner added a new claim to his amended petition, asserting that trial counsel was ineffective for presenting both a coercion defense and an alibi defense.  He asserts that this approach is *per se* ineffective assistance of counsel. His only citation of authority for this proposition is *Ross v. Kemp*, 393 S.E.2d 244 (Ga. 1990).

### 3.  Trial Counsel Failed to Procure Necessary Expert Assistance.

Boyd again argued that trial counsel should have requested funds for an expert.  He expanded on this claim from his initial petition, stating that an expert was needed to determine the time of death based on the metabolic rate of cocaine and to testify as to the lack of duct tape on the victim's legs.  The latter is alleged to be evidence to counter the State's claim that petitioner took an active roll in the victim's murder.  The evidence regarding the time of death is claimed to be relevant to show that the victim was not murdered when Cox claims he was.

### 4.  Trial Counsel Failed to Present, Adequately Argue and Obtain Favorable Rulings on Numerous Motions.

#### a.  Trial Counsel Failed to Object to the Court's Failure to Give a Lesser-Included Offense Instruction.

Here Boyd reasserted his claims regarding the failure to request a lesser-included, felony-murder instruction.  He added nothing new to this claim.

### b.  Trial Counsel Failed to Challenge the Court's Unconstitutional Reasonable Doubt Instruction.

Petitioner repeated the same argument he made in his original petition for review.

### c.  Trial Counsel Failed to Object to the Court's Improper Kidnaping Instruction.

Petitioner repeated the same argument he made in his original petition for review.

### d.  Trial Counsel Failed to Object to the Court's Improper Instructions Concerning Aggravating Circumstances.

Petitioner repeated the same argument he made in his original petition for review.

### e.  Trial Counsel Failed to Request that the Court Individually Voir Dire Jurors After an Outburst in the Courtroom.

Petitioner repeated the same argument he made in his original petition for review.

### f.  Trial Counsel Failed to Object to the Court's Unnecessary Pressure to Get Mr. Cox to Testify.

Petitioner repeated the same argument he made in his original petition for review.  Petitioner also reargued his claim that trial counsel did not effectively argue his motion for a new trial.  He added nothing to the argument he made in his original petition.

### g.  Trial Counsel Failed to Object When the Court Failed to Inform the Jury that It Could Consider Mercy and Sympathy in Its Verdict.

Petitioner repeated the same argument he made in his original petition.

**h. Trial Counsel Failed to Object to the Capital Sentencing Scheme.**

Petitioner repeated the same argument he made in his original petition.

**i.  Trial Counsel was Ineffective When the State Failed to Prove Accomplice Corroboration at Trial.**

In this claim petitioner reviewed the evidence at trial which he averred was in conflict with the trial testimony of Quintay Cox.  He asserted that this conflict was proof that the testimony of Cox was uncorroborated and, thus, an insufficient basis for his conviction under Alabama law.

**j.  Trial Counsel Failed to Adequately Move the Court for a Change of Venue.**

Petitioner reiterated his claim made in his original petition.  He cited numerous instances of press coverage of petitioner's trial.  He also noted that, during voir dire, numerous potential jurors indicated that they were familiar with the case from media reports.

**k.  Trial Counsel Failed to Adequately Challenge the Manner of Electrocution Used in Alabama.**

Petitioner repeated his argument from his original petition.

**5.  Trial Counsel Failed to Object to Instances of Prosecutorial Misconduct.**

According to petitioner, a number of instances arose when trial counsel should have objected to conduct on the part of the prosecutor, but failed to do so. He alleged that this failure amounted to ineffective assistance of counsel.  These claims included the following:

**a.  Trial Counsel Failed to Object to the Prosecutor Telling the Jury Not to Consider Evidence Favorable to the Defense.**

Petitioner reiterated his argument from his original petition.

**b. Trial Counsel Failed to Object to the Prosecutors' Use of Inadmissible Hearsay.**

Petitioner reiterated his argument from his original petition.  He again made citation to the trial transcript to illustrate this point but failed to go into any detail as to how any one of these remarks was prejudicial.

**c.  Trial Counsel Failed to Object to the Prosecution's Use of Leading Testimony.**

Petitioner reiterated his argument from his original petition.

**d.  Trial Counsel Failed to Object to the Prosecution's Expressions of Personal Opinion in Both the Guilt and Punishment Phase of the Trial.**

Petitioner reiterated his argument from his original petition.

**e.  Trial Counsel Failed to Object When the Prosecution Contrasted the Rights of the Victim with those of Boyd.**

Petitioner reiterated his argument from his original petition.

**f.  Trial Counsel Failed to Object to the Prosecutor's Improper Definition of "Reasonable Doubt."**

Petitioner reiterated his argument from his original petition.

**g.  Trial Counsel Failed to Object to the Prosecution's Closing Argument that There Was No Evidence Put Forth that Donique Cox Was Involved in the Murder.**

Petitioner reiterated his argument from his initial petition.

**h.  Trial Counsel Failed to Object to the Prosecutor's Statement that there was No Evidence that Boyd was Afraid of Shawn Ingram.**

Page 68 of  207

Petitioner reiterated his argument from his original petition.

### i.  Trial Counsel Failed To Object to the Prosecutor's Argument at the Penalty Phase that Boyd Got Cox Involved So They Could Look for the Victim.

Boyd argued here that no evidence supports the prosecutor's claim in closing argument during the penalty phase, that Boyd got Cox involved so they could look for the victim.  The evidence at trial reflected that they were looking for Dexter Spinks, not Huguley.  He also stated that the evidence reflects that it was Ingram's idea to kidnap Huguley, not his, and any claim to the contrary was false and highly prejudicial to petitioner.

### j.  The Prosecutor Claimed the Victim was Begging for His Life When There Was No Evidence in the Record to Support This Claim.

He also asserted that during penalty phase of closing argument, the prosecutor stated that Boyd was "cold enough and merciless enough" to listen to the victim plead for his life during a 20 or 30-minute ride when no evidence in the record supports the claim that the victim was begging during the ride to the park. This statement, and all the other remarks cited, were made to the jury without objection from petitioner's trial counsel.  He asserted this failure was highly prejudicial and demonstrated ineffective assistance.

### k.  Trial Counsel Failed to Object to the Prosecutor's "Anti-Mercy" Speech.

Petitioner also argued that the prosecutor made an argument to the jury telling them to show petitioner no mercy and told them that society has a right to protect itself from people like Boyd.  He claimed Boyd was prejudiced by this

argument because it implied that he would kill again unless he received the death penalty.  According to Boyd, failing to object in these instances constituted ineffective assistance of counsel and violated his right to due process and a fair trial.

### D.  Ineffective Assistance at the Penalty Phase of Trial.

At the penalty phase, petitioner asserted that trial counsel was ineffective for failing to object to "numerous" instances of improper arguments and instructions during the penalty phase.  He cited trial counsel's failure to object to the expression of personal opinion by the prosecutor.  This argument is basically the same argument put forth in his original petition.

### 1.  Trial Counsel Failed to Adequately Investigate Mitigation Evidence Critical to Boyd's Penalty Trial Defense.

Petitioner again argued that trial counsel failed to fully investigate the history of their client in preparation for the penalty phase of the capital proceeding.  He restated his claim that trial counsel should have gotten complete medical, educational, employment, family and social histories of Boyd.  He also argued that trial counsel called numerous witnesses at the penalty phase that he had never interviewed prior to their testimony and failed to call other witnesses who could have provided more information about petitioner and his positive impact on the community.  He named certain witnesses and the testimony he alleges they could have provided.  He also cited witnesses who were called whose examination was incomplete.

Boyd also added a new claim, asserting that trial counsel was ineffective at sentencing because the mitigation expert utilized by defense counsel stated she was unable to do all the work she needed to do without being given more time. However, petitioner did not state what else the mitigation expert could have done during this time, nor did he explain with any specificity how he was prejudiced by this failure to have more time to prepare.

Finally, he added the claim that trial counsel should have investigated whether chemical pollution in the Anniston area might have caused a drop in his IQ and an increase in his tendency toward criminality.

## II.  Trial Counsel's Ineffectiveness was Prejudicial to Boyd's Defense under *Strickland v. Washington*.

Petitioner asserted that the ineffectiveness of trial counsel outlined above prejudiced him under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  He asserted that the failure to call numerous witnesses, as outlined above, prevented Boyd from demonstrating compelling reasons why his life should be spared.  Counsel for Boyd stated that, absent these errors, and in light of Boyd's alibi and the fact that his participation was minor, Boyd would not have been convicted and sentenced to death.  He further argued that the prejudice suffered by Boyd was made worse by the improper jury instructions about its role and that repeatedly advising the jury that its role was to make a "recommendation" diminished the jury's perception of its role, in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985).

### III.  The Eighth Amendment as Interpreted in *Enmund v. Florida* Does Not Permit the Imposition of the Death Penalty in this Case.

Petitioner added a new argument to his amended pleading that the death penalty was unwarranted in his case, under *Enmund v. Florida*, 458 U.S. 782, 800-01, 102 S. Ct. 3368, 3378, 73 L. Ed. 2d 1140 (1982), given the evidence that Boyd's participation in these crimes was minimal or "not substantial."

### IV.  The State Violated *Brady v. Maryland* By Failing to Turn Over Potentially Exculpatory Evidence and Information to the Defense.

Petitioner added new claims and reiterated two claims raised in his original petition as violations of *Brady v. Maryland*.  Boyd claimed that the State failed to produce records that would have supported his alibi defense, as follows:

A.  In a newly-added claim, petitioner asserted that, on the evening of July 31, 1993, Officer Nigel Raines chased Mr. Boyd for trespassing in the Glen Addie housing project.  He testified that, while chasing Boyd,  he called his dispatcher on the radio to let them know what he was doing.  According to Boyd, no logs or reports which would have helped establish a time-line were produced to the defense.[14]

B.  In another newly-added claim, petitioner asserted that on the night of July 31, 1993, and into the early morning of August 1, 1993, an incident occurred at the Executive Inn in Oxford, Alabama, that caused the Anniston Police

---

[14]  Officer Raines testified that he did not know what date this chase occurred on.  (*See* TR at 702-04).  It is petitioner's stepfather, Sylvester McGrew, who supposedly witnessed the chase and who testified that it occurred on the evening of July 31, 1993.  At trial, Officer Raines testified that he looked for the logs of this incident but, because the incident occurred over two years prior to trial, the logs apparently already had been destroyed.  *(See* TR at 704).

Department to be dispatched to that location. Allegedly, Anthony Boyd was present at that location, at that time.  Counsel for petitioner asserts that the State failed to produce logs which would have established the time of the altercation.

C.  Petitioner reiterated his earlier claim that the State failed to provide exculpatory statements made by Boyd prior to being charged with the crime, but while in police custody.

D.  He also repeated the claim that the State failed to provide the defense with exculpatory and impeaching evidence gleaned from repeated interviews with Boyd's co-defendants, Quintay Cox, Shawn Ingram and Marcel Ackles.  Petitioner asserted that all such interviews not turned over to the defense by the State would be considered exculpatory.  However, he merely stated this conclusion without any further evidence regarding what was contained in any statement that would be exculpatory to petitioner or how his failure to receive it resulted in prejudice.

E.  Petitioner also stated, in conclusory fashion, that "[t]here has been some suggestion that the District Attorney offered certain inducements to witnesses who testified at Anthony Boyd's trial."  He asserted that the State failed to turn over any agreements with State's witnesses with criminal records.  No further detail is provided.

F.  He asserted that the State failed to turn over the investigating officers' field notes, which he claims Boyd had a right to inspect.

G.  The State informed the court that it had a tape recording of petitioner threatening Roderick Dye if he testified.  However, the State never produced this

tape or evidence of other threats made to various witnesses that the State claimed to have in its possession.  How this evidence is exculpatory is not explained.

Petitioner asserted that other failures to produce materials may have happened as well and that, if so, this failure was a violation of petitioner's constitutional rights.  He noted that, by separate motion, Boyd had requested the court to order the State, including the Sheriff, District Attorney and Anniston Police Department, to produce all witness statements and other evidence in their possession, custody and control.

### V.  Prosecutorial Misconduct Violated Boyd's Rights to a Fair Trial, Due Process and a Reliable Sentencing Determination.

#### A.  The District Attorney Obtained a Conviction by Intentionally Using Irrelevant and Highly Prejudicial Penalty-Phase Evidence at the Guilt-Phase of Boyd's Trial.

This claim is almost a verbatim reiteration of a similar claim in petitioner's earlier petition regarding the use of autopsy photographs of the deceased at the guilt phase of the trial.  (*See* CR32 at 412-14).

#### B.  The District Attorney Told the Jury Not to Consider Evidence Favorable to the Defense.

This argument presented, almost verbatim, the petitioner's claim in his original Rule 32 petition[15] that his counsel were ineffective for failing to object to the prosecutor's closing argument.  The prosecutor told the jurors that if they did not like the plea agreement he made with Quintay Cox, to be mad at him (the

---

[15]See page 42-43 *supra* for petitioner's issue I.C. 4(a) in his original Rule 32 petition.

prosecutor) because he made the decision.  In the amended petition, he argued that this statement and others constituted prosecutorial misconduct.

### C.  The District Attorney Prejudicially Contrasted Boyd's Constitutional Rights with the Rights of the Victim.

This also is an argument raised *verbatim* in petitioner's earlier petition.  (*See* CR32 at 421).

### D.  The District Attorney's Closing Arguments in Both the Guilt Phase and the Punishment Phase Were Wholly Inappropriate.

Petitioner, in a slightly different twist on a previous argument, stated that the District Attorney prejudiced Boyd by giving his own opinion that petitioner was guilty of capital murder.  He also complained that the prosecutor attempted to make witness Sharon  Ackles appear to be a more credible witness than she was merely because she was a relative of Boyd's.  He asserted that this approach was improper vouching by the prosecutor for the credibility of a witness.

In addition, he complained that the district attorney improperly argued that no evidence showed that Donique Ackles could have been involved in the murder nor any evidence that Boyd was afraid of Shawn Ingram.  He alleged that this argument was improper because it involved evidence not before the jury.

Petitioner also asserted that the prosecutor's "anti-mercy" argument to the jury was improper.  Likewise, petitioner stated that the prosecutor's claim that society has a right to protect itself from the Mr. Boyds of the world was improper. He asserted that this argument implied that Boyd would kill again unless he received the death penalty.

Finally, he asserted that the prosecutor improperly argued that Boyd got Cox to look for the victim which, he claimed, was a gross mischaracterization of the evidence.

### E.  The State Obtained a Conviction and Death Sentence on the Basis of Inadmissible Hearsay Evidence.

Petitioner reiterated his argument from his initial petition that the State allegedly elicited a number of hearsay statements from witnesses.  As an example, he cited the testimony of witnesses who testified as to what the victim was saying as he was being abducted.  Boyd asserted that this evidence was exploited by the prosecutor during closing arguments.  He also made several citations to the record for what he purported were other improper hearsay statements.

### F.  The Prosecutor's Use of Leading Questions was Improper.

Petitioner again simply repeated the same argument he made in his initial petition.  (*See* CR32 at 422-23).  Although slightly re-worded, nothing new of substance is added.

### G.  The Prosecutors Improperly Expressed Their Personal Opinions on the Sufficiency of the Evidence and Boyd's Guilt.

Aside from the addition of one sentence, which adds nothing of substance, this claim is the same claim made in petitioner's initial petition.  (*See* CR32 at 423-24).

### VI.  The Trial Court Deprived Boyd of his Right to a Fair Trial Under the Fifth Amendment.

### A.  The Court Failed to Instruct the Jury on the Lesser-Included Offense of Felony Murder.

Page 76 of  207

In this claim, petitioner added to his similar initial claim by reviewing the actions of each of the parties to the kidnaping and murder of the victim.  Petitioner then reasserted that, given the evidence of the leadership role of  Ingram and the fact that Boyd's only alleged participation, which he claimed was not corroborated by physical evidence, was that he taped Huguley's feet at the direction of Shawn Ingram, petitioner was entitled to an instruction on felony murder.  (*See* CR32 at 414-15).

### B.  The Court Committed Reversible Error in Denying Boyd's Motion for Continuance.

This position is a *verbatim* recitation of the same claim which petitioner made in his original petition.  (*See* CR32 at 416-17).

### C.  The Court Improperly Allowed the State to Use Evidence of Prior Bad Acts and Bad Character Evidence Against Boyd.

This claim is also a *verbatim* recitation of the same claim which petitioner made in his original petition.  (*See* CR32 at 417-18).

### D.  The Court Gave an Improper Kidnaping Instruction.

This claim is a *verbatim* recitation of the same claim which petitioner made in his original petition.  (*See* CR32 at 418-19).

### E.  The Court's Instructions Regarding Aggravating Circumstances Were Improper.

This argument is a *verbatim* recitation of the same claim which petitioner made in his initial petition.  (*See* CR32 at 419-20).

### F.  The Court Improperly Granted the State's Challenges for Cause.

Except for one immaterial change in syntax, this claim is a *verbatim* recitation of the same claim which petitioner made in his original petition. (*See* CR32 at 424-25).

### G.  The Court Improperly Excluded Venire Members From Serving on Boyd's Jury.

Except for one immaterial change in syntax, this claim is a *verbatim* recitation of the same claim which petitioner made in his initial petition. (*See* CR32 at 425-26).

### H.  The Court's Reasonable Doubt Instruction Was Unconstitutional.

This is a *verbatim* recitation of the same claim which petitioner made in his initial petition. (*See* CR32 at 426-28).

### I.  Boyd's Inexperienced Co-Counsel was Wrongly Appointed, Prejudicing His Defense.

This claim was presented here for the first time.  Boyd claimed that Dale Price, Mr. Willingham's co-counsel, was too inexperienced to have been co-counsel in a capital case.  He alleged that Mr. Price was admitted to the Alabama Bar in the fall of 1994.  Prior to his appointment in this matter in March 1995, Mr. Price had never participated in a death penalty case and had no relevant experience.  According to petitioner, Price was too inexperienced to try a case of this magnitude.  However, he does not put forth any example to demonstrate that Price was unable to handle this type of case, nor did he demonstrate a specific instance of prejudice.

### J.  Co-Defendant Quintay Cox was Coerced to Testify.

In addition to his claim that trial counsel was ineffective for failing to object to the trial court pressuring Cox to testify, petitioner added a new claim that asserted the discrete underlying claim that Cox was improperly coerced to testify.

Cox had entered into a plea agreement to testify as a State's witness in return for a sentence of life with possibility of parole. When he was initially called to testify, he balked. He was then advised by the trial judge of the consequences of this action; that is, that the State would prosecute him for capital murder and seek the death penalty. The prosecutor made it clear that this is what he would do. Later in the day, Cox changed his mind and testified.

Petitioner asserted that, if not for the coercive tactics of the State, the Court and Cox's own attorney, Cox would not have testified. He claimed that such coercion is "fundamentally unfair."

### VII.  Alabama's Statutory Procedure Imposing the Death Penalty is Unconstitutional under *Apprendi v. New Jersey*.

In this new claim, petitioner asserted that Alabama's capital sentencing scheme runs afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). According to petitioner, the Alabama statute runs afoul of *Apprendi*'s prohibition against imposing a sentence based on any fact that would expose the defendant to a punishment that was not determined beyond a reasonable doubt by the jury's verdict. Because Alabama's sentencing scheme allows the jury only to make a non-binding advisory recommendation, the judge, and not the jury, is the final finder of fact when imposing the penalty.

### VIII.  As Applied in Alabama, the Death Penalty Constitutes Cruel and Unusual Punishment and Violates the Eighth and Fourteenth Amendments to the U.S. Constitution.

Petitioner reiterated his similar claim which he made in his initial habeas petition.  (*See* CR32 at 429-30).

## Alibi Claim

Several weeks after petitioner's amended petition was filed, a hearing was held before the trial judge, ostensibly to determine the status of the case and to rule on pending motions.  Nonetheless, at that time, counsel for petitioner presented the trial court with an offer of proof, supporting Boyd's alibi defense, in the form of statements signed by witnesses regarding the testimony they would have given at trial had they been asked.  The State objected to the amendment at this point asserting that it was too late for the petitioner to amend his complaint because it was not based on surprise, newly discovered evidence, changed circumstances, or where prejudice would result to the State.  The State also cited *Whitehead v. State*, 593 So. 2d 126 (Ala. Crim. App. 1991), for the proposition that, under Alabama law, courts may properly refuse permission to amend absent a showing of diligence on the part of the petitioner.  The State prosecutor also noted that, under Alabama law, a litigant cannot amend a petition if the claims are outside the statute of limitations and do not relate back to the original petition. (CR32 at 41-42).[16]

---

[16]  Subsequent to the State's brief in this case, the Alabama Supreme Court overruled a long line of cases and held that the relation-back doctrine under Rule 15, Ala.R.Civ.P., does not apply to habeas cases under Rule 32, Ala. R. Crim. P.  *See Jenkins v. State*, 2005 WL 796809 (Ala. Apr. 8, 2005)

## The Trial Court's Rule 32 Decision

On August 28, 2002, the trial court denied Boyd's petition.  It did so without an evidentiary hearing and without addressing the new issues raised or the additional facts provided in the amended petition for habeas corpus.  Not only did the trial court not address the issues raised in the amended petition, it also did not find that the amended petition was due to be denied based on any finding of a lack of due diligence, surprise, newly discovered evidence or changed circumstances or that there was some prejudice that would result to the State.  *See, e.g., Cochran v. State*, 548 So. 2d 1062, 1075 (Ala. Crim. App. 1989), *rev'd on other grounds, Rhone v. State*, 900 So. 2d 455 (Ala. 2004) (the trial judge should allow a proposed amendment if it is  necessary for a full determination of the merits and if it does not unduly prejudice the opposing party or unduly delay the trial) (citations omitted).  It simply ignored it.

In its order, the trial court addressed all issues put forth in the original petition. (CR32 at 454-504).  However, none of the facts stated in or the issues raised in Boyd's amended petition were addressed by the trial court in this order.

The trial court first reviewed the ineffective assistance of counsel claims.  It proceeded under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The court addressed petitioner's claims of ineffective assistance as follows.

### I.  Ineffective Assistance of Counsel During Both the Guilt and Penalty Phases of Trial

#### A.  Grossly Inadequate Compensation.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial and because it was raised during the direct appeal, citing Rule 32.2(a)(3) and (4), Ala. R. Crim. P.  It also held that this claim failed to state a material issue of law in that the Alabama appellate courts have repeatedly rejected this same claim, citing *Ex parte Smith*, 698 So. 2d 219 (Ala. 1997), and numerous other Alabama cases.

The court also held that petitioner failed to state a claim upon which relief could be granted.  It held that Boyd had no standing to assert an unconstitutional taking claim on behalf of the attorneys that represented him.

### B.  Failure to Obtain a Continuance.

The trial court summarily dismissed this claim pursuant to Rule 32.7(d), Ala. R. Crim. P., based on Boyd's failure to state a claim upon which relief may be granted.  On direct appeal, the Alabama Court of Criminal Appeals reviewed and addressed the trial court's denial of the requested continuance and held that no error occurred in the trial court's failure to grant a continuance.  Therefore, the court held no prejudice resulted from the denial of this motion.

### C.  Ineffective Assistance of Counsel at the Guilt-Phase.

#### 1.  Trial Counsel Failed to Adequately Investigate and Challenge the State's Capital Murder Charge.

The trial court dismissed this claim under Rule 32.6(b), Ala. R. Crim. P., as being insufficiently specific.  The court noted that, while petitioner alleged that trial counsel failed to discover "critical exculpatory evidence surrounding Mr. Boyd's alleged involvement in the death of the victim," his petition did not

disclose what this evidence was or how it should have been uncovered by a reasonable lawyer.  Likewise, the petition was silent as to how trial counsel should have mounted a challenge to his arrest or more effectively cross-examined witnesses.

In addition, the trial court found that the claim that the State was allowed to obtain a conviction on the basis of unchallenged evidence was unsupported by the record.  The court noted that petitioner's trial counsel put on an alibi defense and challenged the testimony of Quintay Cox and Donique Cox.  Further, the defense challenged the testimony of Sharon Ackles through the testimony of Bertha Ackles.

In another claim, petitioner asserted that trial counsel had a duty to investigate each and every possible avenue of defense.  The trial court held that this argument was plainly wrong and that "no absolute duty exists to investigate particular facts or a certain line of defense," quoting *United States v. Chandler*, 218 F.3d 1305, 1317 (11th Cir. 2000).  It further noted that Boyd's petition failed to assert the existence of one specific piece of evidence that went undiscovered based on the deficient performance of trial counsel.  Thus, this claim was held to lack merit.

The trial court further found that defense counsel put forth an alibi theory and attacked the motives of Quintay and Donique Cox.  In addition, counsel argued that Shawn Ingram was the primary instigator of this offense and that Boyd was forced to cooperate for fear of being killed if he refused.

The trial court noted that, in support of their defense theory, trial counsel called Willie Lynch, Nigel Raines, Bertha Ackles, Willie Watson, Catherine Jones, Felicia Jones, Charlene Wolf, Tracy McDonald and Lagunia Pearson as witnesses in the guilt phase and held that these witnesses and their testimony "completely destroy the baseless assertions in Boyd's petition that trial counsel conducted little or no investigation in this case."  (CR32 at 466).

The circuit court concluded that counsels' performance at trial indicated that they were prepared and that the defense mounted was a reasonable one.  It re-emphasized the fact that the petition did not offer any specific facts in support of a deficient performance or prejudice argument and that the performance by trial counsel was reasonable.  Citing *Chandler*, 218 F.3d at 1320, the trial court held that, because what the trial lawyers did in investigating and preparing a defense was reasonable, as established through the record of petitioner's case-in-chief and the cross-examination employed by trial counsel, the court's inquiry was complete. It was irrelevant whether defense counsel could have done something more.  Thus, this claim was summarily dismissed pursuant to Rule 32.7(d), Ala. R. Crim. P. (CR32 at 469).

## 2.  Failure to Procure Necessary Expert Witnesses.

Again, the trial court noted a lack of specificity in petitioner's claim.  The court observed that Boyd limited his claim to alleging that counsel "failed to procure an expert to counter the testimony presented by the State regarding the

victim's death."  He did not state what type of expert should have been obtained

and in what way it would have countered the State's expert testimony.

### 3.  Failure to Present, Adequately Argue and Obtain Favorable Rulings on Motions.

#### a.  Failure to Object to the Court's Failure to Give a Lesser-Included Offense Instruction.

The trial court noted that the Alabama Court of Criminal Appeals addressed

the underlying claim on direct appeal.  *Boyd*, 715 So. 2d at 836-37.  That court

found no evidence supported such a charge and no evidence that Boyd was forced

to participate in the offense.  Thus, Boyd could not establish prejudice.  This claim

was dismissed pursuant to Rule 32.7(d), Ala. R. Crim. P.

#### b.  Failure to Object to the Trial Court's Reasonable Doubt Instruction.

The Alabama Court of Criminal Appeals addressed the underlying claim

regarding the reasonable doubt instruction on direct appeal.  The appellate court

found no error in the trial court's instruction.  *Boyd*, 715 So. 2d 843-44.  Because

no error existed in the instruction, trial counsel cannot have been ineffective for

failing to object.  This claim was summarily dismissed.

#### c.  Failure to Object to the Trial Court's Kidnaping Instruction.

The Alabama Court of Criminal Appeals addressed the underlying claim on

direct appeal.  *Boyd*, 715 So. 2d 852, 855.  It found no error.  Because no error

existed in the instruction, trial counsel cannot have been ineffective for failing to

object.  Therefore, petitioner could not establish prejudice.

### d.  Failure to Object to the Trial Court's Instruction on Aggravating Circumstances.

The trial court stated that it reviewed the jury instructions given at the penalty phase and was convinced that they were not erroneous.  Thus, it concluded that this issue was without merit.

### e.  Failure to Object to the State's Challenges for Cause.

The trial court noted that the Alabama Court of Criminal Appeals addressed, on direct appeal, the court's grant of the four challenges for cause to which Boyd was asserting trial counsel should have objected.  *Boyd*, 715 So. 2d at 842.  The appellate court, after reviewing the record, found that three of four potential jurors stated they definitely could not put their personal views aside and follow the law. The fourth stated that she was against the death penalty and clearly indicated that she would not be able to perform her duties as a juror because of these feelings.  It held that each of these jurors was properly excluded.  Therefore, no prejudice existed  and the claim was summarily dismissed.

### f.  Failure to Object to the Exclusion of Certain Venire Members.

Boyd had complained that trial counsel excluded jurors Pruit and Pilkington. The appellate court found that the trial judge did not exceed his discretion in this case.  Therefore, Boyd could not establish prejudice and the claim was summarily dismissed.

### g.  Failure to Individually Voir Dire Jurors After Courtroom Outburst.

When this occurred, nothing was said by the spectator during the outburst that could be understood.  The jury was instructed as a group to disregard the outburst.  The trial court noted that a jury is presumed to follow their instructions.  According to *Chandler*, 218 F.3d at 1315, to prevail, Boyd must establish that "no competent counsel would have [not objected]."  The trial court further found that the failure to ask for individual voir dire was reasonable given that to do otherwise could leave a more lasting impression in the minds of the jurors.  The Sixth Amendment does not require counsel to make every conceivable objection.  *Chandler*, 218 F.3d  at 1319.  Consequently, this claim was summarily dismissed.

### h.  Failure to Object to the Court's Colloquy with Cox.

The trial court stated that, when Quintay Cox initially refused to testify, the court was asked to allow Cox to testify, outside the presence of the jury, so that his refusal to testify would be on the record.  The court then engaged Cox in a colloquy to ascertain if he realized his rights and the consequences of his decision.  At the conclusion of that colloquy, Cox was allowed to break his deal with the State.  However, Cox was kept at the courthouse so that his family and attorney could talk to him about this decision, and he subsequently changed his mind and agreed to testify.  The trial court held that it did nothing improper during this colloquy and, therefore, trial counsel was not ineffective for failing to object.

### i.  Failure to Adequately Argue and Win a Motion for a Judgment of Acquittal.

This claim was dismissed by the trial court based on a lack of specificity as required by Rule 32.6(b), Ala. R. Crim. P.  The trial court noted, for example, that Boyd faulted his trial counsel for not making a successful argument to support Boyd's motion for a judgment of acquittal.  However, Boyd did not specifically state what could have been, but was not, argued to obtain a judgment of acquittal.

Furthermore, the trial court held that a review of the record showed that Boyd was not entitled to a judgment of acquittal.  The State made out a *prima facie* case and no other grounds for a judgment of acquittal were apparent on the record.  Thus, Boyd could not establish prejudice.

### j.  Failure to Adequately Argue and Win a Favorable Ruling on the Motion for New Trial.

The trial court dismissed this claim for the same reasons as stated in sub-issue "i", above.  It held that this claim did not state what could have been argued by trial counsel to prevail on the motion for a new trial.  Thus, it was dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P.

Furthermore, the trial court stated that a review of the record indicated that Boyd was not entitled to a new trial.  Nothing apparent on the record supported Boyd's contention that a reasonable counsel could have succeeded in obtaining a new trial.  This issue was summarily dismissed.

### k.  Failure to Object When the Trial Court Failed to Instruct the Jury that it Could Consider Mercy or Sympathy in Its Verdict.

This issue was dismissed by the trial court for failure to state a material issue of law or fact and for failure to state a claim upon which relief could be

granted.  The Alabama Court of Criminal Appeals addressed the underlying issue.
*Boyd*, 715 So. 2d at 846.  The appellate court found nothing wrong with the fact
that the prosecutor argued that Boyd was not entitled to any sympathy because he
was merely asking the jury not to get distracted by matters unrelated to the
evidence, but to confine themselves to the facts and the law.

The appellate court noted that petitioner was allowed to present pleas for
mercy through witnesses called during the sentencing hearing.  It found no error in
the trial court's failure to give an instruction concerning the consideration of
mercy in the sentencing of Boyd, or in the prosecutor's argument to the jury that
they should abstain from acting out of sympathy.

Because no "mercy" instruction was necessary, petitioner could not
establish that trial counsel was ineffective for failing to seek such an instruction.
Therefore, no prejudice occurred to petitioner.  This claim was summarily
dismissed pursuant to Rule 32.7(d), Ala. R. Crim. P.

## l.  Failure to Object to the Capital Sentencing Scheme.

The trial court noted that the Alabama Court of Criminal Appeals reviewed
the underlying issue–the claim that the death penalty statute is unconstitutional
because it does not state what weight the trial court is to give the jury's
recommendation–on direct appeal.  This issue was previously found to have been
determined adversely to petitioner.  He could not relitigate it under the guise of an
ineffective assistance of counsel claim.  That is, because the capital sentencing

scheme in Alabama is constitutional, trial counsel cannot have been ineffective for failing to object.  This claim was summarily dismissed.

### m.  Failure to Object When State Failed to Prove Accomplice Corroboration at Trial.

This issue was summarily dismissed by the trial court which held that, because the Alabama Court of Criminal Appeals found ample corroborative evidence, *see Boyd*, 715 So. 2d at 847, petitioner could not demonstrate prejudice resulting from trial counsel's failure to raise the issue at trial.  (CR32 at 484).

### n.  Failure to Adequately Move the Court for a Change of Venue.

This claim was dismissed because it was insufficiently specific, as required by Rule 32.6(b), Ala. R. Crim. P.  The Alabama Court of Criminal Appeals addressed the underlying claim and noted that no indication appeared in the record that a change of venue was warranted.

The trial court stated that other appellate cases have held that the relevant question is not whether the community remembered the case, but whether individual jurors harbored fixed opinions such that they could not impartially judge the accused.  In other words, just because the media extensively covered the case is not dispositive of this issue. The trial court further asserted that no facts were pleaded in the petition showing the effects of the media coverage on the jury. Boyd also did not allege that the newspaper articles related to his trial created an atmosphere of prejudice.

Based on this analysis, the court held that Boyd had failed to establish a material issue of law or fact. Thus, it was dismissed summarily and for lack of specificity.  Rules 32.7(d) and 32.6(b), Ala. R. Crim. P.

### o.  Failure to Adequately Challenge the Manner of Execution Used by the State of Alabama.

This issue was summarily dismissed.  The trial court, citing previous cases, stated that this issue had been decided adversely to petitioner's position on numerous occasions.

### 4.  Failure to Object to Instances of Prosecutorial Misconduct.

The trial court noted that, to prevail on this claim, Boyd must establish that no reasonable attorney would have failed to object to the evidence or arguments complained of.  The trial court held that it would be impossible for petitioner to show that no reasonable lawyer would have failed to object to the prosecutor's argument regarding the State's plea agreement with Quintay Cox, which petitioner characterized as an argument telling the jury to ignore evidence favorable to him.

The trial court also held that petitioner could not establish that no reasonable lawyer would have failed to object to the alleged hearsay; that is, the victim's statements at the time of his kidnaping at the "Happy Tree."  The trial court further found that the statements of the victim were not subject to exclusion under the hearsay rule because the victim was making an excited utterance or spontaneous exclamation admissible pursuant to Rule 803(2), Ala. R. Evid.

Pursuant to Rule 32.7(d), Ala. R. Crim. P., the trial court summarily dismissed the claim that trial counsel was ineffective for failing to object to the extensive leading of witnesses by the prosecutor because the petitioner failed to establish evidence of deficient performance.[17]

The trial court also held that the petitioner's claim that trial counsel was ineffective for failure to object to the prosecutor's alleged insertion of his personal opinion in his argument to the jury was due to be dismissed pursuant to Rule 32.7(d) because the Alabama Court of Criminal Appeals had found that none of the statements complained of were improper and that, therefore, the petitioner could not establish prejudice.

Petitioner's claim that trial counsel was ineffective for failing to object to the prosecutor's alleged comparison of the victim's rights with the constitutional rights of the petitioner was summarily dismissed pursuant to Rule 32.7(d) because, according to the trial court, Boyd failed to establish prejudice or deficient performance because he failed to demonstrate that no reasonable lawyer would have failed to object to the comments of the prosecutor.

The trial court also summarily dismissed petitioner's claim that trial counsel was ineffective for failing to object to the prosecutor's remarks regarding the definition of "reasonable doubt."  It further noted that the court had instructed the

---

[17] The trial court also stated that it was dismissing this claim pursuant to Rule 32.6(d), Ala. R. Crim. P.  However, this rule, as it stood both in 1999 and at the time the court issued its judgment in 2002, deals with which judge is to be assigned to hear a Rule 32 petition.  Thus, it contains no basis for the dismissal of a claim under Rule 32.  The court presumes that the trial court intended to reference Rule 32.6(b) for failure to provide a clear and specific statement of the grounds upon which relief is sought and a full disclosure of the factual basis of those grounds.

jurors that what the lawyers said to the jury was not evidence and that they were to base their verdict on the evidence that came from the witness stand and on the law as given by the court in its instructions to the jury. It held that, because a jury is presumed to follow the instructions, no prejudice occurred.

### D. Ineffective Assistance of Counsel at the Penalty Phase.

### 1. Failure to Investigate Mitigation Evidence.

The trial court stated that instead of alleging that a specific defense mounted by trial counsel was unreasonable and suggesting a specific alternative defense, Boyd made claims which were merely unsupported assertions with little or no specificity. The trial court also noted that the ABA guidelines regarding performance of counsel were non-binding and, in any case, do not generally reflect the legal and factual realities of Sixth Amendment ineffective assistance of counsel jurisprudence.

According to the trial court, in addition to Boyd's failure to set forth his claim in the context of the correct legal standard, pursuant to Rule 32.6(b), his claim was insufficiently specific to warrant further proceedings. It noted for example that, in paragraph 55 of the original petition, Boyd asserts that "effective preparation and investigation by defense counsel would have revealed a host of mitigating factors, which should have been presented at Mr. Boyd's penalty phase." The court stated that "[n]ot a single mitigating factor that would have been revealed is asserted along with this claim." (CR32 at 490). The trial court concluded that this paragraph was nothing more than a baseless allegation and a

conclusory statement with no specific facts to support it.  For this reason, the claim was summarily dismissed.

It further stated that Boyd's petition completely avoided the subject of Lucia Penland's work as a mitigation specialist in this case.  According to the trial court, the record reveals that Penland interviewed Boyd on several occasions[18] and interviewed his family members.  This material was prepared and submitted to trial counsel.

The education, training and experience of Ms. Penland was reviewed by the trial court, which noted that she had worked on more than 20 capital cases, including a leading role in eight to ten of those cases.  It further noted that, at a March 9, 1995, hearing, it was represented to the court that Penland was in Anniston working on the mitigation case.[19]  Four days later the record reveals that Penland had the family lined up for the mitigation phase, along with a plaque and some documents.[20]  Thus, the trial court concluded that, although trial counsel may not have conducted the largest share of the mitigation preparation, Penland was working on the behalf of petitioner's trial counsel to prepare for a possible penalty phase.

---

[18]  Actually, Ms. Penland testified that she had interviewed petitioner "a couple of times." (TR at 35).

[19]  In addition to this, trial counsel advised the court that, though she was not yet finished with her investigation, she had advised trial counsel "that she was pretty close to having everything tied up."  (TR at 52).

[20]  TR at 297.

In addition, the trial court noted that, during the penalty phase of the trial, trial counsel called 14 witnesses to testify on Boyd's behalf.  According to the trial court, a review of the testimony of various witnesses from this stage revealed that trial counsel's investigation went beyond the scope of the deficient performance alleged in the Rule 32 petition.

In response to Boyd's claim that trial counsel were ineffective because "the witnesses offered no narratives of their own when testifying about Boyd" but merely answered "yes" or "no" questions, thereby undermining the power of their testimony, the trial court cited *Chandler*, 218 F.3d at 1321 n.30, as authority for holding that this claim was without merit.  It quoted the Eleventh Circuit in *Chandler* stating that asking such questions could be because of concerns of opening the door to other areas and that, therefore, such a tactic was something a reasonable lawyer might do.

The trial court held that a review of the testimony of the penalty-phase witnesses called by petitioner revealed that the questioning by trial counsel was oriented toward eliciting facts supporting this defense; that is, that Boyd's age, lack of significant prior criminal activity, involvement with his community's youth sports programs, involvement with his children, and his friendliness to co-workers, family members and friends warranted life without parole instead of the death penalty.

The trial court further noted that, although petitioner alleged that trial counsel failed to talk to "numerous witnesses, including family members and

friends of Mr. Boyd," and names these witnesses, the substance of each person's expected testimony is not set forth in the petition, making this claim insufficiently specific.[21]

To the extent Boyd did allege, generally, that these witnesses would have testified to Boyd's "widespread positive impact in his community, his leadership abilities, and the manner in which he guided the young children around him away from trouble,"[22] the trial court held that such testimony was cumulative and would not be sufficient to support a finding of ineffective assistance during the penalty phase by trial counsel.

Finally, the trial court held that the idea that ineffective assistance can be proved by bringing forth new witnesses who say that they would have offered additional mitigation testimony if called to the witness stand was wrong as a matter of law.  Again, the trial court cited the Eleventh Circuit's opinion in *Chandler*, wherein it held that the mere fact that other witnesses might have been available or that other testimony might have been elicited was not a sufficient ground to demonstrate ineffective assistance of counsel because it is judging trial counsel's actions from the benefit of hindsight.  According to the Eleventh Circuit, "[o]nce we conclude that declining to investigate further was a reasonable act, we do not look to see what a further investigation would have produced." *Chandler*, 218 F.3d at 1316 n.20 (citing *Rogers v. Zant*, 13 F.3d 384, 388 (11th Cir. 1994)).

---

[21] It is noted that the amended Rule 32 petition *did* include the substance of the expected testimony of each witness.  This fact is discussed *infra.*

[22] CR at 408-09.

According to the trial court, when the correct standard was applied, Boyd's assertions in his Rule 32 petition were not meritorious on their face.  In answer to the question: "Could Boyd's trial counsel reasonably decide to quit investigating further mitigation witnesses upon finding and preparing the witnesses who did, in fact, testify at trial?", the trial court stated the answer is "yes."  The trial court noted that, among those called to testify were a former co-worker, a former employer, Boyd's girlfriend (who is also the mother of one of his children), an ex-girlfriend (who is the mother of one of Boyd's children), Boyd's stepfather, Boyd's grandmother, members of Boyd's neighborhood who had been touched or positively impacted by Boyd's generosity or kind acts, and those who knew of Boyd's impact as a volunteer with Little League basketball.  Based on this evidence, it held that a reasonable lawyer could have concluded that this type of mitigation defense would be sufficient.  Accordingly, this claim was summarily dismissed.

### 2.  Trial Counsels' Failure to Object to Numerous Instances of Improper Arguments and Instructions to the Jury During the Penalty Phase.

The trial court held that petitioner's claim that, throughout the penalty phase both the prosecutor and the trial court improperly emphasized that the jury's role in the sentencing process was not to make a final decision, but merely to make a recommendation to the judge, was reviewed and rejected by the Alabama Court of Criminal Appeals.  *Boyd*, 715 So. 2d at 850-51.  It held that Boyd could not

relitigate this claim in the guise of an ineffective assistance claim.  Therefore, it was summarily dismissed.

With regard to petitioner's claim that the prosecutor inserted his personal opinion during the sentencing phase, the trial court noted that the Alabama Court of Criminal Appeals had reviewed the places where the prosecutor said "I think" and similar statements, and noted that when these comments were read in context with the entire argument, it was clear that they were "legitimate inferences and reasonable impressions from the evidence."  *Boyd*, 715 So. 2d at 841.  They were held not to be improper statements of opinion.  *Id.*  Having again reviewed these statements, the trial court stated it was convinced that trial counsel were not ineffective for failing to object, citing *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990), for the rule that counsel cannot be ineffective for failing to raise issues that have no merit.

### II.  The State Violated *Brady v. Maryland* By Failing to Turn Over Potentially Exculpatory Evidence and Information.

### A.  Exculpatory Statement by Boyd While in Police Custody.

The trial court considered petitioner's claim that the State failed to provide him with an exculpatory statement allegedly made by him while he was in police custody at the District Attorney's office.  It held that this assertion could not form the basis for a valid *Brady* claim.  Boyd was obviously present during this questioning and thus aware of anything he might have said during that time period.  Therefore, it held, citing *In re Magwood*, 113 F.3d 1544, 1548 (11th Cir. 1998), and *Felker v. Turpin*, 101 F.3d 657 (11th Cir. 1996), that Boyd had

personal knowledge of the proceeding which is imputed to his later attorneys.  As a result, this claim was summarily dismissed pursuant to Rule 32.7(d), Ala. R. Crim. P.

The trial court also held that, because Boyd did not allege the substance of his "exculpatory" statements that formed the basis of his claim, his *Brady* claim was insufficiently specific to warrant further proceedings, citing Rules 32.3 and 32.6(b), Ala. R. Crim. P.

### B.  Exculpatory Statements by Co-Defendants.

Boyd also alleged that the State committed a *Brady* violation because it failed to turn over allegedly exculpatory statements made by co-defendants.  The trial court rejected this claim for one of the same reasons it rejected Boyd's *Brady* claim regarding his own statement: lack of specificity.  Boyd failed to allege the substance of any exculpatory statements made by co-defendants.  This claim was held to be nothing more that a bare allegation and conclusions of law which were insufficient to warrant any further proceedings pursuant to Rule 32.6(b), Ala. R. Crim. P.

### C.  State's Agreements with Witnesses and Conflicting Statements by Witnesses.

The trial court noted that, although paragraph 69 of petitioner's original petition asserted that agreements made with the State witnesses with criminal records were not turned over to Boyd, petitioner failed to name the specific witnesses or what the "agreements" allegedly were.  Also, it found that Boyd had failed to name those witnesses who allegedly gave conflicting statements.  Thus,

the claim was dismissed for lack of specificity pursuant to Rule 32.6(b), Ala. R. Crim. P.

The trial court also held that these claims were barred because they could have been, but were not raised at trial, pursuant to Rule 32.2(a)(3), Ala. R. Crim. P.  In both its original answer and its amended answer, the State raised this procedural bar.  According to the court, petitioner never attempted to disprove this ground of preclusion, despite the passage of over a year since the State filed its original answer.  It further noted that in this claim, petitioner did not assert that any suppression by the State continued until such time as the claim could not have been raised at trial.  Thus, the court found that procedural default existed based on Boyd's failure to disprove its existence.  (*See* Rule 32.3, Ala. R. Crim. P.).

### III.  The Use of Irrelevant and Highly Prejudicial Penalty-Phase Evidence During the Guilt Phase of Boyd's Trial.

This claim was held to be procedurally barred because it was raised and addressed at trial.  It was also held to be procedurally barred because it was raised and addressed on appeal.  *Boyd*, 715 So. 2d at 832-33; Ala. R. Crim. P. 32.2(a)(2) and (4), 32.7(d).

### IV.  Failure to Instruct the Jury on the Lesser-Included Offense of Felony      Murder.

This claim was held to be procedurally barred because it could have been, but was not raised at trial.  It was also held to be procedurally barred because it was raised and addressed on appeal.  *Boyd*, 715 So. 2d at 836-37; Ala. R. Crim. P. 32.2(a)(3) and (4), 32.7(d).

## V.  Denial of the Motion for Continuance.

This claim was held to be procedurally barred because it was raised at trial and on appeal.  *Boyd*, 715 So. 2d at 837-38; Rules 32.2(a)(2) and (4), 32.7(d), Ala. R. Crim. P.

## VI.  Improper Use of Prior Bad Acts and Bad Character Evidence Against Boyd.

This claim was held to be procedurally barred because it was raised at trial and on appeal.  *Boyd*, 715 So. 2d at 838-39; Ala. R. Crim. P. 32.2(a)(2) and (4), 32.7(d).

## VII.  Improper Kidnaping Instruction.

This claim was held to be procedurally barred because it could have been, but was not, raised at trial.  It was also held to be procedurally barred because it was raised and addressed on appeal.  *Boyd*, 715 So. 2d 852, 855; Ala. R. Crim. P. 32.2(a)(3) and (4), 32.7(d).

## VIII.  Improper Aggravating Circumstances Instruction.

This claim was held to be barred because it could have been, but was not, raised at trial.  It was also held to be procedurally barred because it was raised on appeal in Boyd's brief to the Alabama Supreme Court.  Ala. R. Crim. P. 32.2(a)(3) and (4), 32.7(d).

## IX.  Claims of Prosecutorial Misconduct.

### A.  The Prosecutor Improperly Told the Jury Not to Consider Evidence Favorable to the Defense Regarding the State's Use of Accomplice Testimony.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial.  It held that it was also procedurally barred because it was raised on appeal in Boyd's brief to the Alabama Supreme Court. Ala. R. Crim. P. 32.2(a)(3) and (4), 32.7(d).

### B.  The Prosecutor Prejudicially Contrasted Boyd's Constitutional Rights with the Rights of the Victim.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial.  It held that it was also procedurally barred because it was raised on appeal in Boyd's brief to the Alabama Supreme Court. Ala. R. Crim. P. 32.2(a)(3) and (4), 32.7(d).

### C.  The State Obtained a Conviction and Death Sentence Based on Inadmissible Hearsay.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial.  It held that it was also procedurally barred because it was raised on appeal in Boyd's brief to the Alabama Supreme Court. Ala. R. Crim. P. 32.2(a)(3) and (4), 32.7(d).

### D.  The Prosecutors Asked Too Many Leading Questions.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial.  It held that it was also procedurally barred because it was raised on appeal in Boyd's brief to the Alabama Supreme Court. Ala. R. Crim.  P. 32.2(a)(3) and (4), 32.7(d).

### E.  The Prosecution Improperly Expressed Their Personal Opinions on the Sufficiency of the Evidence and Boyd's Guilt.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial.  It held that it was also procedurally barred because it was raised on appeal in Boyd's brief to the Alabama Supreme Court. Ala. R. Crim. P. 32.2(a)(3) and (4), 32.7(d).

## X.  The Trial Court Improperly Granted the State's Challenges For Cause.

The trial court held that this claim was procedurally barred because it was raised and addressed at trial.  It was also held to be procedurally barred because it was raised and addressed on appeal.  *Boyd*, 715 So. 2d at 842; Ala. R. Crim. P. 32.2(a)(2) and (4), 32.7(d).

## XI.  The Court Improperly Excluded Venire Members from Serving on Boyd's Jury.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial.  Ala. R. Crim. P. 32.2(a)(3).  It was also held to be procedurally barred because it was raised and addressed on appeal. *Boyd*, 715 So. 2d at 842-43; Ala. R. Crim. P. 32.2(a)(4), 32.7(d).

## XII.  The Court's Reasonable Doubt Instruction was Unconstitutional.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial. Ala. R. Crim. P. 32.2(a)(3).  It was also held to be procedurally barred because it was raised and addressed on appeal.  *Boyd*, 715 So. 2d at 843-44; Ala. R. Crim. P. 32.2(a)(4), 32.7(d).

## XIII.  The Manner of Execution in Alabama Is Unconstitutional.

The trial court held that this claim was procedurally barred because it could have been, but was not, raised at trial.  It was also held to be procedurally barred because it was raised and addressed on appeal.  *Boyd*, 715 So. 2d at 851; Ala. R. Crim. P. 32.2(a)(4), 32.7(d).

Based on the trial court's findings of fact and conclusions of law, summarized above, Boyd's Rule 32 petition was dismissed and denied with prejudice.

### The Alabama Court of Criminal Appeals Rule 32 Decision

Petitioner appealed the denial of his Rule 32 petition to the Alabama Court of Criminal Appeals.  In the appeal, petitioner raised *and* argued the following issues:[23]

**I.  The Trial Court Erred by Dismissing Mr. Boyd's Petition Without an Evidentiary Hearing Based on a Proposed Order Submitted by the State That Did Not Address the Specific Facts Presented in Mr. Boyd's Amended Petition.**

   A.  The Amended Petition Sets Forth Specific Facts Supporting Mr. Boyd's Claim of Ineffective Assistance of Counsel.

   1.  The Amended Petition Sets Forth Specific Facts That Trial Counsel Failed to Investigate Mr. Boyd's Alibi Defense.

   2.  The Amended Petition Sets Forth Specific Facts That Trial Counsel Failed Adequately to Prepare Mr. Boyd's Alibi Defense For Trial.

   3.  The Amended Petition States a Claim on Which Relief May Be Granted For Failure to Seek and To Obtain Necessary Expert Assistance.

---

[23]  *See, e.g., Brownlee v. State*, 666 So. 2d 91, 93 (Ala. Crim. App. 1995) ("We will not review issues not listed and argued in brief.").

4.  Defense Counsel was Constitutionally Ineffective at Trial by Arguing Mutually Exclusive Defenses of Alibi and Coercion.

5.  The Amended Petition States a Claim For Relief On the Ground That Trial Counsel Failed to Investigate the Evidence Presented By the Prosecution.

6.  Defense Counsels' Representation of Mr. Boyd During the Penalty Phase of his Capital Trial Was Deficient.

B.  The Amended Petition Sets Forth a Claim On Which Relief Can Be Granted Based on the Ineffective Assistance of Trial Counsel.

In this claim, petitioner again asserts that the trial court should have considered the contents of the Amended Petition before ruling that he had presented no evidence.

## II.  The Trial Court Failed to Address Material Claims Contained in Mr. Boyd's Amended Petition.

A.  The Trial Court Failed to Rule On Boyd's Claim that the Alabama Death Penalty Statute is Unconstitutional.

B.  The Trial Court Failed to Address Mr. Boyd's Argument that the Sentence of Death in this Case Violated the Eighth and Fourteenth Amendments Under *Enmund v. Florida.*

## III.  The Trial Court Erred in Dismissing Mr. Boyd's Petition Without Ruling on Mr. Boyd's Discovery Motions.

## IV.  The Amended Petition States a Valid Claim for Relief Under *Brady v. Maryland.*

A.  The Prosecution Failed to Provide Defense Counsel With Police Logs and Reports.

B.  The Prosecution Failed to Provide Defense Counsel With Exculpatory Statements Made By Mr. Boyd.

C.  The Prosecution Failed to Provide Defense Counsel With Notes and Memoranda of Witness Statements Which Are Potentially Exculpatory.

D.  The Prosecution Failed to Provide Defense Counsel With Agreements that the State Made With Certain Witnesses.

E.  The Prosecution Failed to Provide Defense Counsel With Investigating Officer's Field Notes.

F.  The Prosecution Failed to Provide Defense Counsel With a Tape it Allegedly Possessed.

**V.  The Allegation that Alabama's Statutory Procedure for Imposition of the Death Penalty is Unconstitutional States a Claim for Relief and Cannot Be Dismissed.**

A.  A Death Sentence Not Imposed By a Jury Lacks the Reliability Safeguards Required By the Eighth Amendment.

**VI.  The Allegation That the Execution of Individuals with Certain Diminished Capacities Constitutes Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments Is Sufficient to State a Valid Claim for Relief and Cannot Be Dismissed.**

**VII.  The Procedural Errors at Trial Create the Risk that Alabama Will Execute an Innocent Person Which Constitutes a Violation of the Due Process Clauses of the Fifth and Fourteenth Amendments and Are Sufficient to State a Valid Claim for Relief.**

**VIII.  The Allegations that Petitioner Has Been Deprived of Due Process in Violation of the Fourteenth Amendment Are Sufficient to State a Valid Claim for Relief and Cannot Be Dismissed.[24]**

**IX.  Prosecutorial Misconduct**

A.  The Prosecutor Told the Jury Not to Consider Evidence Favorable to the Defense.

B.  The Prosecutor Prejudicially Contrasted Petitioner's Constitutional Rights With the Rights of the Victim.

C.  The State Obtained a Conviction and Death Sentence Based On Inadmissible Hearsay.

---

[24] In this claim, petitioner asserted that the cumulative effect of the errors alleged amounted to a due process violation warranting relief.

D.  The Prosecutors Asked So Many Leading Questions That, In Essence, They Testified for the State's Most Crucial Witnesses.

E.  The Prosecutors Improperly Expressed Their Personal Opinions On the Sufficiency of the Evidence and Boyd's Guilt.

**X.  The Court Improperly Granted the State's Challenges of Jurors For Cause.**

**XI.  The Court Improperly Excused Venire Members From Serving On Boyd's Jury.**

**XII.  The Court's Reasonable Doubt Instruction Was Unconstitutional.**

**XIII.  Alabama's Method of Execution by Electrocution Is Unconstitutional.**

The Alabama Court of Criminal Appeals issued a ruling in this case on September 26, 2003.  *Boyd v. State*, 913 So. 2d 1113 (Ala. Crim. App. 2003).  In its opinion, the Court of Criminal Appeals stated that, because Boyd was convicted of capital murder, his direct appeal included not only a review the issues presented by Boyd, but also a "plain error" search of the record.  *Id.* at 1122.

The first issue addressed by the Alabama Court of Criminal Appeals was Boyd's contention that the circuit court erred when it dismissed his Rule 32 petition without considering the additional facts and claims presented in his amended petition.  Boyd had argued that the Circuit Court's order of dismissal should be vacated and that the cause should be remanded for the Circuit Court to consider the additional facts presented in his amended petition, and to rule on the additional claims contained therein.  *Id.* at 1122-23.

The Court of Criminal Appeals noted that Boyd was correct in his claim that the Circuit Court did not consider, or rule on the additional facts and claims

presented in his amended petition.  It further noted, however, that the record also
reflected that Boyd never objected to the Circuit Court's failure to rule on his
amended petition.  It stated that Boyd never moved for leave to file the amended
petition, and the Circuit Court never entered an order granting Boyd leave to do
so.  It stated, moreover, that the Circuit Court never took any action indicating that
it was granting Boyd leave to file an amended petition or that it would consider
claims presented in an amended petition.

According to the court, it was Boyd's responsibility to invoke a ruling on
the new pleadings and he voiced no dissatisfaction with the trial court's failure to
rule until his case arrived in the appellate court, where the matter was raised for
the first time.  Because petitioner failed to obtain a ruling on this issue on the
record from the trial court, the Court of Criminal Appeals held that it was not
preserved for review.  *Id.* at 1123-24.

As authority for this position, the Alabama Court of Criminal Appeals cited
several cases including, among others, *Robinson v. State*, 869 So. 2d 1191, 1193
(Ala. Crim. App. 2003), which it asserted held that an appellant's claim that the
trial court erred in failing to make specific findings of fact as to all claims in the
appellant's Rule 32 petition was not preserved for review, because the appellant
did not first present the claim to the Circuit Court.  It also cited *Whitehead v. State*,
593 So. 2d 126, 130 (Ala. Crim. App. 1991), which it asserted held that the
appellant's claim that the Circuit Court failed to make specific findings of fact
relating to issues raised at an evidentiary hearing on the appellant's post-

conviction petition was not preserved for review, because the appellant did not first raise the issue in the trial court.  *Boyd*, 913 So. 2d at 1123-24.

The Court of Criminal Appeals concluded that, because Boyd never objected  to the Circuit Court's failure to rule on his amended petition and because he suffered no adverse ruling on the amended petition from the Circuit Court, this issue was not properly before the appellate court for review.  As a result, it found that, to the extent that Boyd, in his brief on appeal, cited to and relied on allegations he raised only in his amended petition that were not in his original petition, those allegations were not before the Court of Criminal Appeals.  Thus, it refused to consider them in the resolution of petitioner's Rule 32 appeal.  *Id.* at 1124.

The appellate court reached the same conclusion regarding Boyd's contention that the trial court erred when it dismissed his petition without ruling on his motions for Rule 32 discovery or on his *ex parte* application for funds.  It held that, because the Circuit Court failed to rule on these motions and Boyd never objected to the court's failure to rule or attempted to invoke a ruling, he never suffered an adverse ruling and, therefore, the issue was not properly before the Court of Criminal Appeals for review.  *Id.*

In a footnote, the appellate court cited *Ex parte Land*, 775 So. 2d 847, 852 (Ala. 2000), in which the Alabama Supreme Court held that discovery is not automatic under Rule 32 and that "good cause" is the standard by which to judge discovery motions.  This case further cautioned that post-conviction discovery

does not provide a petitioner with the right to fish through the prosecution's files and that it is not an investigative tool but, rather, a means of vindicating actual claims. *Boyd*, 913 So. 2d at 1124 n.5. It also noted that Boyd's discovery motions contained broad requests, in boilerplate language, for State files, with no attempt to relate the requests to specific claims in his Rule 32 petition. *Id.* It further noted that, in *Williams v. State*, 783 So. 2d 108, 113-14 (Ala. Crim. App. 2000), it had held that Rule 32 prisoners are not entitled to funds to hire experts to assist in post-conviction litigation. *Id.*

The appellate court next addressed Boyd's contention that the trial court erred when it denied his petition without holding an evidentiary hearing. The appellate court noted that, in his attempt to demonstrate to the Court of Criminal Appeals that he was entitled to an evidentiary hearing, Boyd cited the court to information contained in and claims asserted in his amended petition, in addition to information and claims contained in his original petition. Because Boyd suffered no adverse ruling with regard to the trial court's failure to consider the factual allegations and claims in the amended petition and because he never objected to the Circuit Court's failure to rule on his amended petition, the citations to allegations and claims raised only in his amended petition were not before the appellate court. *Id.* at 1125.

The Court of Criminal Appeals then reviewed pertinent parts of Rule 32, such as Rule 32.6(b), which require that the petition itself disclose the facts relied upon in seeking relief. Only if the petitioner pleads facts which, if true, would

entitle him to relief would he be entitled to an opportunity, as provided under Rule 32.9, Ala. R. Crim. P., to present evidence proving the alleged facts.  Whereas, if the court determines that the petition is not sufficiently specific (in violation of Rule 32.6(b)), or is precluded (under Rule 32.2), or fails to state a claim, or that no material issues of fact or law exist which would entitle the petitioner to relief under this rule and that no purpose would be served by further proceedings (under Rule 32.7(d)), then the claim can be summarily dismissed by the court without a hearing. *Id.* at 1126.

The Alabama Court of Criminal Appeals next considered petitioner's ineffective assistance of counsel claims.  It analyzed these claims under the standard set out in *Strickland v. Washington*.

The court first considered Boyd's claim that his trial counsel was ineffective during the guilt phase of his trial by failing to adequately investigate and challenge the State's capital murder charge against Boyd.  It then reviewed the details of this claim as they were alleged in his original petition and the trial court's finding that these claims were due to be dismissed pursuant to Rule 32.6(b) because they were insufficiently specific and because the defense put on by trial counsel was a reasonable one, so that what trial counsel may have failed to do was irrelevant. These claims were due to be summarily dismissed pursuant to 32.7(d).

The Court of Criminal Appeals agreed with the trial court's findings and they were adopted as part of its opinion.  It held that Boyd's claim did not provide a "clear and specific statement of the grounds upon which relief is sought,

including full disclosure of the factual basis of those grounds" as required by Rule 32.6(b), Ala. R. Crim. P.  *Boyd*, 913 So. 2d at 1131.  It held that no tangible fact tending to establish counsel's allegedly ineffective assistance was presented to the trial court.  The petition made no disclosure of any critical exculpatory evidence that trial counsel should have uncovered, no disclosure of any specific piece of evidence that went uncovered based on ineffective assistance, no disclosure of any reason why Boyd's arrest and pretrial detention were unlawful, no disclosure as to how trial counsel allegedly failed to adequately cross-examine witnesses or what the information was that was omitted as a result of the allegedly inadequate cross-examination, and no disclosure of what type of defense that counsel should have investigated or mounted.  *Id.* at 1131-32.

In addition, the appellate court found that Boyd had not alleged how the outcome of his trial would have been different had his trial counsel performed differently regarding this claim.  Therefore, it held that petitioner failed to state a claim of ineffective assistance of counsel under *Strickland v. Washington.*

By footnote, the Court of Criminal Appeals also found petitioner's claim that trial counsel were unable to adequately prepare his case, and therefore were ineffective , in part because the compensation of court-appointed attorneys for out-of-court work, as set forth in Ala. Code § 15-12-21 is "grossly inadequate," to be without merit.  This claim had been raised and rejected repeatedly by Alabama courts, citing, among other cases, *Bui v. State*, 717 So. 2d 6, 15 (Ala. Crim. App. 1997).  *Boyd*, 913 So. 2d at 1132 n.9.

The appellate court also noted that Boyd alleged no facts in support of his claim regarding inadequate compensation that would demonstrate that it resulted in deficient performance, or affected the outcome of his trial. Thus, it held that he had failed to establish ineffective assistance under the *Strickland* standard. The Court noted that, in reaching this decision, it was disregarding any information contained in the amended petition for the reasons stated above. *Id.* In addition, the Court of Criminal Appeals found this claim to be procedurally barred pursuant to Rule 32.2(a)(4) because it was raised and addressed on direct appeal. *Id.*

The appellate court next addressed petitioner's claim that trial counsel rendered ineffective assistance because they failed to procure necessary expert assistance. According to the appellate court, his sole support for this claim was limited to an assertion that trial counsel failed to procure an expert to counter the testimony presented by the State regarding the victim's death. *Id.* at 1132-33.

The court again quoted extensively from the trial court which found that this allegation was insufficient to warrant any further proceeding because the claim was held to be merely conclusory. *Id.* at 1133. Because Boyd did not allege how his trial counsel's conduct was deficient or how the outcome would have been different had trial counsel performed differently, he failed to state a claim under *Strickland*. *Id.*

The appellate court next considered Boyd's claim that trial counsel rendered ineffective assistance by failing to adequately investigate and present mitigation evidence critical to Boyd's penalty-phase defense. Again, the Alabama Court of

Criminal Appeals quoted extensively from the circuit court opinion which held that Boyd, instead of alleging that a specific defense mounted by trial counsel was unreasonable and suggesting an alternative defense, made numerous unsupported assertions with little or no specificity.  It also quoted the trial court's recitation of the evidence presented by petitioner's counsel at the sentencing phase of his trial, listing the witnesses and outlining their testimony.

The appellate court agreed with the circuit court's finding that, contrary to the requirements of Rule 32.6(b), this claim of ineffective assistance did not provide a clear and specific statement of the grounds of the claim, and failed to provide a full disclosure of the factual basis of those grounds.

It also agreed that trial counsel had ample and valuable assistance in preparing for the penalty phase of the trial from Lucia Penland, a mitigation specialist with the Alabama Prison Project.  It found, like the trial court, that to the extent Boyd was alleging that certain potential mitigation witnesses whom his counsel allegedly failed to interview would have testified to Boyd's positive impact in his community, his leadership abilities, and the manner in which he guided the young children around him away from trouble, such testimony would have been cumulative of testimony actually elicited by Boyd's trial counsel during the penalty phase of the trial.  *Id.* at 1139.  "'Unpresented cumulative testimony does not establish that counsel was ineffective.'"  *Id.* (quoting *Pierce v. State*, 851 So. 2d 558, 582 (Ala. Crim. App. 1999)).

The Court of Criminal Appeals also noted that counsel is not necessarily ineffective simply because it does not present all possible mitigating evidence.  *Id.* Furthermore, because Boyd failed to allege how his trial counsel was deficient or how the outcome of his trial would have been different had his trial counsel performed differently, the appellate court held that Boyd failed to state a claim of ineffective assistance under the *Strickland* standard.  *Id.*

The appellate court next addressed Boyd's contention that the prosecution violated *Brady v. Maryland*.  By footnote, the appellate court noted that, in his appellate brief, petitioner supported this claim by citing information contained in his amended petition, as well as information contained in his original petition.  It stated that, for the reasons noted above, it would only consider the factual allegations contained in Boyd's original petition in its analysis of this claim. Thus, the appellate court stated that it would not consider the three separate *Brady* violations that were only asserted in the amended petition.  *Boyd*, 913 So. 2d at 1140 n.10.

The Alabama Court of Criminal Appeals listed the *Brady* claims made by petitioner in Claim II, paragraphs 66-70 of his original petition.  The appellate court also quoted directly from the trial court's ruling on these issues.  *Id.* at 1141-42.

The appellate court agreed with the trial court's findings and citations of authority, that petitioner's claim of a *Brady* violation based on the prosecutor's failure to turn over exculpatory statements he allegedly made while in police

custody failed to state an independent ground for relief.  It also found that this claim was insufficiently specific as required by Rule 32.6(b) to warrant further proceedings.  Boyd failed to allege the substance of his exculpatory statements, and the appellate court agreed that he had failed to carry his burden under Rules 32.3 and 32.6(b).  *Id.*

The Court of Criminal Appeals agreed also with the trial court's finding that the remaining *Brady* claims made in his initial petition were due to be dismissed for failure to comply with the specificity requirements of Rule 32.  It agreed that Boyd had failed to state the substance of these allegedly exculpatory statements made by his co-defendants.  Likewise, petitioner failed to identify specific witnesses who supposedly had criminal records or what agreements were allegedly made with them.  In addition, the court found the trial court to be correct in holding that this latter claim was procedurally barred pursuant to Rule 32.2(a)(3), as one which could have been, but was not, raised at trial.  *Id.*

The Court of Criminal Appeals further held that, because Boyd made no assertion that this claim was based on newly-discovered evidence or that the State suppressed any of this information, the claim that the prosecutor suppressed plea agreements with witnesses was procedurally barred, pursuant to Rule 32.2(a)(5), because it could have been raised on direct appeal, but was not.  *Id.* at 1142.  The appellate court found summary disposition by the trial court to have been appropriate.  *Id.*

The appellate court next addressed petitioner's claim, found in Section VIII of his appellate brief, that the trial errors listed above cumulatively resulted in the denial of his right to due process. The appellate court stated that this specific claim was not presented by Boyd in his original Rule 32 petition and was raised for the first time on appeal. *Id.* at 1143. It held that this claim, therefore, was not properly before it for review. *Id.* at 1144. It further held that such a claim could have been raised at trial or on direct appeal, but was not. Therefore, it found that this issue was precluded pursuant to Rule 32.2(a)(3) and (5).

The Court of Criminal Appeals held that the trial court, in dismissing Boyd's remaining claims, found that many were precluded by various parts of Rule 32.2(a), Ala. R. Crim. P. It noted that the trial court ruled that the claims designated in Boyd's Rule 32 petition as Claims III, V, VI, and X were precluded pursuant to Rule 32.2(a)(2) and (4). *Id.* at 1142-43. It further noted that the claims designated in Boyd's Rule 32 petition as Claims IV, VII, VIII, IX.A-E, XI, XII and XIII were found by the trial court to be procedurally barred pursuant to Rule 32.2(a)(3) and (4).

The Court of Criminal Appeals also noted 24 claims of ineffective assistance of counsel, which petitioner raised in his Rule 32 petition, that were addressed by the Circuit Court in its order of dismissal, but were not raised by Boyd on appeal. These claims are the claims of ineffective assistance made by Boyd related to:

1. The trial court's denial of a continuance;

2.  Failure to object to the court's failure to give a lesser-included offense charge;

3.  Failure to object to the court's reasonable doubt instruction;

4.  Failure to object to the kidnaping instruction;

5.  Failure to object during the penalty phase to the court's instructions regarding aggravating and mitigating circumstances;

6.  Failure to object to the trial court's granting of the State's challenges for cause;

7.  Failure to object to the trial court's excusing several prospective jurors based on their personal circumstances and hardships;

8.  Failure to request the court to conduct individual voir dire of the jurors after the courtroom outburst of a spectator;

9.  Failure to object to the trial court's colloquy with Quintay Cox after he initially refused to testify for the State, as required by his plea agreement;

10.  Failure to adequately argue and win a favorable ruling on his motion for a judgment of acquittal;

11.  Failure to adequately argue and win a favorable ruling in a motion for new trial;

12.  Failure to object to the trial court's failure to inform the jury that it could consider mercy and sympathy in determining whether Boyd should receive a death sentence;

13.  Failure to object to the constitutionality of Alabama's capital-sentencing scheme;

14.  Failure to object to the State's failure to prove accomplice corroboration at trial;

15.  Failure to adequately move for a change of venue;

16.  Failure to adequately challenge the manner of execution used in Alabama;

17.  Failure to object to the prosecutor telling the jury not to consider evidence favorable to the defense;

18.  Failure to object to the prosecutors' allegedly heavy use of allegedly inadmissible hearsay;

19.  Failure to object to the prosecution's constant asking of leading questions;

20.  Failure to object to the prosecutors' expressions of personal opinion regarding the evidence at both phases of the trial;

21.  Failure to object to the prosecutor contrasting the rights of Boyd with the rights of the victim;

22.  Failure to object to the prosecutors' allegedly improper definition of reasonable doubt;

23.  Failure to object, during the penalty phase, to the prosecutor's expression of his personal opinion of Boyd's sentence; and,

24.  Failure to object during the trial's penalty phase to the prosecutor denigrating the role of the jury in the sentencing process.

*Boyd*, 913 So. 2d at 1144-45.  The appellate court stated that, because these claims were not pursued on appeal, they were deemed abandoned and would not be reviewed.  *Id.*, citing, *e.g., Brownlee v. State*, 666 So. 2d 91, 93 (Ala. Crim. App. 1995).  The court further noted that the substantive claims underlying many of these allegations of ineffective assistance of counsel in Boyd's petition were raised and addressed on direct appeal and no error was found.  *Boyd*, 913 So. 2d at 1146 n.12.

The Alabama Court of Criminal Appeals also addressed Boyd's argument that his death sentence was unconstitutional under the U.S. Supreme Court ruling in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002),

because his sentence was imposed pursuant to a capital-sentencing scheme that allows the trial judge, rather than the jury, to make the ultimate determination whether to impose the death penalty.  *Id.* at 1146.  Because this claim was not brought in his Rule 32 petition, the Alabama Court of Criminal Appeals found that it was not properly before the appellate court for review.  It also noted that *Ring* claims are not applied retroactively to post-conviction proceedings.  Therefore, this claim was held to be without merit.  *Id.*  By footnote, the Court of Criminal Appeals also stated that this claim had been rejected by it on numerous occasions. *Id.* at 1146 n.13 (citations omitted).

The appellate court also considered petitioner's claim that he was entitled to a determination whether his sentence of death violates *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).  In his petition, petitioner asserted that he grew up in a neighborhood contaminated with a chemical (PCBs) known to impact the temper and control of those who come into contact with it.  He also alleged he experienced trauma as a result of act of intra-familial violence and rape. Boyd asserted that "a good possibility" existed that he might be a victim of a disorder that would impact his ability to communicate, reason and control his impulses and might put him in the category of persons which *Atkins* says cannot be executed.

The Alabama Court of Criminal Appeals stated that it seriously questioned whether the vague assertions in Boyd's brief raise an issue whether, under the broadest definition of mental retardation, Boyd is retarded.  *Id.* at 1148.  It held

that, in any event, Boyd's *Atkins* claim was not raised in his original Rule 32
petition and nothing in the record indicated that Boyd is mentally retarded.
Accordingly, the appellate court declined to review this claim, citing *Fincher v.
State*, 837 So. 2d 876, 882 (Ala. Crim. App. 2002), for the holding that "[t]his
Court will not remand a case to the circuit court to hold an evidentiary hearing on
a jurisdictional claim that was not presented in the petitioner's Rule 32 petition
unless facts appear in the record affirmatively showing a lack of jurisdiction."

Finally, with regard to petitioner's claim in Section VII of his petition, that
"the lack of qualified counsel both at trial and on collateral review" created "a
substantial risk" that an actually innocent person will be executed, the appellate
court held that this claim was not properly presented in Boyd's original Rule 32
petition.  Therefore, it was not properly before the appellate court for review.
*Boyd*, 913 So. 2d at 1147-48.   For the reasons cited above, the Alabama Court of
Criminal Appeals affirmed the judgment of the Circuit Court in denying Boyd's
petition pursuant to Rule 32, Ala. R. Crim. P.

Thereafter, petitioner filed a motion for rehearing which the Court of
Criminal Appeals denied on December 2, 2003.  The Alabama Supreme Court
denied Boyd's petition for a writ of certiorari on May 27, 2005.

### Boyd's § 2254 Petition

After his Rule 32 petition was rejected by the Alabama Supreme Court,
Boyd filed the instant petition for relief pursuant to 28 U.S.C. § 2254, including an
Addendum of Grounds for Relief on June 3, 2005.  He filed an Amended

Addendum to the petition on July 15, 2005.  (Doc. #11, Amended Petition).  His petition for relief was timely filed.  The grounds for relief contained in Boyd's federal habeas petition are as follows:

### I.  Trial Counsel Were Ineffective in Violation of *Strickland v. Washington.*

A.  Trial Counsel Failed to Adequately Investigate Mr. Boyd's Alibi Defense.

B.  Trial Counsel Failed to Seek and Obtain Necessary Expert Assistance.

1.  Trial Counsel Failed to Hire an Expert to Testify to the Absence of Duct Tape on the Victim's Legs.

2.  Trial Counsel Failed to Hire an Expert to Testify to the Time of Death.

3.  Trial Counsel Failed to Hire a Toxicologist to Testify Regarding the Time of Death.

C.  Trial Counsel Failed Adequately to Prepare Mr. Boyd's Alibi Defense at Trial.

D.  Defense Counsel Was Constitutionally Ineffective At Trial By Arguing the Mutually Exclusive Defenses of Alibi and Coercion.

E.  Trial Counsel Failed to Investigate the Evidence Presented by the Prosecution.

F.  Defense Counsels' Representation of Mr. Boyd During the Penalty Phase of His Capital Trial Was Deficient.

### II.  The State Failed to Produce Potentially Exculpatory Information in Violation of *Brady v. Maryland.*

A.  The Prosecution Failed to Provide Defense Counsel With Police Logs and Reports.

B.  The Prosecution Failed to Provide Defense Counsel With Exculpatory Statements Made By Mr. Boyd.

C.  The Prosecution Failed to Provide Defense Counsel With Notes and Memoranda of Witness Statements That Are Potentially Exculpatory.

D.  The Prosecution Failed to Provide Defense Counsel With Agreements the State Made with Certain Witnesses.

E.  The Prosecution Failed to Provide Defense Counsel With Investigating Officers' Field Notes.

F.  The Prosecution Failed to Provide Defense Counsel With a Tape It Allegedly Possessed.

G.  Mr. Boyd is Entitled to an Evidentiary Hearing on His *Brady v. Maryland* Claim.

## III.  The Cumulative Effects of the State Court's Procedural Errors, the Ineffectiveness of Counsel, and the Prosecution's Misconduct Violated Mr. Boyd's Due Process Rights.

A.  The Trial Court, the Prosecution and Cox's Own Attorney Improperly Coerced Quintay Cox to Testify.

B.  The Trial Court Failed to Inform the Jury that It Could Consider Mercy and Sympathy in Its Verdict.

C.  The State Failed to Prove Accomplice Corroboration at Trial.

D.  Prosecutorial Misconduct Improperly Infected Mr. Boyd's Trial and Affected the Result.

E.  Improper Arguments and Instructions Also Infected the Penalty Phase of Mr. Boyd's Trial.

F.  The Court Improperly Failed to Change Venue Based On Extensive, Prejudicial Pretrial Publicity.

G.  The Court Failed to Give a Lesser-Included Offense Instruction.

H.  The Court's Reasonable Doubt Instruction Was Unconstitutional.

I.  The Court Improperly Instructed the Jury on the Kidnaping Charge.

J.  The Court's Instructions Regarding Aggravating Circumstances Were Improper.

K.  The Court Failed to Individually Voir Dire Jurors After an Outburst in the Courtroom.

L.  Trial Counsel Failed to Object to the State Capital Sentencing Scheme.

**IV.  The Lack of Corroborating Physical Evidence, Trial Counsel's Ineffectiveness in Developing Mr. Boyd's Alibi Defense, Prosecutorial Misconduct and Trial Court's Error Combine to Create an Unconstitutionally Great Risk That the State of Alabama Will Execute an Actually Innocent Man.**

**V.  Mr. Boyd's Death Sentence in Constitutionally Disproportionate Pursuant to *Enmund v. Florida*.**

**VI.  Mr. Boyd's Sentence Was Imposed Pursuant to an Unconstitutional Capital Sentencing Scheme Under *Ring v. Arizona*.**

### DISCUSSION

Petitioner's claims are governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  See *Neeley v. Nagle*, 138 F.3d 917, 921 (11th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997)).  Under the AEDPA, Congress included the statute enacted as 28 U.S.C. § 2254(d), which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was **adjudicated on the merits** in State court proceedings unless the adjudication of the claim—
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme
Court of the United States; or
        (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  This statute requires that, if a § 2254

claim was decided on its merits in state court, a federal court must first determine

whether the federal law applicable to petitioner's claim has been clearly

established by the Supreme Court.  *Neelley*, 138 F.3d at 924.  If so, the court must

next determine if the state court's adjudication of the claim was contrary to the

established Supreme Court law.  This determination can occur in two ways.  The

first would be when a state court faces a set of facts that is essentially the same as

those the Supreme Court has faced earlier, but given these facts the state court

reaches a conclusion different from the Supreme Court precedent.  *Williams v.

Taylor*, 529 U.S. 362, 405-07, 120 S. Ct. 1495, 1519-20, 146 L. Ed. 2d 389

(2000).  The second situation is one in which a state court, in contravention of

Supreme Court case law, fails to apply the correct legal principles to decide a case.

Such a result would be "contrary" in the sense that the state court has not

adjudicated the claim in the manner prescribed by the Supreme Court.  *Id.* at 405-

06, 120 S. Ct. at 1519.  Both of these types of errors are errors of pure law; in the

first case, a state court has denied a petitioner a constitutional right defined by the

Supreme Court in its role as interpreter of the Constitution, while in the second the

state court has failed to apply the proper law to a case.  *Neelley*, 138 F.3d at 923-

24.

If a state court's decision is not contrary to the law as established by the Supreme Court, the habeas court must determine whether the law was applied in an unreasonable manner.  A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing rule from the court's cases but unreasonably applies it to the facts of the case.  An application is also unreasonable if the state court either unreasonably extends a legal principle of Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams*, 529 U.S. at 407-08*,* 120 S. Ct at 1520.  When making this determination, the state court decision must stand unless it is not debatable among reasonable jurists that the result of which the petitioner complains is incorrect*.  Neelley*, 138 F.3d at 924-25.  The federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521.  Under this method of analysis, an erroneous or incorrect application of Supreme Court law is not necessarily an "unreasonable application."

With regard to any findings of fact which bear on the state court's decision, the AEDPA gives the following direction:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, **a determination of a factual issue made by a State court shall be presumed to be correct**.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1) (emphasis added).

Furthermore, as a general rule, a federal court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are independent and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553, 115 L. Ed. 2d 640 (1991). In *Coleman*, the Supreme Court stated, in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id*. at 750, 111 S. Ct. at 2565.

However, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835, 80 L. Ed. 2d 346 (1984)); *Cochran v. Herring*, 43 F.3d 1404, 1408 (11th Cir. 1996). For a state procedural bar to foreclose a federal court from reviewing a federal claim in a § 2254 proceeding, not only must the last state court rendering a judgment in the case comply with the "plain statement" rule, but also the procedural bar must be firmly established and a regularly followed state practice. *Ford v. Georgia*, 498 U.S. at 423-24, 111 S. Ct. at 857. When a state's "procedural default rule has been

only sporadically invoked, the procedural default no longer bars consideration of the issue in federal court." *Cochran v. Herring*, 43 F.3d at 1408.

**The Amended Petition**

As an initial matter, Boyd asserts that the State courts erred when they failed to consider the evidence he submitted or to address the merits of the claims that he raised in his amended Rule 32 petition.  He also argues that the trial court erred when it failed to rule on his motions for discovery and for funds for a forensics expert and an investigator.  Furthermore, he asserts that the State courts erred when they failed to grant him an evidentiary hearing.

Petitioner raised the issue of the failure of the trial court to address the facts and issues contained in his amended petition in his Rule 32 appeal to the Alabama Court of Criminal Appeals.  That court denied this claim on the ground that Boyd failed to bring it to the attention of the trial court first.

Petitioner first notes that, "[a]ccording to Rule 32, amendments to Rule 32 petitions, although discretionary with the trial court, should normally be freely allowed, if necessary for a full and fair determination on the merits." (Doc. #6, Petitioner's Brief, at 21 (quoting *Allen v. State*, 825 So. 2d 264, 268 (Ala. Crim. App. 2001) and citing Rule 32.7(d), Ala. R. Crim. P.).

According to petitioner, the Court of Criminal Appeals decision suggests that Alabama procedural rules require a petitioner to file a motion for reconsideration after dismissal of a Rule 32 petition.  Petitioner asserts that this holding by the appellate court is not the law and, thus, presents a new procedural

rule.  Because it is new, Boyd states that it is not "firmly established and regularly followed" in the Alabama court system.  As a result, petitioner claims this procedural bar must fail.  (Doc. #2, Petitioner's Brief, at 23).

Respondents do not address petitioner's claim that the procedural bar applied to justify the trial court's failure to consider the amended petition was not one that was "firmly established and regularly followed."  They simply reassert the procedural bar claiming that, because Boyd never moved for the trial court for leave to file the amended petition, and the Circuit Court never granted him leave to do so, the facts and arguments in the amended petition were not properly put before the State courts for their consideration.  Respondents repeat the mantra that a claim is procedurally defaulted when it is presented to the state court in a way that does not comport with state procedural rules.  (Doc. #20, Respondents' Brief, at 13) (citing *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999)).  Nowhere do respondents provide any law or cases to demonstrate that this procedural bar was firmly established and regularly followed at the time the trial court denied the Rule 32 petition.[25]

However, a review of Alabama cases, including those cited by the Alabama Court of Criminal Appeals in the appeal of the denial of petitioner's Rule 32 petition, reflect a number of instances where appellate courts in Alabama have refused to review a claim because the petitioner failed to raise the issue first with

---

[25]  The appropriate point of reference for determining whether a procedural rule was firmly established and regularly followed is not Alabama law as it now exists.  It is Alabama law as it existed when the procedural rule was applied.  *See Seibert v. Campbell*, 334 F.3d 1018, 1025-29 (11th Cir. 2003).

the trial court.  This approach is true even in situations where the alleged error was manifested in the opinion of the trial court disposing of the Rule 32 petition.  *See, e.g., Conners v. State*, 837 So. 2d 319, 322 (Ala. Crim. App. 2001) (where circuit court never ruled on petitioner's  motion for discovery and petitioner never objected to the circuit court's failure to rule on the motion, then, because petitioner suffered no adverse ruling from the circuit court, this issue was held not properly before appellate court for review); *Allen v. State*, 825 So. 2d 264 (Ala. Crim. App. 2001) (*pro se* petitioner for post-conviction relief could not raise issue of trial court's failure to rule on motion to subpoena transcript of prior proceedings on appeal of denial of relief, where petitioner never objected to trial court's failure to rule on motion, and petitioner never suffered adverse ruling on motion); *Pierce v. State*, 851 So. 2d 558, 574 (Ala. Crim. App. 1999) (although petitioner objected to the State's *submission* of a proposed order denying his Rule 32 petition, he did not object to the circuit court's use of this order in *denying* his petition; therefore, this issue was not preserved for review); *Thomas v. State*, 766 So. 2d 860, 870 n.2 (Ala. Crim. App. 1998) (stating that the appellant's claim that the circuit court improperly adopted *in toto* an order drafted by the State, which allegedly failed to address several claims in the appellant's Rule 32 petition, was not preserved for review because the appellant never objected to the circuit court's order denying his petition); *Morrison v. State*, 551 So. 2d 435 (Ala. Crim. App. 1989) (a defendant's claim in a postconviction proceeding that the trial court's wholesale adoption of State's proposed findings of fact and conclusions of law was improper

was not preserved for review because, though he had previously objected and stated findings were exclusive province of court, defendant never objected to the trial court's order denying defendant's petition for postconviction relief).

Furthermore, the law is well settled that a circuit court generally retains jurisdiction to modify a judgment for only 30 days after the judgment is entered. *See* Rule 24.1(b), Ala. R. Crim. P.  This general rule applies to Rule 32 petitions. *See Loggins v. State*, 910 So. 2d 146, 148 (Ala. Crim. App. 2005), citing *Henderson v. State*, 933 So. 2d 395, 397 (Ala. Crim. App. 2004).

When he filed his amended petition, petitioner did not file a "Motion to Amend" along with it.  He simply filed the amended petition with no request for leave to file it.  Rule 37.7(a), Ala. R. Crim. P., allows the State 30 days to respond to any petition filed by a petitioner.  The amended petition was filed on May 20, 2002.  At the time the amended petition was filed, a hearing already had been set for June 14, 2002.  At first glance it would appear that, if leave to amend had been granted, the State would not have had 30 days available to respond.  However, the hearing set for June 14 was a status conference and a hearing on pending motions, not an evidentiary hearing.  Thus, it appears that time remained for petitioner's amended petition to have been considered.  *See Broadnax v. State*, No. CR-04-2141, 2007 WL 1865450 (Ala. Crim. App. June 29, 2007).

However, even assuming petitioner was not required to request the trial court to allow him to submit an amended petition and that the amended petition should have been considered by the Court of Criminal Appeals, when the trial court's

ruling was entered, Boyd knew that the facts and issues presented in his amended petition had not been addressed or considered by the trial court. At that point, petitioner had 30 days to request that the trial court correct this perceived error. Instead, he did nothing with regard to the trial court and proceeded with an appeal to the Alabama Court of Criminal Appeals.

Based on this analysis, the undersigned judge concludes that the procedural bar invoked by the Alabama Court of Criminal Appeals is firmly established and regularly followed under Alabama law. Petitioner had 30 days to request the trial court to address the omission, but he did not do so. Because he failed to do so, he was held to be procedurally barred from having the facts and issues in the amended petition considered by the Alabama Court of Criminal Appeals.

The procedural bar asserted by the Alabama Court of Criminal Appeals must be observed in petitioner's federal proceeding. If a petitioner fails to present a federal constitutional claim to the appropriate state court in the manner prescribed by the state court's procedural rules, the state court may decline to address the claim. In turn, the claim is barred from federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 91, 97 S. Ct. 2497, 2508-09, 53 L. Ed. 2d 594 (1977). So long as the procedural default rests on adequate and independent state grounds, the petitioner is generally barred from obtaining federal habeas review of the defaulted claim. *Coleman v. Thompson*, 501 U.S. at 729-31, 111 S. Ct. at 2553. As previously noted, the Court in *Coleman* held that the adequate and independent state ground doctrine bars federal habeas review when a state court refuses to

address the prisoner's federal claims because the petitioner failed to satisfy a state procedural requirement.  "In the habeas context, the application of the adequate and independent state ground doctrine is grounded in concerns of comity and federalism. . . .  In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court."  *Id.*

The bar applied by the trial court and affirmed by the Alabama Court of Criminal Appeals is an independent and adequate state ground.  Consequently, the facts and issues presented by petitioner in his amended petition are procedurally barred from consideration under *Coleman*, 111 S. Ct. at 2553.

## I.  <u>Ineffective Assistance Claims</u>

Petitioner makes several claims that he received ineffective assistance of counsel at trial and during the penalty phase of his case.  The Alabama Court of Criminal Appeals addressed petitioner's ineffective assistance of counsel claims and found them to be without merit.  The appellate court cited *Strickland v. Washington* as the basis for its determination of petitioner's ineffective assistance claims.

The law regarding ineffective assistance of counsel claims is well-settled and well-documented.  In *Strickland v. Washington*, the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*,

First, the defendant must show that counsel's performance was deficient.  This requires showing that

counsel made errors so serious that counsel was not
functioning as the "counsel" guaranteed the defendant by
the Sixth Amendment.  Second, the defendant must show
that the deficient performance prejudiced the defense.
This requires showing that counsel's errors were so
serious as to deprive the defendant of a fair trial, a trial
whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

In deciding whether an attorney's performance was ineffective, a court must
consider the totality of the circumstances. *Id.* at 690, 104 S. Ct. at 2066.  To
establish ineffective performance, a "petitioner must show that 'counsel's
representation fell below an objective standard of reasonableness.'"  *Darden v.
Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 2473, 91 L. Ed. 2d 144 (1986)
(quoting *Strickland*, 466 U.S. at 668, 104 S. Ct. at 2065).  The Eleventh Circuit
reviews a lawyer's conduct under the "performance" prong with considerable
deference, giving lawyers the benefit of the doubt for "heat of the battle" tactical
decisions.  *See Mills v. Singletary*, 161 F.3d 1273, 1285-86 (11th Cir. 1998)
(noting that *Strickland* performance review is a "deferential review of all of the
circumstances from the perspective of counsel at the time of the alleged errors");
*see also Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (*en banc*) ("The
test for ineffectiveness is not whether counsel could have done more; perfection is
not required.  Nor is the test whether the best criminal defense attorneys might
have done more.  Instead the test is . . . whether what they did was within the
'wide range of reasonable professional assistance.'" (citation omitted));  *Rogers v.
Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (stating that "[w]hen reviewing whether

an attorney is ineffective, courts should always presume strongly that counsel's

performance was reasonable and adequate" (internal quotation marks omitted)).

As the Eleventh Circuit explained:

> The standard for counsel's performance is
> reasonableness under prevailing professional norms.
> The purpose of ineffectiveness review is not to grade
> counsel's performance. . . .  To state the obvious: the
> trial lawyers, in every case, could have done something
> more or something different.  So, omissions are
> inevitable.  But, the issue is not what is possible or what
> is prudent or appropriate, but only what is
> constitutionally compelled. . . .  The petitioner must
> establish that particular and identified acts or omissions
> of counsel were outside the wide range of professionally
> competent assistance.

> Courts must indulge [the] strong presumption that
> counsel's performance was reasonable and that counsel
> made all significant decisions in the exercise of
> reasonable professional judgment.  Thus, counsel cannot
> be adjudged incompetent for performing in a particular
> way in a case, as long as the approach taken might be
> considered sound trial strategy.  Given the strong
> presumption in favor of competence, the petitioner's
> burden of persuasion--though the presumption is not
> insurmountable--is a heavy one. . . .  [B]ecause counsel's
> conduct is presumed reasonable, for a petitioner to show
> that the conduct was unreasonable, a petitioner must
> establish that no competent counsel would have taken
> the action that his counsel did take. . . .

> In reviewing counsel's performance, a court must avoid
> using the distorting effects of hindsight and must
> evaluate the reasonableness of counsel's performance
> from counsel's perspective at the time.  [I]t is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act or
> omission of counsel was unreasonable.

*Chandler v. United States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (*en banc*)

(citations and internal quotation marks omitted), *cert. denied*, 531 U.S. 1204, 121

S. Ct. 1217, 149 L. Ed. 2d 129 (2001).

> Likewise, the "prejudice" prong is difficult to meet. To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A finding of prejudice requires proof of "'unprofessional errors' so egregious 'that the trial was rendered unfair and the verdict rendered suspect.'" *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 2582, 91 L. Ed. 2d 305 (1986)). As we recently explained, "habeas petitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.' '[T]hat the error had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting *Strickland*).

*Johnson v. Alabama*, 256 F.3d 1156, 1177 (11th Cir. 2001).

The Alabama Court of Criminal Appeals cited generously from, and

adopted much of, the trial court's Rule 32 opinion regarding petitioner's claims of

ineffective assistance of counsel. Petitioner alleges numerous claims of

ineffective assistance of counsel at trial and during the sentencing phase of his

trial.

Ground I cited by petitioner in his § 2254 petition asserts that, at one

pretrial conference, defense counsel Mr. Willingham stated that he "just didn't

have time to prepare for it, plus it gets to be pretty much *pro bono* work at a

certain point." (TR at 44-45). From this, petitioner asserts trial counsel's investigation and preparation were totally inadequate for a capital case. The deficiencies he claims that resulted, in part, from inadequate compensation included:

> (A) The Failure to Adequately Investigate Boyd's Alibi Defense and the Failure to Adequately Prepare and Present the Alibi Defense;
>
> (B) The Failure to Obtain Necessary Expert Assistance, Especially in the Area of Forensic Pathology;
>
> (C) The Failure of Trial Counsel to Adequately Prepare Boyd's Alibi Defense;
>
> (D) Presenting Mutually Exclusive Defenses to the Jury;
>
> (E) Failure to Investigate and Present Readily-Available Impeachment Evidence; and
>
> (F) Failure to Present Readily-Available Mitigation Evidence at Trial.

The first such claim, Claim (A), is that trial counsel were ineffective because they failed to investigate Boyd's alibi defense.[26] The last court to rule on these issues was the Alabama Court of Criminal Appeals. That court, in turn, adopted as correct the findings of the trial court. The details of this claim by petitioner, and the rulings of the trial court and the Court of Criminal Appeals are set out *supra*.

---

[26] Petitioner also points out the lack of experience of one of petitioner's trial counsel. In *Cronic v. United States*, the Supreme Court held that the fact that counsel was given only 25 days to prepare for trial, that counsel was young and inexperienced in criminal matters, that the charges were complex, that the charges were grave, and that some witnesses were not easily accessible did not provide a basis for finding ineffective assistance of counsel in the absence of a showing of actual ineffectiveness. *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

The Court of Criminal Appeals held that this claim was due to be denied because it lacked the necessary specificity required under Rule 32.6(b), Ala. R. Crim. P.  It quoted extensive portions of the opinion of the trial court on the Rule 32 petition and agreed that petitioner had failed to provide anything other than bare assertions of ineffectiveness, without evidentiary support.  It also held that petitioner had failed to demonstrate in what specific ways petitioner was prejudiced by the trial court's rulings or how the outcome would have been different.

The Alabama Court of Criminal Appeals has consistently affirmed lower court decisions that have summarily dismissed Rule 32 petitions that do not include specific facts which would entitle the petitioner to collateral relief.  *See, e.g., Shaw v. State*, 949 So. 2d 184, 187 (Ala. Crim. App. 2006); *Tubbs v. State*, 931 So. 2d 66, 68 (Ala. Crim. App. 2005); *Chambers v. State*, 884 So. 2d 15, 18-19 (Ala. Crim. App.2003).  The Court notes this procedural bar has been specifically upheld, in an unpublished opinion, by the Eleventh Circuit Court of Appeals.  *Jenkins v. Bullard*, 2006 WL 3635410, *3-6 (11th Cir. Dec. 13, 2006); *see also Reed v. Jones*, 2000 WL 1848148, *5 (S.D.Ala. Dec. 4, 2000).  Thus, the procedural default cited by the Alabama Court of Criminal Appeals rests on adequate and independent state grounds. *See Wainwright*, 97 S. Ct. at 2508-09. Therefore, this claim is not subject to review in federal court.  *See Coleman*, 111 S. Ct. at 2553.

Petitioner can avoid the consequences of procedural default if he can demonstrate that denial of his claim will result in a "fundamental miscarriage of justice."  To prevail on such a claim, the petitioner must show that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 323, 115 S. Ct. 851, 868, 130 L. Ed. 2d 808 (1995). *See also Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied*, 513 U.S. 1061, 115 S. Ct. 673, 130 L. Ed. 2d 606 (1994).  A habeas corpus petitioner, however, is not entitled to an evidentiary hearing on the threshold issues of cause and prejudice, or fundamental miscarriage of justice, unless he proffers "specific facts which support a finding that one of [the] exceptions to the procedural default rule exists." *Hill v. Jones*, 81 F.3d 1015, 1023 (11th Cir. 1996).  The evidence proffered here is insufficient to provide such an avenue of relief.

Although the trial court failed to consider the evidence proffered in petitioner's amended Rule 32 petition, even if that evidence were to be considered, this claim would still not entitle petitioner to habeas relief.  Petitioner cites five witnesses who would allegedly provide him with an alibi for the time at which the murder occurred.  However, four of the five witnesses are friends or family

members of Boyd who testified at trial to having seen Boyd later in the evening but made no mention of having seen him at the time the murder took place. No evidence suggests that these witnesses ever mentioned to the police, or anyone else, that they were with petitioner at or around the time the murder occurred until after petitioner was convicted and sentenced.

In addition to the testimony of co-defendant Quintay Cox, the State called Donique Cox who testified that Boyd told him that he and some others had killed the victim at the ball park. Sabrina Mack testified that she overheard a conversation involving Boyd and co-defendants Ackles and Ingram that reflected they were angry with the victim for stealing from them. Sharon Ackles testified to seeing Boyd in a blue van into which she observed Cox force the victim. Roderick Dye corroborated this tetimony, as did Lewis Butts. Butts also testified that Boyd had stated that the victim owed money for drugs and that they had to get him.

Furthermore, as the trial court noted, trial counsel put on a vigorous defense, including alibi testimony, and the testimony proffered by petitioner in the amended petition would be merely cumulative. In view of this testimony, the witnesses proffered by petitioner would not have changed the outcome for the following reasons.

Petitioner asserts that the prosecution's theory is that the crime occurred at "dusk" on July 31, 1993, and that evidence introduced at trial showed that the sun set at 7:45 p.m. on that date. Boyd asserted in his petition that certain witnesses would provide testimony to bolster his alibi defense. What petitioner alleges these

witnesses would say and what they actually said in their signed statements is, on occasion, slightly different from one another.[27]  For clarity's sake, both are presented as follows:

(1) <u>Sylvester Boyd</u>--According to petitioner, Sylvester Boyd, Anthony Boyd's brother, would have testified, if asked, that he and Anthony had gone to the Glen Addie Community Center on July 31, 1993, and that he watched his brother play basketball for about an hour-and-a-half before going to a convenience store and walking home.

A signed statement dated July 18, 2001, by Sylvester Boyd was submitted in petitioner's Offer of Proof accompanying his amended Rule 32 petition.  In it, he states that he and Anthony went over to the Glen Addie Community Center "in the early afternoon" and stayed for about an hour-and-a-half before going to a store to get a drink and walking home.  (Clerk's Record, Volume 15, Statement of Sylvester Boyd).

(2) <u>Sylvester McGrew</u>--According to petitioner, McGrew, Boyd's stepfather, would have testified that on July 31, 1993, at around 5:00 p.m., he went to a convenience store near the Glen Addie projects.  While walking back to his house he observed Police Officer Nigel Raines chasing Anthony Boyd.  He stated that, by the time he reached them, they had stopped and Raines was talking to Boyd.  Officer Raines gave Boyd a warning and McGrew and Boyd then walked over to the residence of Catherine Jones located at 429 Glen Addie Avenue.

---

[27]  The court does not think that counsel for petitioner intentionally mis-stated anything.  He presented it in the light most favorable to his client, as any good lawyer should do.

McGrew stated that he stayed for a few minutes and left for home, leaving Boyd there.

A signed statement dated July 18, 2001, by Sylvester McGrew was submitted in petitioner's Offer of Proof accompanying his amended petition.  In that statement, he states that he came home from work after working from 7:00 a.m. to 3:30 p.m.  On his way home, he observed Quintay Cox, Shawn Ingram and a third person in a blue van outside his house.  He greeted them and found out that they were waiting for Anthony Boyd.  When he went inside his residence, he observed Boyd talking to his mother.  After he got a shower he noted that Boyd had left.  He began to help his wife, Anthony's mother, prepare dinner at approximately 4:30 to 5:00 p.m.  She needed something and sent McGrew to the local convenience store to get it.

When he arrived at the store, he observed Marcel Ackles.  As he was walking home, he observed Officer Raines chasing Boyd.  When he walked up to them, they were talking.  Officer Raines told Boyd that Boyd had been at the Glen Addie projects and he was not allowed there.  Boyd was given a warning.  They then went to Catherine Jones's residence and talked to some people on the porch. He stayed a few minutes and then left.  (Clerk's Record, Volume 15, Statement of Sylvester McGrew).

(3)  Felicia Parker--According to petitioner, Parker would have testified that she was with Anthony Boyd and others at her mother's house on July 31, 1993. Her mother is Catherine Jones.  She testified that they were preparing for a

birthday party for Willie Maud Watson to be held later that night.  Parker also states that Watson would testify that she saw Boyd late that afternoon and had asked him to help Parker put up balloons for the party.  However, this statement is hearsay and of little value.

However, in a statement by Willie Watson, signed on July 17, 2001, and submitted by petitioner in  his Offer of Proof, Watson states that Boyd, Ackles and Cox all came over to her house on July 31, 1993, at about 4:00 or 5:00 p.m.  She states she asked them to help Felicia Parker put up balloons for her birthday party later that night at the residence of Catherine Jones.  She then left to play bingo. She returned home at about 9:00 p.m. and went to the party about fifteen minutes later.  Although she does not recall the exact time, she saw Boyd and Quintay Cox come in together.  (Clerk's Record, Volume 15, Statement of Willie Maud Watson).

A signed statement dated July 17, 2001, by Felicia Parker was submitted in petitioner's Offer of Proof accompanying his Amended Petition.  She avers in her statement that on July 31, 1993, Boyd and Quintay Cox came over to her mother's house and helped her blow up balloons for a party set for later that night.  Her mother is Catherine Jones.  She states that they finished this job at about dusk and they went out on the front porch.  Cox's brother, Donique Cox, joined them. Quintay and Donique Cox and Anthony Boyd then walked across the street to the Glen Addie projects.  (Clerk's Record, Volume 15, Statement of Felicia Parker).

(4)  <u>Felicia Y. Jones</u>--According to petitioner, Jones would have testified that she and Boyd left Catherine Jones' house early in the evening and went to Willie Maud Watson's residence at 628 Glen Addie Avenue.  She would testify that she stayed at the residence with Boyd until early evening when she went back to Catherine Jones' house.  She recalls that she and Boyd had an argument about some clothes that she was wearing.

A signed statement dated July 18, 2001, by Felicia Y. Jones was submitted in petitioner's Offer of Proof accompanying his amended Rule 32 petition.  In this statement, Jones states that she dated Boyd from 1990 until the time of his arrest in 1993.  On July 30, 1993, she had a birthday party.  Afterward, at about 9:00 or 9:30 p.m., she met up with Boyd.  At that time, Donique Cox was driving a blue van and Boyd was in the passenger seat.  They picked up Jones and Sharon Bush. She stayed with Anthony until about 4:00 a.m. on July 31, 1993, when Boyd took her home.

The following morning, July 31, 1993, she spoke with Boyd and they planned to meet later that day at Willie Watson's house.  After they spoke, Boyd started talking to Shawn Ingram and Quintay Cox and she left.  She further states that she and Boyd met again some time after 5:00 p.m. at Watson's residence. Watson was not at home.  She often gave Boyd the key to her house for Boyd and Jones "to use." They were by themselves and did not leave until after dark.

When they left, they walked together because they were going in the same direction.  She was going to Catherine Jones' house to meet friends and he was

going to meet Ingram, Quintay Cox and Ray Edwards.  On the way, they got into

an argument over the shorts she was wearing.  They eventually separated, with

Boyd heading for the projects while she continued on to Catherine Jones' house.

After meeting her friends at Jones' house, she and Sharon Bush walked back to

her house to change clothes.  She states that they then returned to Jones' house for

the party.  The time was about 9:30 p.m.  Among others, she recalls seeing Boyd,

Quintay Cox, and Marcel Ackles there when she arrived.  She states that he left the

party late, when it was almost over.  (Clerk's Record, Volume 15, Statement of

Felicia Jones).

   (5)  Timothy J. Hawkins--According to petitioner, Hawkins would have

testified that he drove a blue van, which petitioner asserts was the same one used

in the kidnaping, from Anniston to Birmingham on the night of July 31, 1993, to

pick up two women who had come up from Tallahassee, Florida.  According to

petitioner, Hawkins would have testified that he *left Birmingham to return to*

*Anniston* at about 9:00 or 9:30 p.m.  He states that Marcel Ackles accompanied

him on this trip.

   According to the statement of Felicia Jones, Timothy Hawkins is her

brother.  A signed statement dated July 18, 2001, by Timothy J. Hawkins was

submitted in petitioner's Offer of Proof accompanying his amended petition.  He

states that on July 31, 1993, he, Marcel Ackles and Ackles' girlfriend drove a blue

van to Birmingham to pick up two women, Angie Page and Julie Baker.  They left

from his grandmother's house.  His grandmother is Catherine Jones.  She was

having a birthday party for Willie Watson.  They *left for Birmingham* at 9:00 or

9:30 p.m.  At the party, before he left, he observed Boyd and Shawn Ingram.  They

drove straight to Birmingham and straight back.  According to Hawkins, he and

Page are friends and Baker and Ingram were dating.

These four then went to the Executive Inn in Oxford, Alabama, at

approximately 11:00 p.m.  Hawkins' then-girlfriend (now wife), Stalitha Garrett,

was already at the hotel.  He had not expected her to be there.  As soon as they

arrived, a fight broke out between Garrett and Page.  The Oxford police came and

told everyone to go to their room if they had one and, if not, to leave.  Stalitha

Garrett left the hotel.

Hawkins states that he rented one room, and Page and he went in that room.

Marcel rented a room for himself and his girlfriend, while Julie Baker stayed in a

room by herself.  He and Page stayed there for the rest of the night.  According to

Hawkins, the next morning he observed Boyd at the hotel in a room with Laguina

Pearson.  He also observed Shawn Ingram with Julie Baker.  (Clerk's Record,

Volume 15, Statement of Timothy J. Hawkins).

(6) <u>Raymond Lee Edwards</u>--According to petitioner, Edwards would testify

that he observed Shawn Ingram at the Glen Addie projects at approximately 7:30

p.m. on July 31, 1993.  No statement, signed or unsigned, by Edwards appears in

the Offer of Proof as contained in the Clerk's Record.  (*See* Clerk's Record,

Volume 15).

Conflicts and inconsistencies exist in these statements that would provide the prosecutor with ample material for cross-examination.  For instance, Willie Maud Watson states that, between 4:00 and 5:00 p.m., Boyd, Ackles and Cox all came over to her house and she asked them to go to Catherine Jones' house to help put up balloons for the party.  Somewhat supportive of this statement, Felicia Parker states that Boyd and others came over to Catherine Jones' house at some unstated time and helped put up balloons for the party.  They finished and went out on the porch just as the sun was going down, *i.e.*, at about 7:45 p.m.

Sometime after 5:00 p.m., Sylvester McGrew states he saw Boyd being chased by Officer Raines and after the chase, he walked with him to Catherine Jones' house.  However, Felicia Parker states that she met Boyd, alone, at Watson's house.  It was after 5:00 p.m.  They stayed at the house until "after dark"; *i.e.*, they were there from sometime before to sometime *after* 7:45 p.m.  Obviously, Boyd could not have been at Catherine Jones' house at dusk and at Watson's house from late afternoon until *after* dark.  In addition, during the same time period, Boyd managed to get into the Glen Addie housing project and get in a foot chase with a police officer.

Likewise, Sylvester Boyd's statement is of no value.  He only states that he and Anthony went to the Glen Addie Community Center sometime in "early afternoon" on July 31, 1993.  They stayed an hour-and-a-half and returned home after getting a drink at a nearby convenience store.  Thus, Anthony and Sylvester could have left the Community Center shortly after 1:30 p.m., gotten their drinks

and gone home well before the offense occurred.  Likewise, it could have been later.  However, Sylvester makes no mention of Anthony being chased out of the project by Officer Raines.  Thus, if the chase did, in fact, occur on July 31, Sylvester was with his brother earlier in the afternoon, rather than later.[28]

Consequently, none of these witnesses can account for Boyd's whereabouts at the time of the murder, except for Parker and Jones, and their statements directly conflict.  Although petitioner proffers that Raymond Lee Edwards will testify that he saw Ingram in the Glen Addie project at approximately 7:30 p.m. on July 31, 1993,  this assertion is nothing more than a bare allegation with no evidentiary support.   No statement by Edwards has been located anywhere in the record. Furthermore, the purported statement is presented here for the first time with no explanation as to why this information was not presented at the earlier proceedings.  The other witnesses' statements, although also delinquent in their presentation, were at least presented with the amended petition.  No evidence exists to support the claim that Edwards will provide any such testimony.

The same is true regarding the other five witnesses listed above.  Each gave a statement on July 17 or 18, 2001.  However, they were never acted on until the amended Rule 32 petition was filed in May 2002, approximately ten months later.

---

[28]  Although not submitted by petitioner regarding this claim, the statement of Bertha M. Ackles was also included in his Offer of Proof submitted with his amended petition.  Bertha Ackles, the mother of Marcel Ackles, states that she saw Anthony Boyd, Shawn Ingram, Marcel Ackles and Marcel's nephew riding by her house in a blue van at about 2:00 p.m. on July 31, 1993.  This testimony arguably conflicts with Sylvester Boyd's claim that he was watching his brother play basketball during the early afternoon hours of that day.

Petitioner provides no explanation as to why this period of time elapsed before the statements  were presented to the trial court.

In any event, this testimony is cumulative of other testimony presented by trial counsel in this case.  Given the parties' relationships to one another and the conflicts within the statements, no possibility appears that the outcome of this case would have been any different, had this information been presented at trial. Therefore, no prejudice exists to Boyd under *Strickland* and, therefore, no ineffective assistance.  This proferred evidence also fails to establish actual innocence.

Petitioner next asserts, in Claim (B), that trial counsel were ineffective because they failed to seek and obtain necessary expert assistance regarding the absence of
tape around the victim's legs, the time of death and toxicology results as they relate to the time of death.

This claim is due to be denied for the same reason as Claim (A).  The details of this claim by petitioner as set out in his original petition, and the rulings of the trial court and the Court of Criminal Appeals are set out *supra.*  The Alabama Court of Criminal Appeals found that Boyd did not state what type of expert should have been procured and in what way such an expert would have countered the State's expert testimony.  It adopted the trial court's findings as part of its opinion which held that  Boyd's claim in this regard did not provide a clear and specific statement of the grounds upon which relief is sought, including full

disclosure of the factual basis of those grounds as is required to establish a valid claim under Rule 32.6(b).  This holding is an independent and adequate state ground for refusing to consider this claim.  *See Wainwright*, 97 S. Ct. at 2508-09. Therefore, it is not subject to review in federal court.  *Coleman*, 111 S. Ct. at 2553.

Petitioner can avoid the consequences of procedural default if he can demonstrate that denial of his claim will result in a "fundamental miscarriage of justice."  *See Schlup*, 115 S. Ct. at 868; *Alderman*, 22 F.3d at 1549.  The evidence proffered here is insufficient to provide such an avenue of relief.  Therefore, petitioner is not entitled to habeas relief based on this claim.

In his amended petition, Boyd asserts that the State's pathologist did not identify any tape around the victim's legs and that an expert pathologist would have testified that no such tape was present, thereby undermining Quintay Cox's testimony that Boyd taped the victim's legs.  However, the testimony of the medical examiner, Dr. Joseph Embry, was that, when he received the body, there was virtually nothing left of the sweat pants worn by the victim.  He testified to what he found of the victim's clothes as follows:

> . . . [B]etween the legs on the sheet on top of the sheet were some charred remnants of clothing and some other charred material.  These included a piece of a gym shoe or athletic shoe that had the FILA, F-I-L-A, logo on it.  It was just a portion of it.  It looked like the outside back portion of a shoe.  And also there was a piece of what looked like sweatpants that was charred, had an elastic band.  This piece of material that looked like a piece of sweatpants was about seven by seven inches.  Then there was a charred piece of tan cloth that looked to me like it might have been underwear.  And then there was charred piece of leathery black material with some rocks stuck on

one surface that was eight and a quarter by three and a half inches.  Then there were several small pieces of charred brown to black fabric, the largest of which was four by two inches, that had ribs in it, like ribbed socks, that is the parallel elevations in the cloth.  And finally, there were two pieces of black material, the larger was approximately eight and a quarter by three and a half inches that had fine print on one side identifying it as anti-freeze container.  The other piece appeared to have some fecal material stuck to one surface.

\* \* \*

There was a piece of tape next to the head and also charred cloth, one piece of which appeared to have a hem on it.  It looked like a T-shirt, and the other one is just very thin charred black material.  The piece of tape was seven by three-eighths inches.

(TR at 491-92).

Dr. Embry also testified to his examination of the body.  The external examination reflected as follows:

. . . I identified the clothing and jewelry that he had stuck to the body.  He had stuck to his right groin what appeared to be a remnant of burned underwear, and then stuck to the outside of the front part of his right thigh he had a few small pieces of charred black and brown material of the same type that I described above lying between his legs, probably his sweatpants.  The largest piece that stuck to his waist was the elastic band with a drawstring right in the front, charred remnant of what was probably his sweatpants And also some of the material on the right hip area, right side of the waist, and also a piece of thin black material that I couldn't further describe that was adjacent to the head. . . . *That was all the clothing or jewelry or personal effects that he had.*

(TR at 492-93) (emphasis added).  Based on Dr. Embry's testimony, no pants legs were left which could be examined for the presence or absence of tape.  Because

no pants leg remained to test for the presence of duct tape, failing to obtain a forensic expert is not ineffective assistance.

Likewise, the toxicological evidence would not help petitioner.  If any information regarding the time of death could be gleaned from the presence of cocaine in the victim's body, it is difficult to imagine what it is.  At best, petitioner might find out how much time had elapsed between the time the victim ingested the cocaine until the time of his death, at which point all bodily functions, including metabolism, would have ceased.  However, even gleaning that information would be difficult unless the witness knew how much cocaine the victim had ingested and whether he had ingested it all at once or over a period of time.  Petitioner has not provided any evidence that anything of value would come from an analysis of the cocaine in Huguley's body.  Thus, a toxicologist would not have provided any evidence of value to petitioner.

Petitioner also claims that trial counsel should have obtained an expert to determine the time of death.  This claim also lacks merit.  Petitioner asserts that the witness who found the victim the following afternoon reported that the body was still bleeding when found.  According to petitioner, this statement conflicts with the State's theory that the murder occurred about 7:45 p.m. the preceding day.

In any event, *no* evidence in the record suggests that the witness who found the body reported that it was still bleeding.  A review of that testimony from Boyd's trial does not reflect any testimony of this sort from that witness.  (*See* TR at 336-41, Testimony of Jessie Smith).

In any event, petitioner does not describe what type of expert would perform this examination, especially at this late date.  Consequently, even considering the facts proffered in the amended Rule 32 petition, this claim is without merit.

The next claim asserted by petitioner, Claim (C), is that trial counsel failed to adequately prepare Boyd's case for trial.  In his original petition, Boyd's claims in this area were very vague.  He claimed that trial counsel failed to thoroughly investigate each and every avenue of defense available.  However, petitioner failed to provide any details as to what the defense team could have done that it failed to do. He did not identify which witnesses counsel failed to interview, what "circumstances" they failed to investigate, what exculpatory evidence they failed to uncover or how any of this prejudiced petitioner.  For example, in his brief, petitioner merely asserted:  "Defense counsel failed to investigate the circumstances surrounding the offense.  As a result, they failed to uncover critical exculpatory evidence surrounding Mr. Boyd's alleged involvement with the victim."  (CR32 at 397).

Boyd also claimed that trial counsel failed to adequately examine or cross-examine a number of witnesses during the trial.  These witnesses are asserted to have had more valuable alibi testimony than was elicited from them at trial.  However, Boyd does not specify what each of these witnesses would testify to or how this failure prejudiced petitioner, except in very general terms.  ( *E.g.*, "The errors of counsel allowed the State to present its case essentially uncontested, and

allowed the State to win a conviction and death sentence on the basis of unchallenged evidence." CR32 at 398).

The Alabama Court of Appeals spoke to this issue as set out in Boyd's original Rule 32 petition. Petitioner's claim was denied because it lacked specificity in violation of the requirements in Rule 32.6(b). A review of the petition reflects that this description of the petition is correct. It contains no more than general statements of alleged errors by trial counsel. Thus, the refusal to consider this claim is based on an independent and adequate state ground, Rule 32.6(b), Ala. R. Crim. P. *See Wainwright*, 97 S. Ct. at 2508-09. Therefore, it is not subject to review in federal court. *Coleman*, 111 S. Ct. at 2553.

Petitioner now claims that his trial counsel failed to interview his own witnesses, using the prosecutor's notes instead; failed to secure the presence of witnesses; and failed to investigate the circumstances surrounding the case and uncover critical exculpatory evidence. These claims were not in petitioner's original Rule 32 petition, but were only contained in his amended petition, the contents of which were found by the Court of Criminal Appeals to be procedurally barred from consideration.

However, even if the contents of the amended petition were not barred from consideration here, this claim is still without merit. Petitioner attempts to add more substance to this claim than that which he presented in his original Rule 32 petition. The first sub-claim raised by petitioner is that trial counsel failed to prepare by relying on the prosecutor's notes instead of their own investigation.

This claim is based entirely on an offhand remark made by the prosecutor that defense counsel must have been relying on the prosecutor's notes for certain answers he gave to court inquiries.  Absolutely no true evidence is presented that petitioner's trial counsel prepared for trial in this manner.  Given that the prosecutor's notes of discussions with witnesses would usually be shielded from a defense attorney as work-product, it is not even clear to what type of notes the prosecutor was referring.

The trial court stated in its denial of petitioner's Rule 32 petition, that he observed trial counsel at trial and that he appeared prepared for both the guilt and penalty phase, put forth a coherent defense and ably cross-examined the State's witnesses.  The assertion that trial counsel only used the prosecutor's notes is totally without any evidentiary basis and the off-hand remark of a prosecutor is insufficient to establish that trial counsel simply relied on the prosecutor's notes, and nothing more, in preparing for trial.  This claim lacks merit.

In the next sub-claim, petitioner asserts that trial counsel failed to secure the presence of witnesses.  Petitioner bases this claim on the fact that trial counsel failed to receive grand jury testimony until the week before trial, causing defense counsel to get subpoenas for witnesses out late.  On the first day of trial, petitioner stated that trial counsel informed the court that approximately 12 witnesses were not present who would testify and several he did not subpoena at all, after identifying them as witnesses.  Petitioner also complains that trial counsel stated

early in the trial that he expected to introduce photographs, possibly relevant, that he had not yet seen.

This claim also lacks merit. Petitioner has failed to point to any witness who had relevant testimony who was not called because the witness either was not subpoenaed or simply failed to obey the subpoena. Nor has petitioner demonstrated that he was prejudiced by trial counsels' failure to review certain photographs before trial. No evidence is proffered as to what was contained in these photographs or that petitioner was prejudiced by trial counsel's failure to review them before trial. Petitioner has failed to show that these actions resulted in prejudice to him under the standard set out in *Strickland*. Thus, this claim is without merit.

As discussed in Claim (A), above, petitioner did suggest six witnesses in his amended petition's Offer of Proof who he claims are witnesses that petitioner's trial counsel should have called or questioned further about Boyd's whereabouts on the night of the murder. The petitioner does not state whether these witnesses are among those who were subpoenaed late or not at all, but since they appeared in court, no prejudice arose to petitioner even if they were among those summoned late.

Petitioner next asserts, in Claim (D), that trial counsel was ineffective because they argued mutually exclusive defenses of alibi and coercion. Trial counsel put on an alibi defense for petitioner. However, when co-defendant Quintay Cox was testifying, trial counsel cross-examined him concerning the fact

that Ingram had the only weapon, he was giving the orders and that Cox was afraid to leave out of fear of Ingram.  He argued both defenses during closing arguments. Petitioner asserts that this approach shows ineffective assistance of counsel.

This claim was raised only in Boyd's amended Rule 32 petition.  The Alabama Court of Criminal Appeals did not consider it for the reasons discussed above.  Since it was procedurally barred from consideration on independent and adequate state grounds, it is barred from consideration in his federal petition.  *See Coleman*, 111 S. Ct. at 2553.

Even if this claim in Boyd's amended petition had been considered, he would not have prevailed.  A strong presumption applies that counsel provided effective assistance.  *Strickland v. Washington*, 466 U.S. at 689-90, 104 S. Ct. at 2065-66.  In this case, counsel, acknowledging that a conflict in the evidence presented by the two sides, argued that his client had presented an alibi defense but that, if the jury chose not to believe his witnesses and chose, instead, to believe the State's witnesses, even that evidence was not sufficient to convict him of the capital offense because of the coercion applied by Ingram against all the other participants in the crime.  Minimizing the gravity of petitioner's own alleged participation was not ineffective assistance.  Instead, it was a reasonable attempt to have his client acquitted combined with an attempt to avoid a capital conviction or a death sentence if that strategy failed.  Petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the range of

professionally competent assistance."  466 U.S. at 690, 104 S. Ct. at 2066.  He has
not done so here.

Petitioner also alleges, in another sub-claim, that trial counsel improperly
accepted the State's theory of the case, that it was premeditated murder over a
drug debt.  This claim was also only presented in petitioner's amended complaint
and is, thus, procedurally barred from consideration here.  However, even if this
claim is considered on its merits, it would fail.

Boyd asserts that counsel acquiesced in the State's claim that, on the day of
the murder, petitioner was looking for the victim because he owed a drug debt
when, in fact, the evidence at trial reflected that petitioner was looking for Dexter
Spinks, not Greg Huguley.  However, the testimony at trial was that the defendants
were looking for Spinks for a drug debt when they came across Huguley, who also
owed money for drugs he had bought or stolen.  (TR at 637-642).  To prevail on
this claim,"[t]he defendant must show that there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the proceeding would have
been different." *Id.* at 694, 104 S. Ct. at 2068. This one instance, standing alone, is
insufficient to result in such a conclusion.

Petitioner asserts in the next sub-claim that trial counsel failed to present
specific facts challenging the prosecution's witnesses.  Because this claim was
raised only in his amended petition, this claim is procedurally barred from
consideration here for the reasons stated above.  However, even if this claim were
considered on its merits, it would not entitle petitioner to relief.

Boyd names several witnesses whom, he claims, would have been able to challenge the State's evidence and some of the assertions made by a witness who testified against Boyd.  He claims that the witness, Sharon Ackles (Bush), has a history of psychological problems and that trial counsel should have sought to obtain her mental health records.  However, petitioner submits no evidence that Ackles has such a problem, what the problems consisted of, or that trial counsel was aware of these alleged problems.  Furthermore, Ackles testified concerning the kidnaping of the victim from the area around the "Happy Tree."  Other witnesses also testified to observing the kidnaping at that location and, thus, even if trial counsel had this information and used it to impeach her credibility based on her alleged mental health problems, no reasonable probability arises that the result would have been different.

Petitioner also alleges that Caretta Woolf Williams, Marcel Ackles' sister, would testify that no bushes have ever been on the side of the street where Sharon Ackles claims to have been hiding, making it impossible for her to have hidden there.  However, a review of the testimony reflects that Sharon Ackles never testified that she hid behind any bushes.  (*See* TR at 581-593, Testimony of Sharon Ackles (Bush)).  Sharon states that when she saw Ingram with a gun, she went to hide; however, she does not state if she was successful in finding a place to hide or, if so, where she hid.  She could have been behind a tree, a car, another person, or any of a number of other places.  Therefore, the testimony of Caretta Woolf Williams is of no value to petitioner.

Bertha Ackles' testimony would be suspect simply because she is the mother of one of the co-defendants.  In any event, Sharon Ackles testified that she took about an hour to walk down to the Happy Tree and an hour to walk back. Although Bertha Ackles claims that she watched Sharon walk up and down the street in front of her house all day, this would certainly be open to some skepticism.  In any event, as noted above, even if Sharon was subject to impeachment on this basis, no probability arises that the outcome of the trial would have been different.  Therefore, no prejudice exists under the *Strickland* standard.

In Claim (E), petitioner alleges that trial counsel failed to investigate readily-available impeachment evidence because he failed to investigate the evidence presented by the prosecution, to present testimony to contradict the State's evidence of Boyd's presence at the murder scene, and to contradict the prosecution's theory that this crime was a premeditated murder over a drug debt.

This issue was not presented by Boyd in his original Rule 32 petition.  It was raised for the first time in his amended petition that the Alabama Court of Criminal Appeals held was procedurally barred from consideration based on petitioner's failure to raise with the trial court its failure to consider the claims contained in it.  Consequently, it is barred from consideration here.  *See Wainwright* , 97 S. Ct. at 2508-09; *Coleman*, 111 S. Ct. at 2553.

However, if this evidence were to be considered, this claim would still be without merit.  Petitioner states that Quintay Cox, the sole eyewitness to testify

against Boyd, testified that he lived in Georgia and did not come to Alabama until the night of July 31, 1993.  After thoroughly reading the transcript of Quintay Cox's testimony, the undersigned judge can find no testimony from Quintay Cox wherein he states that he lived in Georgia and did not come to Alabama until the night of July 31, 1993.  (*See* TR at 633-89, Testimony of Quintay Cox).  The only witness who stated he lived in Georgia was Donique Cox.  He did testify that he lived in Stockbridge, Georgia, and that he returned from Georgia on the evening of July 31, 1993, after helping his mother move.  (TR at 571, 522, Testimony of Donique Cox). Petitioner states that Felicia Parker would testify that Donique was in Anniston before the night of July 31, 1993, because she saw him the preceding evening.  She further stated in a statement submitted in petitioner's Offer of Proof, that Donique had been visiting in Anniston for about three weeks.

Boyd asserts that this testimony would impeach Donique's testimony that he had just arrived in Anniston the night of the murder.  However, it does not. Donique stated that he had been to Georgia to help his mother move.  He was not asked, nor did he say, that he had been in Georgia the entire time up until the night of July 31.  He very well could have left Anniston on the morning of July 31, gone to Georgia, helped his mother move and returned, all in the same day.[29]  Thus, this testimony is of little value.  Although petitioner claims that numerous witnesses would testify that Donique was in Anniston on the day of the murder, he identified

---

[29]  Anniston, Alabama, is located near the Alabama/Georgia state line on Interstate 20. Interstate 20 goes straight into Atlanta.  Stockbridge, Georgia, is a suburb of Atlanta, sitting to the south of Atlanta proper.  Viewing any map shows that Donique Cox easily could have gone to Stockbridge, helped his mother move and returned to Anniston, all in the same day.

none and presents no sworn statements from any such witness.  Therefore, this claim is a bare assertion by petitioner with no evidentiary support.

Petitioner also alleges that grievous error occurred because the State, in the statement of facts to the Court of Criminal Appeals on direct appeal, stated that Boyd was looking for Huguley that day due to a drug debt, when, in fact, he was looking for Dexter Spinks.  This claim is also procedurally defaulted based on the exclusion of the amended petition.  However, even if it is considered, it is without merit.

Evidence in the record shows that Huguley did owe money to Boyd and that Boyd had stated "they" were going to get him.  The evidence at trial reflects that while the co-defendants were looking for Spinks for a drug debt, they came across Huguley, who also owed money for drugs he had bought or stolen.  (TR at 637-642).  Thus, evidence in the record indicates that Huguley owed money for a drug debt and that Boyd wanted to "get him."  Apparently, Boyd sought Dexter Spinks as well, but, unfortunately for Higuley, he was found first.  Thus, the characterization by the prosecutor is not incorrect and to recharacterize it in the manner suggested by petitioner is merely splitting hairs.

To prevail on this claim,"[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  This claim is insufficient to result in such a conclusion.

Petitioner also asserts that the State's evidence did not support a finding that he acted in a premeditated way in connection with the kidnaping and murder of the victim. He states that, by accepting the State's theory of the case, trial counsel failed to perform their required role of challenging the State's case. However, this claim is also without merit because it is totally lacking in specifics. Boyd has failed to provide any details concerning what trial counsel could have done to demonstrate this lack of intent. Therefore, relief on this claim must be denied.

Petitioner next asserts, in Claim (F), that defense counsel's representation of petitioner during the penalty phase of the trial was deficient because he failed to investigate or present readily-available mitigation testimony. The first allegation of ineffective assistance at this stage is that trial counsel failed to obtain various school, medical, and other such records which petitioner alleges would have revealed a host of mitigating factors that should have been presented at the penalty phase of Boyd's trial.

This issue was presented by Boyd in his original Rule 32 petition. It was addressed by both the trial court and the Alabama Court of Criminal Appeals. The Court of Criminal Appeals reviewed the opinion of the trial court with regard to this claim and adopted it. Those courts found that petitioner's claim was totally lacking in specificity and was, therefore, procedurally barred from consideration pursuant to Rules 32.6(b) and 32.3, Ala. R. Crim. P. The State courts noted that petitioner claimed that trial counsel should have sought certain records, but did not state what counsel should have done with them that would have assisted

petitioner.  He merely asserted that an investigation into these records would have revealed "a host of mitigating factors."

This claim is simply a bare assertion on Boyd's part, without evidentiary support.  No information was provided in the original petition as to what mitigating factors would have been revealed.  Consequently, it was held to be too vague a claim upon which to grant relief.  The information provided is insufficient to conclude that, had this information been obtained, a reasonable probability exists that the result would have been different.  Therefore, the State courts held this claim to be procedurally barred by Rules 32.6(b) and 32.3, Ala. R. Crim. P. This determination is an independent and adequate state ground for refusing to consider this claim.  *See Wainwright*, 97 S. Ct. at 2508-09.  Therefore, it is not subject to review in federal court.  *Coleman*, 111 S. Ct. at 2553.

Petitioner did provide more details regarding this claim in his amended petition.  However, as noted numerous times, this petition and the evidence offered in it were held to be procedurally barred from consideration in State court, thus causing it to be barred in federal court as well.  However, even if it were considered, it would be without merit.

In his amended petition, Boyd added a claim that trial counsel was ineffective at sentencing because the mitigation expert utilized by defense counsel stated she was unable to do all the work she needed to do without being given more time.  However, petitioner does not state what else the mitigation expert could have done with additional time, nor does he explain with any specificity

how he was prejudiced by this failure to have more time to prepare.  Thus,
petitioner has failed to show the prejudice required to make out a claim of
ineffective assistance under *Strickland*.

He also adds the claim that trial counsel should have investigated whether
chemical pollution (polychloral biphenyls, also known as PCBs) in the Anniston
area might have caused a drop in his IQ and an increase in his tendency toward
criminality.  Petitioner's counsel makes only bare assertions that this pollution
could cause some sort of damage to petitioner.  No evidence supports this claim,
such as an affidavit or learned treatise.  Furthermore, no evidence was presented
that petitioner was ever exposed to PCBs.  These claims are unsupported
assertions and do not form a basis for relief.

Boyd also adds the claim that trial counsel failed to investigate personal
trauma experienced by Boyd; that is, when he was 16 years old, his best friend
drowned.  The petition also alleged that he suffered from "intra-family violence."
Boyd alleges that trial counsel failed to investigate the impact Boyd's childhood
experiences may have had on his psyche and interpersonal functioning.  However,
he provides no details of the alleged intra-family violence or the effects the
drowning had on petitioner.  Again, he makes mere assertions without evidentiary
support.

Even if the court were to consider the claims made with regard to these
issues, they are without merit and do not warrant habeas relief.  As noted above,
trial counsel was not obligated to put on every single piece of mitigating evidence

that they could locate.  If so, effective assistance of counsel could never be

achieved because a good attorney will always be able to think of something else

that was not done that could be considered mitigation evidence.  Once it is

established that the mitigation case put on by trial counsel was reasonable, the

inquiry ends there.  The fact that something else could have been done is not a

basis for asserting ineffective assistance.

As the United States Court of Appeals for the Eleventh Circuit stated in

*Clark v. Dugger*, 834 F.2d 1561 (11th Cir. 1987):

> The failure to conduct a reasonable investigation of
> possible mitigating evidence may render counsel's
> assistance ineffective.  *Lightbourne v. Dugger*, 829 F.2d
> 1012, 1025 (11th Cir. 1987); *Thompson v. Wainwright*,
> 787 F.2d 1447, 1450 (11th Cir. 1986), *cert. denied*, [481]
> U.S. [1042], 107 S. Ct. 1986, 95 L. Ed. 2d 825 (1987).
> "After a sufficient investigation, however, 'counsel may
> make a reasonable strategic judgment to present less than
> all possible available evidence in mitigation.'"
> *Lightbourne*, 829 F.2d at 1025 (quoting *Mitchell v.
> Kemp*, 762 F.2d 886, 889 (11th Cir. 1985), *cert. denied*,
> [483] U.S. [1026], 107 S. Ct. 3248, 97 L. Ed. 2d 774
> (1987) and *Stanley v. Zant*, 697 F.2d 955, 965 (11th Cir.
> 1983), *cert. denied, sub nom*. 467 U.S. 1219, 104 S. Ct.
> 2667, 81 L. Ed. 2d 372 (1984)).  In essence, "[c]ounsel
> has no absolute duty to present mitigating character
> evidence."  *Id.* (quoting *Mitchell*, 762 F.2d at 889).  In
> this circuit, counsels' decision is "accorded a strong
> presumption of correctness which is 'virtually
> unchallengeable.'"  *Id.* (quoting *Sinclair v. Wainwright*,
> 814 F.2d 1516, 1519 (11th Cir. 1987) and *Strickland v.
> Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066,
> 80 L. Ed. 2d 674 (1984)).

*Id.* at 1568.

The Alabama Court of Criminal Appeals held that the manner of the investigation and presentation of evidence regarding mitigating circumstances was designed to present a reasonable case in favor of mitigation and that counsel was not ineffective.  This finding is due to be honored here.  Therefore, habeas relief is not due on this claim.

The second sub-claim under this subject is that Boyd's trial counsel did not interview the witnesses they called during the penalty phase of the trial, thereby leading to a lack of narrative answers which completely undermined the power of their testimony.

This issue was presented by Boyd in his original Rule 32 petition. It was addressed by the trial court and the Alabama Court of Criminal Appeals.  The trial court held, and the Court of Criminal Appeals agreed, that petitioner was entitled to no relief for this claim.  First, no evidence in the record, outside the amended petition, in the form of affidavits or other evidence supports petitioner's claim that trial counsel failed to speak to any of these witnesses before putting them on the stand.  Second, both courts concluded, after a review of the evidence, that trial counsel did not render ineffective assistance at the penalty phase.  In conclusion, the Court of Criminal Appeals held this claim to be without merit and procedurally barred pursuant to Rules 32.6(b) and 32.3, Ala. R. Crim. P.  In addition, the undersigned  judge notes, as did the Court of Criminal Appeals, that trial counsel had the assistance of a mitigation expert at trial.  She performed interviews and helped prepare the case for the mitigation stage of the trial.  Thus, even if trial

counsel had not spoken directly to the witnesses who were called at the mitigation stage, the mitigation expert had interviewed and obtained witnesses for them.

Because this claim was found to be procedurally barred under Rule 32.6, it is barred from consideration in federal court. *See Coleman*, 111 S. Ct. at 2553. In the alternative, the claim was adjudicated on its merits in the State court proceedings. No evidence suggests that the State court adjudication was contrary to any law put forth by the U.S. Supreme Court or that it was the result of an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Further, Petitioner has not shown actual innocence. Petitioner is not entitled to habeas relief on this claim.

The next sub-claim for which petitioner seeks relief is his claim that trial counsel failed to talk to potential penalty-phase witnesses to testify about his positive impact on the community. After a review of the trial record, the Court of Criminal Appeals adopted the findings of the trial court regarding this claim. It held that this claim was lacking in specificity in that Boyd's petition did not suggest an alternative defense that counsel should have pursued at the penalty stage, does not disclose what mitigating factor would have been disclosed had counsel investigated and prepared for the penalty phase in some other manner, and did not disclose the substance of the expected testimony of any other potential mitigation witnesses whom counsel failed to interview. Moreover, both of the State courts found that the mitigation expert provided petitioner with valuable assistance in locating and preparing witnesses for the penalty phase of the trial. In

addition, the trial court cited the number of witnesses called by petitioner's trial counsel that revealed a good investigation by counsel.  The trial court noted that the defense theme was that Boyd's youth, lack of significant criminal history, involvement in his community sports programs and with his children, and friendliness to co-workers, family members and friends warranted life in prison without parole.  They found this approach to be reasonable.

In addition, the Court of Criminal Appeals found that any testimony regarding Boyd's widespread positive impact on the community would have been merely cumulative of testimony already elicited from witnesses at trial by the defense.

The State courts concluded that Boyd's claim was procedurally defaulted under Rules 32.6(b), 32.3 and 32.7(d) and found the claim to be meritless.  Boyd did not allege how his trial counsel's conduct was deficient or how the outcome of the penalty phase would have been different had his trial counsel performed differently regarding this claim.  Therefore, the Court of Criminal Appeals held that he had failed to state a claim of ineffective assistance of counsel under *Strickland*, 104 S. Ct. at 2080.

Because this claim was found to be procedurally barred under Rule 32.6(b), it is barred from consideration in federal court.  *See Coleman*, 111 S. Ct. at 2553. In the alternative, the claim was adjudicated on its merits in the State court proceedings.  No evidence suggests that the State court adjudication was contrary to any law put forth by the U.S. Supreme Court or that it was the result of an

unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Further, Petitioner has not shown  actual innocence.  Petitioner is not entitled to habeas relief on this claim.

## II.  *Brady* **Claims**

Petitioner also makes a number of claims that the State violated *Brady*, 83 S. Ct. at 1194.  His first claim is that, on July 31, 1993, in the early evening, Anniston Police Officer Nigel Raines chased Boyd in the Glen Addie housing project for trespassing.  Officer Raines informed the Anniston Police Department dispatcher of the chase as it was occurring.  Petitioner complains that no logs or reports, which he alleges would have helped establish a time-line, were produced to the defense.

This issue was not presented by Boyd in his original Rule 32 petition.  It was raised for the first time in his amended petition, which was held by the Alabama Court of Criminal Appeals to have been procedurally barred from consideration based on petitioner's failure to raise with the trial court its failure to consider the claims contained in it.  Consequently, it is barred from consideration here. *See Wainwright* , 97 S. Ct. at 2508-09; *Coleman*, 111 S. Ct. at 2553.

Even if this claim were to be considered, it is without merit.  First of all, petitioner has made no showing how the investigator for the Talladega County Sheriff's Department would have been aware that this incident ever occurred since it occurred in the City of Anniston.  The Court takes judicial notice of the fact that

the City of Anniston, and the Glen Addie housing project in particular, are located in Calhoun County, not Talladega County.

The Talladega County prosecutor and Sheriff's investigator cannot be held responsible for failing to turn over evidence that is not in their possession, the existence of which is not shown to have been known to them.  Likewise, the evidence must be unknown to the petitioner.  Here, petitioner was in a better position than anyone to be aware of the existence of this evidence.  If he knew he was running from a police officer at the time he is alleged to have been involved in a murder 15 to 20 miles away, he would have unique knowledge of the incident. He was in the best position to advise his attorney of its existence.  Thus, no *Brady* violation occurred  and this issue is without merit.  *See Felker v. Turpin*, 101 F.3d 657 (11th Cir. 1996).

The next claim made by petitioner is that, on the night of July 31, 1993, and in the early morning hours of August 1, 1993, the Anniston Police were dispatched to the Executive Inn in Oxford, Alabama, for an altercation between two women. Anthony Boyd is alleged by petitioner's counsel to have been present at that time. He asserts that the State failed to produce police department logs that would have established the time of the altercation.

 This issue was not presented by Boyd in his original Rule 32 petition.  It was raised for the first time in his amended petition, which was held by the Alabama Court of Criminal Appeals to have been procedurally barred from consideration based on petitioner's failure to raise with the trial court its failure to

consider the claims contained therein.  Consequently, it is barred from

consideration here.  *See Wainwright*, 97 S. Ct. at 2508-09; *Coleman*, 111 S. Ct. at

2553.

Even if this issue were not procedurally barred, it lacks merit.  Once again,

petitioner has made no showing that anyone in Talladega County was aware of this

event.  The Court takes judicial notice that Oxford, Alabama, is in Calhoun

County and, according to petitioner, this call was answered by Anniston City

Police.  However, according to the statement of Timothy Harris, submitted by

petitioner in his Offer of Proof related to his amended Rule 32 petition, this

incident was handled by the Oxford, Alabama, Police Department, not the City of

Anniston.  Furthermore, Harris, whose statement is the *only* evidence submitted

regarding this occurrence, does not state that Boyd was present when this incident

occurred.  (*See* Clerk's Record, Volume 15, Statement of Timothy Harris).

The Talladega County prosecutor and Sheriff's investigator cannot be held

responsible for failing to turn over evidence that is not in their possession, the

existence of which is not shown to have been known to them.  Likewise, the

evidence must be unknown to the petitioner.  Here, petitioner was in a better

position than anyone to be aware of the existence of this evidence.  Therefore, this

issue is without merit.

Petitioner next asserts that the State failed to provide exculpatory statements

made by Boyd while he was in police custody and at the District Attorney's office.

This claim is procedurally defaulted from review in federal court because it was

dismissed under an independent and adequate state procedural rule.  The trial court held that this claim failed to allege the substance of the "exculpatory" statements. As a result, this claim was dismissed by the trial court as procedurally barred under Rules 32.3 and 32.6(b), Ala. R. Crim. P.

The trial court held also that this assertion could not form the basis for a valid *Brady* claim.  Boyd was obviously present during this questioning and thus aware of anything he might have said during that time period.  Therefore, it held, citing *In re Magwood*, 113 F.3d at 1548, and *Felker*, 101 F.3d at 657, that Boyd had personal knowledge of the proceeding which is imputed to his later attorneys. Therefore, these statements are not *Brady* material.

The Alabama Court of Criminal Appeals affirmed the trial court's findings and adopted them as part of its opinion.  It held that this claim was procedurally barred under Rule 32.2(a)(3) because it could have been raised at trial, but was not.  It further held that the claim was procedurally barred under Rule 32.2(a)(5) because it could have been raised on appeal, but was not.

Because this claim was found to be procedurally barred under Rules 32.6 and 32.2(a)(3) and (5), it is barred from consideration in federal court.  *See Coleman*, 111 S. Ct. at 2553.  In the alternative, the claim was adjudicated on its merits in the State court proceedings.  No evidence suggests that the State court adjudication was contrary to any law put forth by the U.S. Supreme Court, or that it was the result of an unreasonable determination of the facts in light of the

evidence presented.  *See* 28 U.S.C. § 2254(d).  Further, petitioner has not shown

actual innocence.  Petitioner is not entitled to habeas relief on this claim.[30]

In his next *Brady* claim, petitioner claims that his co-defendants were held

in police custody and interviewed by police numerous times.  However, the State

turned over only tape transcripts and some notes and neglected to turn over all

statements by each co-defendant that would have been considered exculpatory in

Boyd's trial.

The trial court and the Alabama Court of Criminal Appeals both held that

this claim, as stated in Boyd's original petition, was barred under Rule 32.6(b)

because the petition failed to disclose the substance of any allegedly exculpatory

statements made by Boyd's co-defendants.[31]  They further held that the claim was

barred because it should have been, but was not raised at trial or on direct appeal.

The procedural bars asserted in State court also bar consideration of the

claim in federal court.  *Coleman*, 111 S. Ct. at 2553.  Habeas relief on this claim is

due to be denied.

Petitioner also claims that he "has received information that the District

Attorney's [sic] offered certain inducements to witnesses who testified at Anthony

---

[30] This claim is also asserted in petitioner's amended petition which the Alabama Court of Appeals refused to consider.  However, the details in that claim as it is contained in the amended petition are even more sparse than those presented in his original claim.  Thus, even if it had been considered, this issue would be without merit for the same reasons as were set out for denying the claim in the original petition.

[31] This claim appears in petitioner's amended petition as well.  Although parts of the claim are worded differently, the substance of the claim is the same.  *Cf.* CR32 at 411-12 with CR32 at 611.  Thus, even if the amended petition had been considered by the trial court, this issue is without merit.

Boyd's trial" and that the State "failed to turn over any agreements made with

State witnesses with criminal records."  (Doc. #11, Amended Petition, at 13).

Boyd asserts that this failure violates the State's obligation to turn over

exculpatory evidence to defense counsel.

> In his original Rule 32 petition, Boyd's claim stated:

> > Furthermore, the State neglected to provide the defense
> > with conflicting statements made by several witnesses.  It
> > also failed to turn over to the defense agreements made
> > with some State witnesses with criminal records.  The
> > State's obligation to turn over evidence that may be used
> > to impeach witnesses is identical to its obligation to
> > provide exculpatory evidence. *United States v. Bagley*,
> > 473 U.S. 667 (1985).

(CR32 at 411).  This claim was dismissed by the trial court as procedurally barred

under Rule 32.2(a)(3) and for failure to comply with Rules 32.3 and 32.6(b) of the

Alabama Rules of Criminal Procedure.  The Alabama Court of Criminal Appeals

affirmed the trial court's ruling on this claim, finding that this claim was

procedurally barred under Rule 32.2(a)(3) and (a)(5) and failed to comply with

Rules 32.3 and 32.6(b).  These rulings are independent and adequate state grounds

for refusing to consider this claim.  Therefore, it is not subject to review in federal

court.  *See Coleman*, 111 S. Ct. at 2553.[32]

---

[32] This claim was presented in a slightly different format in Boyd's amended petition.  In this
claim, he states, in pertinent part:

> There has been *some suggestion* that the District Attorney offered
> certain inducements to witnesses who testified at Anthony Boyd's
> trial.  The State, however, failed to turn over to [defense counsel] any
> agreements made with witnesses with criminal records.

(Doc. #11, Amended Petition, at 611) (emphasis added).

Petitioner also asserts that the State failed to produce any of the investigating officers' field notes which, petitioner asserts, he had a right to inspect.  This issue was not presented by Boyd in his original Rule 32 petition.  It was raised for the first time in his amended petition, which the Alabama Court of Criminal Appeals held was procedurally barred from consideration based on petitioner's failure to raise with the trial court its failure to consider the claims contained in it.  Consequently, it is barred from consideration here.  *See Wainwright*, 97 S. Ct. at 2508-09; *Coleman*, 111 S. Ct. at 2553.

Even if this claim, as set out in the amended petition, had been considered by the trial court, it would not have resulted in any relief to petitioner because it is incredibly vague.  Petitioner does not provide the content of these notes or in state in what way their content was due to be disclosed to him.   In addition, he provides no legal citations to support this claim.  As a consequence, the claim is too vague to grant relief.

Petitioner also alleges that the State informed the court that it had a "Nagra tape"[33] of Boyd threatening Roderick Dye if he testified.  However, the State never produced the tape.  He also claims that the State "indicated" it had evidence of

---

This claim contains nothing more than mere speculation on the part of petitioner.  None of the witnesses are named and none of the alleged inducements are identified.  Thus, even if this claim had been considered by the trial court, it would have been found to be without merit.

[33]   A Nagra is a small tape recorder frequently concealed on cooperating witnesses or undercover law enforcement authorities to record incriminating conversations with persons suspected of engaging in illegal activity.

other threats made to various witnesses in this case, yet it failed to produce such evidence to the defense.

This issue was not presented by Boyd in his original Rule 32 petition.  It was raised for the first time in his amended petition which the Alabama Court of Criminal Appeals held was procedurally barred from consideration based on petitioner's failure to raise with the trial court its failure to consider the claims contained therein.  Consequently, it is barred from consideration here.  *See Wainwright*, 97 S. Ct. at 2508-09; *Coleman*, 111 S. Ct. at 2553.[34]

Because all of petitioner's *Brady* claims fail to meet the requirements of 28 U.S.C. § 2254(d) or are barred from consideration in federal court under *Wainwright*, 97 S. Ct. at 2508-09, and *Coleman*, 111 S. Ct. at 2553, and other such cases, no basis exists for an evidentiary hearing on any of these issues.

## III.  Cumulative Error and Prosecutorial Misconduct.

Petitioner next lists numerous claims which he alleges accumulated to result in prejudice to him.  However, where all of the claims presented by petitioner are meritless, procedurally defaulted, or both, no cumulative error can occur.  *See Derden v. McNeel*, 978 F.2d 1453, 1454, 1458 (5th Cir. 1992) (citing *Coleman*, 111 S. Ct. at 2553), *cert. denied*, 508 U.S. 960, 113 S. Ct. 2928, 124 L. Ed. 2d 679

---

[34] Even if this claim had been considered in State court, it would not have resulted in any relief.  The tape was never used by the State in its prosecution of Boyd, and a tape of Boyd threatening a witness in the case can hardly be considered *Brady* or *Giglio*-type evidence.  Likewise, petitioner does not provide any information concerning how the State "indicated" to the defense that it had more such evidence.  As a consequence, the claim is too vague to grant relief.

(1993). A review of these claims reveals that they did not result in a denial of petitioner's constitutional rights.

The Fifth Circuit in *Derden* recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Id.* at 1454 (citation omitted). The court also held that meritless claims or claims which are not prejudicial cannot be cumulated, regardless of the total number raised. *Id.* at 1461. Consequently, no cumulative error occurred and no basis exists for relief on this claim.

Petitioner alleges, in Claim (A), that he was denied due process when the trial court, the prosecutor and Cox's own counsel improperly coerced Quintay Cox to testify against him. This issue was not presented by Boyd in his original Rule 32 petition. It was raised for the first time in his amended petition which the Alabama Court of Criminal Appeals held was procedurally barred from consideration based on petitioner's failure to raise with the trial court its failure to consider the claims contained therein. Consequently, it is barred from consideration here. *See Wainwright*, 97 S. Ct. at 2508-09; *Coleman*, 111 S. Ct. at 2553.

Even if this issue, as set out in the amended petition, had been considered by the trial court, it is without merit. Petitioner claimed, in his original Rule 32

petition, that he received ineffective assistance of counsel when Cox was allegedly coerced into testifying against him. However, the trial court ruled that, because Cox was facing possible execution if he refused to testify and if he was later convicted of the capital offense, it was appropriate to make sure he understood the ramifications of his refusal to fulfill his plea agreement with the State to testify against Boyd. The trial court held that, because having this colloquy with Cox was not error, trial counsel could not be ineffective for failing to object to it.

Petitioner did not appeal this ruling to the Alabama Court of Criminal Appeals. Thus, the trial court has, in essence, ruled that no error or unfair coercion occurred in its exchange with Cox. Furthermore, this issue could have been raised by petitioner at trial or on direct appeal, but was not. Therefore, it is unexhausted. Now is too late for petitioner to exhaust this claim because of the Rule 32 one-year statute of limitations and the Rule's prohibition against second or successive petitions. Rule 32.2(b) and (c), Ala. R. Crim. P. Consequently, it is barred from federal review. *Coleman*, 111 S. Ct. at 2553; *Snowden v. Singletary*, 135 F.3d 732, 735, 737 (11th Cir 1998). *See also* 28 U.S.C. § 2254(b)(1)(A) ("An application for writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State. . . .").

Next, in Claim (B), petitioner claims that the trial court failed to inform the jury that it could consider mercy and sympathy in its verdict. Specifically, he states that "[t]he prosecutor improperly told the jury in his penalty-phase argument not to extend any sympathy to Mr. Boyd in its deliberations." (Doc. #11,

Amended Petition, at 16).  He also claims that, because sympathy and mercy are

relevant considerations in mitigation, for the prosecutor to tell the jurors not to

consider such factors was improper.  (*Id.*)

This claim was raised in Boyd's direct appeal and the Alabama Court of

Criminal Appeals found that it was without merit.  *Boyd*, 715 So. 2d at 845-46.

Because this issue was decided on the merits, this claim cannot provide the basis

for federal habeas relief unless petitioner can demonstrate that this decision was

contrary to, or involved an unreasonable application of, clearly established federal

law as established by the Supreme Court, or that the decision of the court was

based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings.  28 U.S.C. § 2254(d).  Petitioner has not

made such a showing.

The trial court instructed the jury as follows:

> Your deliberations and verdict should be based upon the
> evidence you have seen and heard and the law in which I
> have instructed you.  There is no room for the influence
> of passion, prejudice, or other arbitrary factor.

In *Saffle v. Parks*, 494 U.S. 484, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990), the

trial judge instructed the jury at the sentencing phase of the trial as follows:

> You must avoid any influence of sympathy, sentiment,
> passion, prejudice, or other arbitrary factor when
> imposing sentence.  You should discharge your duties as
> jurors impartially, conscientiously and faithfully under
> your oaths and return such verdict as the evidence
> warrants when measured by these Instructions.

494 U.S. at 487, 110 S. Ct. at 1259.  In *Parks*, the Supreme Court of the United States rejected the principle that the Eighth Amendment requires that jurors be allowed to base the sentencing decision upon the sympathy they feel for the defendant after hearing his mitigating evidence.  Thus, petitioner's claim is meritless.

The next claim by petitioner, Claim (C), is that he was convicted solely on the basis of uncorroborated accomplice testimony.  This claim was raised on direct appeal and found by the Alabama Court of Criminal Appeals to be without merit. *Boyd*, 715 So. 2d at 847.  Because Boyd has failed to demonstrate that this finding resulted in a decision that was contrary to, or an unreasonable application of federal law or that the decision was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding, it does not support federal habeas relief.  28 U.S.C. § 2254(d)(1) and (2).

Furthermore, the requirement that accomplice testimony be corroborated is a matter of state law.  *See* § Ala. Code 12-21-222, (1975).[35]  No constitutional requirement exists that accomplice testimony be corroborated.  Federal habeas relief is unavailable "for errors of state law."  *See Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) (quoting *Lewis v. Jeffers*, 497

---

[35] This section of the Alabama Code states:

> A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.

U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990)) (a jury instruction that "was allegedly incorrect under state law is not a basis for habeas relief," *id*. at 71-72, 112 S. Ct. at 482, because federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68, 112 S. Ct. at 480); *see also Marshall v. Lonberger*, 459 U.S. 422, 438 n.6, 103 S. Ct. 843, 853 n.6, 74 L. Ed. 2d 646 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").  Therefore, relief on this claim must be denied.

Petitioner next argues, in Claim (D), that prosecutorial misconduct improperly infected the trial and affected the result.  He asserts that numerous instances of prosecutorial misconduct  prejudiced him and denied him due process.

In the first such claim, petitioner alleges that the prosecutor improperly told the jury not to consider evidence favorable to the defense by seeking assurances from the jurors during voir dire that they would not hold the fact that a co-defendant was given a plea offer against the State.  In closing argument, the prosecutor stated:

> If you just don't like the idea of using a person who is involved in the crime that testifies against someone else and you don't like that idea will you tell me.  There's not but one person to be mad about or to be upset with if you don't like that agreement, and that's me.  I run the office It's my responsibility.  I authorized it.  If you think I made a bad deal, then tell me about it after this case is over, but don't make another bad deal by giving him some relief by saying that he is guilty of no more than Quintay Cox, because I made a bad deal.

(TR at 799).

This claim was raised on direct appeal by petitioner. The Court of Criminal Appeals found it to be without merit by denying it in an omnibus statement that it had searched the record and found no error. *Boyd v. State*, 715 So. 2d at 852. This matter was also addressed on collateral appeal. The Alabama Court of Criminal Appeals decided that this issue was barred pursuant to Rule 32.2(a)(3) and (4), because the issue could have been, but was not, raised at trial but was raised and addressed on direct appeal. *Ex parte Boyd*, 913 So. 2d at 1143. Consequently, because petitioner has not shown that the determination on the merits of the claim on direct appeal resulted in a decision that was contrary to, or an unreasonable application of federal law or that the decision was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding, it does not support federal habeas relief. 28 U.S.C. § 2254(d)(1) and (2).

In any event, the trial court repeatedly admonished the jury that what the lawyers said during their arguments was not evidence and that the only evidence in this case came from the witness stand. *See, e.g.*, TR at 756 ("I know I've told you many times, that what the lawyers say to you in this argument is not evidence . . . .  All that comes from the witness stand.") and TR at 896 ("Please understand that what the lawyers say to you is not evidence in the case, and its never to be considered as evidence.").

Jurors are presumed to follow the court's instructions. *See e.g., Ingram v. Zant*, 26 F.3d 1047, 1053 (11th Cir. 1994) ("Because we presume that jurors follow such instructions, we must assume that the jury put aside any biases it may have had, applied the legal standards as enunciated in the jury instructions, and based its sentencing decision on the facts introduced at trial and sentencing."); *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) ("Jurors are presumed to follow the law as they are instructed.").  Because the court must presume that the jurors followed the trial court's instructions to base their decision on the evidence and the law, and not on arbitrary factors, Boyd's attempt to prove prejudice is unavailing.

In the next claim made by petitioner, he alleges that the State prosecutor "improperly used inadmissible hearsay.  During the course of the trial, the prosecutor is alleged to have elicited a number of inappropriate hearsay statements from the State's witnesses.  According to petitioner, "the record was replete with hearsay statements, to which the defense failed to object."  (Doc. #11, Amended Petition, at 17).  This claim is totally lacking in specificity and is due to be denied on this basis alone.  In the State court proceedings, petitioner's only specific reference to an alleged hearsay statement was the testimony of two witnesses who testified that they heard the victim pleading for his life at the time he was abducted.  The claim that this statement was hearsay was raised by Boyd on direct appeal, and the Alabama Court of Criminal Appeals found it to be without merit. The Court of Criminal Appeals found the statements made by the victim to be

admissible as spontaneous exclamations.[36]  *Boyd*, 715 So. 2d 841-42.  Relief is not available on this claim because petitioner has failed to demonstrate that the decision of the Court of Criminal Appeals on this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or involved an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d)(1) and (2).  He also has not shown that this state court evidentiary ruling denied him fundamental fairness.  *See Estelle*, 112 S. Ct. at 480.  Therefore, this claim does not support habeas relief.  *See also United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006) (Confrontation Clause not violated by admission of hearsay statements under excited utterance exception because statements were made in a stressful situation).

Petitioner also claims that the prosecutor improperly used leading testimony as a means of introducing evidence into the record.  According to petitioner, throughout the trial, the prosecutors provided testimony and simply had their witnesses affirm their assertions.  Boyd contends that this conduct was so pervasive and so detailed in nature that the prosecutors might have just as well been testifying themselves.  (Doc. #11, Amended Petition, at 17).  No further

---

[36] Rule 803, Ala.R.Evid., states, in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> **(2) Excited Utterance.**  A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

specific facts are alleged regarding this claim.  However, on the following page of petitioner's brief he asserts that the prosecutors used leading questions almost exclusively when conducting direct examination of Quintay Cox.  Again, he cites no specific testimony or explains how this approach was prejudicial to Boyd.

This claim was raised by petitioner in his direct appeal to the Alabama Court of Criminal Appeals, which found that it was without merit.  *Boyd*, 715 So. 2d at 844-45.  He has not alleged nor shown that the denial of relief violates 28 U.S.C. § 2254(d).  Therefore, this claim cannot support habeas relief.

In another claimed instance of prosecutorial misconduct, Boyd claims that, during his trial, the prosecutor improperly stated his personal opinion regarding the evidence in both phases of the trial.  This claim was raised in Boyd's direct appeal and the Alabama Court of Criminal Appeals found this claim to be without merit.  *Boyd*, 715 So. 2d at 852.  Pursuant to 28 U.S.C. § 2254(d), this claim cannot be the basis for federal habeas relief unless it resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law based on decisions of the U.S. Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Petitioner has provided the court with nothing other than bare assertions, unsupported by any evidence.  Consequently, no relief is due on this claim.

In another claim, petitioner asserts that the prosecutor improperly contrasted Boyd's rights with the rights of the victim.  This claim was raised by petitioner in

his direct appeal.  The Alabama Court of Criminal Appeals found that this claim was without merit by the assertion that it searched the entire record for any error that might adversely affect Boyd's substantial rights and found none.  *Boyd*, 715 So. 2d  at 852.

According to the State, the petitioner has not and cannot show that this ruling resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law or that the decision was based on an unreasonable determination of the facts.  (Doc. #20, Respondents' Brief, at 69).  A review of the Supreme Court holdings in this area reflects that this argument by counsel was not improper.

The Supreme Court has held that it is improper to urge that a criminal defendant's exercise of constitutional rights is a ground for discrediting his defense. *See, e.g., Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).  However, placed in context, this is not what the prosecutor implied with this argument.  Even in the authority cited by petitioner, *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir. 1985), *rev'd on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), the Eleventh Circuit refused to overturn the petitioner's conviction on this ground, stating:

> Whisenant argued that Brooks himself believed in the death penalty, as evidenced by the killing of Galloway, and noted that the victim did not have lawyers or a judge or any other procedural safeguards.  Brooks asserts that this comment was an attempt to provoke a negative reaction against him merely because he was exercising the procedural rights to which he was entitled.

It is improper to urge that a criminal defendant's exercise of constitutional rights is a ground for discrediting his defense. *See, e.g., Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) (Fifth Amendment right to remain silent at trial commands that prosecutor and judge not make adverse comment about defendant's exercise of the right). Similarly, it is wrong to imply that the system coddles criminals by providing them with more procedural protections than their victims. A capital sentencing jury's important deliberation should not be colored by such considerations.

Although the remarks, as interpreted in the manner urged by Brooks, clearly would be improper, the more obvious interpretation of the argument is not. Correctly anticipating a defense argument that the death penalty is bad, Whisnant argued that Brooks himself believed in the death penalty. The thrust of the argument was that Brooks' execution of Galloway in a manner much more horrible than a procedurally proper, legal execution demonstrated Brooks' belief in the death penalty. Following the command of *Donnelly v. DeChristoforo*, 416 U.S. at 647, 94 S. Ct. at 1873, that "a court should not lightly infer that a prosecutor intended an ambiguous remark to have its most damaging meaning," we doubt that the jury understood the remark in the improper way suggested by Brooks.

762 F.2d at 1411. Boyd's prosecutor made no comparison of the victim's rights to the rights of Boyd in the argument cited by petitioner. He simply argued that petitioner obviously believed in the death penalty based on his own actions as judge, jury and executioner. That the jury interpreted this remark as a denigration of petitioner's exercise of his constitutional rights is highly unlikely. Even if the jury did so interpret the comment, viewed in context, petitioner has made no showing that the outcome of the case would have been different had this argument not been made. Therefore, this claim is without merit.

Petitioner also claims that the prosecutor improperly defined reasonable doubt. Boyd failed to raise this claim at trial or on direct appeal. Petitioner raised the claim in his Rule 32 petition to the trial court. The trial court addressed this claim and found it to be without merit. However, petitioner failed to raise the issue on appeal to the Alabama Court of Criminal Appeals, and it was deemed abandoned. *Boyd*, 913 So. 2d at 1145.

If this issue is considered solely as a claim that the prosecutor committed misconduct by improperly defining reasonable doubt, petitioner never presented it to the state courts for a ruling. Thus, this claim is unexhausted but procedurally defaulted, *see Snowden*, 135 F.3d at 737; 28 U.S.C. Section 2254(b)(1)(A). If the claim is considered within the context of a claim of ineffective assistance for failing to object to the prosecution's improper definition of reasonable doubt, it is still procedurally barred.

In *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999), the Supreme Court held that to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state. *Id*. at 845-47, 119 S. Ct. at 1732-34. No doubt exists that Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule. *Smith v. Jones*, 256 F.3d 1135 (11th Cir. 2001). Because petitioner failed to appeal this claim to the Alabama Court of Criminal Appeals, it is precluded from consideration here.

Petitioner also argues that the prosecutor argued facts that were not in evidence.  He asserts that the prosecutor improperly argued that no evidence showed that Donique Cox was involved in the murder and was afraid of Shawn Ingram, and that the victim begged for his life.

Boyd never raised these claims at trial or on direct appeal.  Claims that could have been raised at trial or on appeal, but are not, are barred from consideration in a state habeas petition under Rule 32.2(a)(3) and (5), Ala. R. Crim. P.  It also is too late for petitioner to return to State court to argue these claims.  Because they would be barred from review in State proceedings, they are barred from consideration via federal habeas review under *Coleman*, 111 S. Ct. at 2553; *O'Sullivan*, 119 S. Ct. at 1728, and *Snowden*, 135 F.3d at 737.  *See also* 28 U.S.C. § 2254(b)(1)(A)("An  application for writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . .").

Next, petitioner argues that the prosecutor improperly implied that Boyd acted with premeditation.  He asserts that, during the penalty phase, the prosecutor stated that Boyd got Cox involved so that they could look for the victim.  According to petitioner, this implied premeditation on Boyd's part.  However, petitioner states that this suggestion is "a complete fabrication by the prosecution." (Doc. #11, Amended Petition, at 65).  He claims that the evidence showed that Boyd and Cox were looking for Dexter Spinks, not the victim.  He further asserts that the evidence was that Ingram, not Boyd, decided to kidnap the victim.

Petitioner could have, but did not, raise this issue at trial or on direct appeal. Therefore, it is barred from consideration here. *Coleman*, 111 S. Ct. at 2553; *O'Sullivan*, 119 S. Ct. at 1728; *Baldwin v. Johnson*, 152 F.3d 1304, 1318-20 (11th Cir. 1998). In any event, testimony indicated that Boyd was intent on finding Huguley because of the unpaid drug debt. Although they may have been looking for Spinks at the particular moment they came upon Huguley, they obviously wanted to find Huguley as well, because they took the opportunity to kidnap and murder him. However, even assuming petitioner's claims to be correct, as noted above, the jury was repeatedly admonished by the trial judge that what the lawyers said was not evidence. If any of these statements are incorrect, they, nevertheless, are not so prejudicial that the outcome would likely have been different without them.

Petitioner next alleges that the prosecutor's statement, that "society has [the] right to protect itself from the Anthony Boyds of the world," improperly implied that Boyd would kill again if not given the death penalty. (Doc. #2, Brief of Petitioner, at 66). No support is provided for this claim. It appears to be nothing more than a justification for the existence of the death penalty under Alabama law. However, even if this implication is not what the prosecutor intended, the statement certainly cannot be construed to imply that petitioner should be executed lest he kill again. This argument is without merit.

Petitioner also objects to the prosecutor's alleged reference to the fact that Boyd sold drugs. A review of the transcript of the trial reflects that the death of

Huguley was the result of a drug debt that Huguley owed.  The fact that he owed money for drugs to Boyd was, thus, inextricably intertwined with the other evidence in the case and was admissible to demonstrate motive for the killing of the victim.

Evidence of criminal activity other than the offense charged is not prohibited extrinsic evidence if the evidence is an uncharged offense that arose out of the same transaction or series of transactions as the charged offense, is necessary to a complete story of crime, or is inextricably intertwined with the evidence on the charged offense.  Ala. R. Evid. 404(b); *United States v. Baker*, 432 F.3d 1189, 1205, 1209 (11th Cir. 2005) (evidence that drug conspiracy defendant had participated in murder was not excludable as "other wrongs" evidence; murder, which had been committed during scope of and in furtherance of conspiracy, was inextricably intertwined with evidence of conspiracy).

In addition, this claim was raised by petitioner on direct appeal and was found to be without merit.  *Boyd*, 715 So. 2d at 838-39.  The claim cannot be considered in federal court unless it resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law based on decisions of the U.S. Supreme Court, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Petitioner has provided the court with nothing other than bare assertions, unsupported by any evidence.  Consequently, this claim is meritless.

In Claim III (E), petitioner alleges also that prosecutorial misconduct occurred at the penalty phase of the trial.  He asserts that the prosecutor "made numerous expressions of his personal opinion of Mr. Boyd's sentence.  Such expressions, coming from a governmental officer, tend to induce the jury to place a higher value on them."  (Doc. #2, Petitioner's Brief, at 67).  This claim is too vague to warrant relief.  Petitioner fails to provide any further information regarding what comments the prosecutor made that he is referencing in this claim.

However, a similar claim was made by petitioner on direct appeal in which he alleged that the prosecutor was giving his personal opinion when he used phrases such as "I think" and "I believe" in discussing the evidence.  The Court of Criminal Appeals held that, when these comments were read in the context of the entire argument, the statements were legitimate inferences from the evidence.  Therefore, it held that there was no error.  *Boyd*, 715 So. 2d at 841.

Because the claim was considered in State court, this claim cannot be considered in federal court unless it resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law based on decisions of the U.S. Supreme Court or the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Petitioner has provided the court with nothing other than bare assertions, unsupported by any evidence.  Consequently, this claim does not support habeas relief and is meritless.

In Claim III(F), petitioner asserts that the trial court erred when it failed to change venue based on extensive pretrial publicity.  This claim was addressed by the Alabama Court of Criminal Appeals and found to be without merit.  *Boyd*, 715 So. 2d at 847-48.  Thus, this claim cannot support relief in federal court unless it resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law based on decisions of the U.S. Supreme Court or the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Petitioner has failed to make any showing of this sort.  Therefore, habeas relief on this claim is due to be denied.

Furthermore, a review of the trial transcript shows that, of those who recalled hearing anything about the case, only one or two jurors could actually remember what they heard.  These jurors were questioned regarding whether they could put anything they might have heard out of their minds and most indicated they could and would base their decision only on the evidence in the case.  The one potential juror who stated that she did not think she could put it out of her mind was excused.  Therefore, this claim is also without merit.

In Claim III(G), petitioner asserts that the trial court erred by failing to give a lesser-included offense of felony murder instruction and trial counsel was ineffective for failing to object to its absence, despite evidentiary support for such a charge. However, petitioner never cites any evidence in the record which supports this claim.  It is a bare allegation and nothing more.

This claim was addressed by the Alabama Court of Criminal Appeals and found to be without merit. *Boyd*, 715 So. 2d at 836-37. Thus, this claim cannot be considered in federal court unless it resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law based on decisions of the U.S. Supreme Court or the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1) and (2). Petitioner has failed to make any showing of this sort. Therefore, this claim will not support habeas relief.

In Claim III(H), petitioner claims that the trial court's reasonable doubt instruction was improper in that it shifted the burden of proof to Boyd instead of the State. This statement is the full extent of petitioner's claim in the Amended Addendum of Grounds For Relief (Doc. #11). It contains no specifics either here or in the brief submitted in support of this claim, setting out in detail the wording of the reasonable doubt instruction that petitioner asserts is improper. Boyd also does not show how this charge prejudiced him. This claim was raised by petitioner in more detail in his direct appeal. In that appeal, he alleged that the instruction given by the trial court ran afoul of *Cage*, 111 S. Ct. at 328. The Alabama Court of Criminal Appeals addressed this claim and found to be without merit. *Boyd*, 715 So. 2d at 843-44. Thus, this claim cannot support habeas relief unless it resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law based on decisions of the U.S. Supreme Court or the decision was based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Petitioner has failed to make any showing of this sort. Therefore, relief on this claim is due to be denied.

In Claim III(I), petitioner alleges that the trial court improperly instructed the jury on kidnaping.  He asserts that the trial court erred when it failed to define the word "terrorize" as used in the kidnaping instruction.

The Alabama Court of Criminal Appeals addressed this claim and found it to be without merit.  *Boyd*, 715 So. 2d at 855.  Thus, no habeas relief may be granted on this claim unless it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law based on decisions of the U.S. Supreme Court or the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Petitioner has failed to make any showing of this sort.  Therefore, this claim will not support habeas relief.

Petitioner asserts in Claim III(J), the trial court improperly instructed the jury on aggravating circumstances.  He states that "[t]he Court's charge regarding aggravating circumstances seem weightier than they should have been."  (Doc. #2, Petitioner's Brief, at 70; Doc #11, Amended Addendum to Petition, at 19). Petitioner provides no further detail as to how this charge made the aggravating circumstances seem "weightier" and how this prejudiced petitioner.  This claim is simply a bare assertion with no evidentiary support.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that a petitioner is not even entitled to an

evidentiary hearing as to federal habeas corpus relief when the "claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (quotations and citation omitted).  Therefore, it does not provide a basis for habeas relief.

In Claim III(K), petitioner alleges that the trial court should have individually questioned jurors after a spectator had an emotional outburst in the courtroom.  After the outburst, trial counsel for petitioner was asked if he wanted an instruction of some kind.  Defense counsel asked that the jury simply be told to ignore the outburst.

This discrete claim was never raised by petitioner in any State court proceeding.  Although Boyd alleged that trial counsel was ineffective for failing to request that the jurors be individually questioned about the outburst, he never asserted a claim that the trial court erred in failing to do this.  Habeas petitioners generally cannot raise claims in federal court that were not first exhausted in state court. *See, e.g., Snowden*, 135 F.3d at 737.  To properly exhaust a claim, "the petitioner must afford the State a full and fair opportunity to address and resolve the claim on the merits."  *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10, 112 S. Ct. 1715, 1720, 118 L. Ed. 2d 318 (1992).  Merely that the federal habeas petitioner has been through the state courts is not sufficient, *Picard v. Connor*, 404 U.S. 270, 275-76, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971), nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made.  *Anderson v. Harless*, 459 U.S. 4, 6,

103 S. Ct. 276, 277, 74 L. Ed. 2d 3 (1982) (citations omitted).  A petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim."  *Picard*, 404 U.S. at 277, 92 S. Ct. at 513 (alteration in original)

Furthermore, even though petitioner raised the ineffective assistance claim regarding the courtroom outburst in his appeal of the denial of his Rule 32 petition to the Alabama Court of Criminal Appeals, he did not appeal this ruling in his petition for further review by the Alabama Supreme Court.  Therefore, it is barred from review here.  *See O'Sullivan*, 119 S. Ct. at 1728; *Smith*, 256 F.3d at 1135.

Petitioner next alleges, in Claim III(L), that Alabama's sentencing scheme is unconstitutional.  The Alabama Court of Criminal Appeals addressed this claim and found it to be without merit.  *Boyd*, 715 So. 2d at 846.  Thus, this claim cannot be the basis for habeas relief unless it resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law based on decisions of the U.S. Supreme Court or the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Petitioner has failed to make any showing of this sort.  Therefore, habeas relief as to this claim is due to be denied.

## IV.  Lack of Corroborating Physical Evidence, Ineffectiveness of Counsel, Prosecutorial Misconduct and Trial Court Error Combined to Create Error.

In Ground IV of his petition, Boyd asserts that the lack of corroborating physical evidence, trial counsel's ineffectiveness in developing the alibi defense,

prosecutorial misconduct, and trial court error combined to create a great risk of executing an actually innocent man.

Petitioner never raised this claim at trial, on direct appeal or in the state collateral proceedings. A state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. *Alderman v. Zant*, 22 F.3d at 1549. The petitioner has failed to show either and, therefore, this claim is barred from consideration.

Because none of the laundry list of issues raised by petitioner that are not procedurally barred have any merit, this "combined error" claim is also without merit. Obviously, if the individual claims lack merit, the claims as a whole cannot be combined to make out a claim. Zero plus zero is still zero.

## V. <u>Proportionality of Sentence Under *Enmund v. Florida*.</u>

In Ground V, citing *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982), Boyd asserts that his sentence is disproportionate to his role in the offense because two of his co-defendants were given lighter sentences. This issue was considered by the Alabama Court of Criminal Appeals which found, while not specifically citing *Enmund*, that Boyd's sentence was not disproportionate. *Boyd*, 715 So. 2d at 852. Thus, this claim cannot support habeas relief unless it resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law based on decisions of

the U.S. Supreme Court or the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Petitioner has failed to make any showing of this sort.  Therefore, this claim cannot be the basis for habeas relief.

In any event, this claim is without merit.  A proportionality review, such as the one performed by the Alabama Court of Criminal Appeals, is sanctioned by the Supreme Court as an appropriate manner in which to determine whether a sentence is appropriate and proportional as required by *Enmund*.  *See Cabana v. Bullock*, 474 U.S. 376, 385, 106 S. Ct. 689, 696, 88 L. Ed. 2d 704 (1986).

In *Enmund*, two people were murdered during the course of a robbery while Enmund was sitting nearby in a car, waiting to help the robbers escape.  Enmund was not present during the murders, did not intend that the victims be killed, and had not anticipated that "lethal force would or might be used if necessary to effectuate the robbery or a safe escape."  *Enmund*, 458 U.S. at 788, 102 S. Ct. at 3372.  Both Enmund and the co-defendants who had actually committed the murders were sentenced to death.  The Supreme Court concluded that a death sentence "is an excessive penalty for the robber who, as such, does not take human life," *id.* at 797, 102 S. Ct. at 3377, and that the death penalty was a disproportionate penalty for Enmund because he did not "kill, attempt to kill, or intend that a killing take place or that lethal force will be employed."  *Id*. at 797, 102 S. Ct. at 3376.  *Enmund* thus holds that the death penalty is too harsh a penalty for a certain category of crime.  However, *Enmund* does not assist Boyd,

and the disparity between his sentence and Ackles' does not violate the Eighth Amendment.

As noted, principles of proportionality embodied in the Eighth Amendment prohibit the imposition of the death penalty upon persons who, though guilty of capital murder under state law, did not themselves kill, attempt to kill or intend to kill.  In *Tison v. Arizona*, 481 U.S. 137, 158, 107 S. Ct. 1676, 1688, 95 L. Ed. 2d 127 (1987), the Court held that major participation in the felony committed, combined with a reckless indifference to human life, was sufficient to satisfy *Enmund*'s culpability requirement.  Any appropriate tribunal may make the finding of culpability required by *Enmund.  Cabana v. Bullock*, 474 U.S. at 392, 106 S. Ct. at 700.  Thus, a finding by the jury, trial judge or appellate court may satisfy *Enmund.  Id.*  The state courts' findings of fact, both trial and appellate, are entitled to a presumption of correctness, under 28 U.S.C. § 2254(d).  *Sumner v. Mata*, 449 U.S. 539, 546, 101 S. Ct. 764, 769, 66 L. Ed. 2d 722 (1981); *Lusk v. Dugger*, 890 F.2d 332, 336 (11th Cir. 1989), *cert. denied*, 497 U.S. 1032, 110 S. Ct. 3297, 111 L. Ed. 2d 805 (1990).

A review of the evidence reflects that Boyd's participation in the murder of Huguley was far greater than Enmund's participation in the murder of the victim in that case.  Boyd did not merely remain in the car without knowledge of what was happening.  He was present when Huguley was kidnaped and stayed with his co-defendants as they drove Huguley to where the murder occurred.  Testimony indicates that he participated in taping the victim's legs and watched while his

mouth and body were taped and he was affixed to the park bench. Boyd also was present when gasoline was poured over the victim and watched while he was set on fire and while he was immolated. The jury, hearing this evidence, determined that death was the appropriate sentence. The trial judge agreed. The Court of Criminal Appeals reviewed the sentence for proportionality and found it to be appropriate.

Petitioner alleges that his sentence is disproportionate because no evidence showed that he participated in the murder apart from the testimony of Quintay Cox.[37] Furthermore, he asserts that, even considering the testimony of Cox, his participation was minor and that he is clearly less culpable than Ingram, who received a sentence of life without parole.

As noted above, the trial judge and the jury heard the testimony in this case and clearly believed the testimony of co-defendant Cox. Likewise, the trial court also decided that this sentence was warranted. After a proportionality review, the Court of Criminal Appeals affirmed the death sentence. Sentencing is an

---

[37] A reading of the petition reflects that petitioner alleges that the fact that the only evidence of his participation in the murder was based on the uncorroborated testimony of Quintay Cox, is evidence that the sentence he received was disproportionate under *Enmund.* The court does not interpret it to be a discrete claim that petitioner is entitled to habeas relief because he was convicted on the uncorroborated testimony of a co-conspirator. In any event, such a claim would be without merit. Ample corroboration exists based on petitioner's statement to another witness that he and others were involved in Huguley's murder and his voicing of threats to get Huguley for not paying a drug debt. Also testimony of witnesses said they saw him in the van at the time the victim was kidnaped and forced into it.

In addition, the requirement for corroboration of a co-conspirator's testimony before a defendant can be convicted of an offense is based on State law. No constitutional protection requires that a co-conspirator's testimony be corroborated before a conviction is valid. *See United States v. Garner*, 581 F.2d 481, 486 n.2 (5th Cir. 1978) (federal defendant may be convicted on uncorroborated accomplice testimony "if it is not on its face incredible or otherwise unsubstantial."); *United States v. Iacovetti*, 466 F.2d 1147 (5th Cir. 1972), *cert. denied*, 410 U.S. 908, 93 S. Ct. 963, 35 L. Ed. 2d 270 (1973).

individualized matter and the sentence received by a defendant is based on more than just the extent of his or her participation in the offense of conviction. A plain reading of *Enmund* reflects that the Supreme Court intended the proportionality review to require a comparison of the extent of the defendant's participation in the offense with the appropriateness of the sentence imposed. As noted, where the petitioner is not present when a murder occurs, did not know it would occur and had not anticipated that lethal force would be employed, he cannot be sentenced to death. Such a sentence is disproportionate to the extent of his participation in the offense. However, Boyd's actions reflect, at best, a reckless indifference to the fact that Huguley would be killed. According to *Tison*, 107 S. Ct. at 1688, a sentence of death in such a situation is not disproportionate under *Enmund*.

> Enmund held that when "intent to kill" results in its logical though not inevitable consequence-the taking of human life-the Eighth Amendment permits the State to exact the death penalty after a careful weighing of the aggravating and mitigating circumstances. Similarly, we hold that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

*Tison*, 481 U.S. at 157-58, 107 S. Ct. at 1688. Therefore, this claim is also without merit.

Furthermore, the only *Enmund*-like claim petitioner made in this case was submitted in his amended Rule 32 petition, which was not considered by the trial court. Assuming that refusal to consider this claim was proper, petitioner has

failed to appropriately raise the issue in State court at all.  Therefore, it is also procedurally barred from consideration here.

Petitioner also asserts that he received punishment based on the actions of a group, not as an individual, that his actions did not rise to the level required to receive a death sentence, and that his presence at the crime scene was used as a proxy for the requisite state of mind.  However, these claims were not raised in any State court proceeding, including the *Edmund* claim made by Boyd in his amended petition.  As noted above, an attempt to raise this claim would result in it being barred under State procedural rules.  Because these claims would be barred from consideration in State court, they are barred from consideration here. *Alderman*, 22 F.3d at 1549.

Furthermore, under the circumstances presented here, petitioner's sentence is not disproportionate under *Enmund* due to the actions of a group, as asserted by petitioner.  At his sentencing hearing, petitioner's counsel put on evidence of mitigating circumstances favorable to petitioner.  The jury was instructed to determine its recommended sentence based only on the evidence before it. Petitioner submitted no evidence that the jury's decision or the decision of the trial judge in sentencing petitioner to death was based on "the actions of the group." Petitioner clearly received an individualized sentencing hearing.  This claim is a bare assertion without evidentiary support.  Therefore, it is both procedurally barred and without merit.

## VI.  <u>Constitutionality of Alabama's Capital Statute Under *Ring v. Arizona.*</u>

In Claim VI, petitioner contends that his sentence was imposed unconstitutionally because the jury made only a non-binding sentencing recommendation and the judge ultimately sentenced the defendant to death, in violation of *Ring*, 122 S. Ct. at 2428.  In *Ring*, the U.S. Supreme Court held that an Arizona statute pursuant to which, following a jury adjudication of a defendant's guilt of first-degree murder, the trial judge, sitting alone, determined the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty, violated the Sixth Amendment right to a jury trial in capital prosecutions.  However, even if this decision were retroactive so as to be available for Boyd in this petition, this decision does not affect the Alabama statute because, under Alabama law, the determination of the existence of an aggravating or mitigating factor is performed by the jury, not the judge.  Based on its findings, the jury then makes a recommendation that a defendant be sentenced to life without parole or death.  The trial court then performs a weighing process to decide whether to follow the jury recommendation.

> [T]he weighing process is not a factual determination. In fact, the relative "weight" of aggravating circumstances and mitigating circumstances is not susceptible to any quantum of proof.  As the United States Court of Appeals for the Eleventh Circuit noted, "While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard . . . the relative weight is not." *Ford v. Strickland*, 696 F.2d 804, 818 (11th Cir. 1983). This is because weighing the aggravating circumstances and the mitigating circumstances is a process in which "the sentencer determines whether a defendant eligible

for the death penalty should in fact receive that sentence." *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S. Ct. 2630, 129 L. Ed. 2d 750 (1994). Moreover, the Supreme Court has held that the sentencer in a capital case need not even be instructed as to how to weigh particular facts when making a sentencing decision. *See Harris v. Alabama*, 513 U.S. 504, 512, 115 S. Ct. 1031, 130 L. Ed. 2d 1004 (1995) (rejecting "the notion that 'a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required'" (quoting *Franklin v. Lynaugh*, 487 U.S. 164, 179, 108 S. Ct. 2320, 101 L. Ed. 2d 155 (1988)) and holding that "the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer").

Thus, the weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. *See California v. Ramos*, 463 U.S. 992, 1008, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983) ("Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, . . . the jury . . . then is free to consider a myriad of factors to determine whether death is the appropriate punishment."); *Zant v. Stephens*, 462 U.S. 862, 902, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983) (Rehnquist, J., concurring in the judgment) ("sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does").

*Ex parte Waldrop*, 859 So. 2d 1181, 1189 (Ala. 2002). Thus, Alabama's

sentencing scheme does not violate the U.S. Constitution under *Ring*, 122 S. Ct. at

2428.

Furthermore, in *Schriro v. Summerlin,* 542 U.S. 348, 124 S. Ct. 2519, 159 L.

Ed. 2d 442 (2004), the U.S. Supreme Court held that *Ring v. Arizona*, which

extended application of *Apprendi* to facts increasing a defendant's sentence from life imprisonment to death, is not retroactive to cases on collateral review. *Summerlin*, 542 U.S. at 358, 124 S. Ct. at 2526.  *See also Turner v. Crosby*, 339 F.3d 1247, 1283 (11th Cir. 2003).  Under *Turner* and *Summerlin*, a petitioner may not appeal a conviction or bring a habeas attack based on *Ring* violations that occurred before *Ring* was handed down.  Therefore, relief on this claim is due to be denied.

CONCLUSION

Based on the foregoing analysis, the court finds and determines that the petition for writ of habeas corpus is due to be denied.  A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this the 8th day of September, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE