FILED

2009 Oct-22  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY BOYD, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Case No. 1:05-cv-01215-KOB-HGD |
| | ) | |
| DONAL CAMPBELL, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| | ) | |
| Respondent | ) | |

## MEMORANDUM OPINION AND ORDER

This court entered a Memorandum Opinion and Final Judgment in this case

on September 9, 2008, denying Anthony Boyd's petition for a writ of habeas

corpus.  (Docs. #66 & 67).  Petitioner timely filed a Motion to Alter Judgment.

(Doc. #68).  Virtually all of petitioner's claims in the motion simply restate claims

already litigated and decided in the court's September 9, 2008, Memorandum

Opinion.  However, petitioner also asserted that the court failed to address some of

the grounds raised in his § 2254 petition, which had been raised in his amended

Rule 32 petition.  Although the court found that the issues raised in the amended

Rule 32 petition were procedurally defaulted from review, the court addressed

these claims on their merits in the alternative.  Nonetheless, petitioner claimed that

the court failed to address some of these grounds.  Therefore, the court entered an

order requiring petitioner to inform the court which issues in the amended petition it had failed to address.  (Doc. #70).  Petitioner filed a response to this order. (Doc. #71).  For the reasons stated below, the motion to alter judgment is DENIED.

In his response, petitioner restates several of the arguments that he raised in his motion to alter or amend the court's Final Judgment.  He also identifies certain claims from his amended petition that he believes the court failed to address in its Memorandum Opinion.  Petitioner asserts that the claims not addressed by the court are Claims I(D), I(E), II(D), II(F), and II(G).  To the extent they have not already been addressed in the court's earlier Memorandum Opinion, the court will address them here.

First, petitioner asserts that his claims are not procedurally barred.  This argument simply rehashes the argument that petitioner made in his initial habeas petition.  Because the issues raised in the amended Rule 32 petition were (or will be herein) addressed on their merits in the alternative, this assertion is without merit.

Boyd states that the court did not address his claim that his trial counsel were ineffective during the guilt phase for failing to properly investigate his defense and challenge the State's case.  (Claims I(D) and I(E)).  In *Strickland v.*

*Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance claims.  To obtain reversal of a conviction, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding.  *Id.* at 687-88.

According to Boyd, one of the state's witnesses, Lieutenant McBurnett, testified that he went to 15th Street in Anniston on August 1, 2, and 3, 1993, to view the area where Mr. Hughley was kidnaped.  According to petitioner, the victim's body had not yet been identified on those dates, casting doubt on all of Lt. McBurnett's testimony.  Petitioner claims that trial counsel should have attacked the timing of McBurnett's investigation and used it to support the argument that the State rushed to judgment in its investigation and prosecution of Mr. Boyd and preselected him as the responsible party.

Most of the testimony of Lt. McBurnett involved identification of photographs taken of the crime scene.  McBurnett also testified briefly about taking photographs of the 15th Street area of Anniston.  A review of the transcript reflects the following:

Q.  (by prosecutor) Investigator McBurnett, I'd like to show you State's exhibits 49 through 58 for identification purposes.  Would you take those and look at those, please sir?

A.  Okay.

Q.  What do those pictures represent?

A.  Photographs of 15th Street in Anniston.

Q.  Is that an area that you've been to in the course of conducting your investigation?

A.  Yes, sir.

Q.  And do those pictures truly and accurately depict the area around 15th Street in Anniston as you have personally seen it?

A.  Yes, sir, it does.

Q.  When would have been the first time you had been up around that area?  Do you know?

A.  When would have been the first time?

Q.  *Yes, approximately.*

A.  August 1st, 2nd and 3rd.

Q.  Of?

A.  1993.  I'm sorry.

Q.  These photographs that are State's exhibits 49 through 58, do they truly and accurately depict the scene as you saw it on that occasion *sometime after the first of August, 1993*, when you first went up there?

A.  Yes, sir.

Q.  Do they truly and accurately depict the scene as it was on that day?

A.  Yes, sir.

(Trial Transcript, Vol. 3, Testimony of McBurnett, at 393-94) (emphasis added).

On cross-examination, McBurnett was asked as follows:

Q.  (by Mr. Willingham) This area on 15th Street, was that lot cleared off back in July or August of '93 or was that something that's recently been done?

A.  I think that's recently been done.

Q.  Other than the lot being cleared off, is the area pretty much the same as back in July and April? (*sic*)

A.  The best I can remember there was maybe a little bit more foliage and stuff on the trees at that time.

(*Id.* at 396).

All of Lt. McBurnett's testimony dealt with identifying photographs taken at the crime scene and 15th Street areas and the unsuccessful attempt to find identifiable fingerprints at the crime scene.  The prosecutor asked the witness the *approximate* date on which he had taken the pictures.  Furthermore, petitioner does not state how Lt. McBurnett's going to 15th Street to take pictures, allegedly before the body was identified, implicates Boyd in the murder in any way or

exposes a "rush to judgment." Unless Lt. McBurnett had some information that

something related to this murder may have occurred at the 15th Street location, he

would not have known to go there to take photographs in the first place, as it is a

location otherwise unrelated to the area where the victim's body was recovered.

Thus, nothing about the fact that Lt. McBurnett may have misstated the dates on

which he went to the 15th Street location supports an inference that Boyd was

preselected for prosecution. In fact, the date upon which McBurnett took these

photographs is largely irrelevant. Cross-examination of Lt. McBurnett on this

point would not have had any effect on the outcome of the trial.

Petitioner also alleges that the court failed to address Claim II(D)–that the

State failed to provide trial counsel with information regarding agreements that the

State allegedly made with certain witnesses; Claim II(F)–that the State failed to

provide his counsel with a "Nagra tape" of petitioner allegedly threatening

Roderick Dye if he testified against him; and Claim II(G) – that he is entitled to an

evidentiary hearing on his *Brady* claims contained in his amended Rule 32

petition.

Petitioner asserts that Roderick Dye is an "example" of a witness for whom

impeachment evidence should have been disclosed. This particular "example" is

one which petitioner states the court failed to address in its earlier Memorandum Opinion.[1]

In his amended petition, petitioner asserted this *Brady* claim based on the fact that Roderick Dye was interviewed twice and, during the first interview, begun at 2:57 p.m., denied knowing anything about the kidnaping of the victim. However, at an interview begun at 3:43 p.m. the same day, the officer conducting the interview stated that "since that [earlier interview] we have talked further and you've told me a few other things." During the second interview, petitioner alleges that Dye recalled details of the kidnaping that he had been unable to recall a little earlier in the day.

The fact that Dye told officers "a few other things" during a break in the interview does not necessarily mean that any *Brady* or *Giglio* material was created during that interim. However, the State cannot be said to have concealed this information from petitioner because the tape recording containing the interviewing officer's statement was turned over to petitioner's counsel prior to trial. Thus, trial counsel was aware of this statement and could have cross-examined Dye or the interviewing officer about it at trial.

---

[1] If there are others besides this "example," petitioner has failed to identify them.

Furthermore, in his trial testimony, Dye was clearly a reluctant witness for the prosecution.  Dye testified that he was at the Happy Tree on the day in question when a van pulled up containing petitioner, Shawn Ingram, Quintay Cox and Marcel Ackles.  He testified that he had known Boyd all of his life and the others for varying lengths of time.  Dye testified that he observed Ingram get out of the van.  They exchanged brief greetings.  He testified that he was "moving around" and noticed nothing further until he looked up and saw the van leaving. He also noticed that "New York" (the victim), who had been there earlier, was now also gone.  On cross-examination, he testified that he did not know whether "New York" left in the van. He also testified that he did not see Ingram with a weapon.  (Trial Transcript, Vol. 4, Testimony of Roderick Dye, at 601-14).

Thus, Dye only testified that a van containing Boyd drove up and then drove off and that "New York" was no longer around the Happy Tree.  Other witnesses testified in more detail and with greater recollection of the fact that the victim was forced at gunpoint into the van in which Boyd was a passenger by Shawn Ingram and driven off.  (*See, e.g.*, Trial Transcript, Testimony of Lewis Butts, at 614-30). Consequently, even if some sort of deal was made to get Dye to testify, the failure to disclose it had no effect on the outcome of the case.  The testimony of Dye was tentative, reluctant and lacking in detail.  Furthermore, it was cumulative of other

testimony.  *See Hallford v. Culliver*, 459 F.3d 1193 (11th Cir. 2006)(prosecution's failure to reveal that the daughter of the defendant, a state's witness in a death penalty case, had an agreement with the State that she would not be prosecuted as an adult in connection with her father's armed robbery/murder of the victim, in exchange for her testimony at trial, was not sufficiently prejudicial that a new trial was warranted, where other witnesses described the crime in sufficient detail such that the daughter's testimony was not indispensable to the case).

Finally, as noted above, the fact that Dye changed his story after a brief recess with the interviewer was a fact known to petitioner's trial counsel before the trial of this case.  Anything said to Dye to get him to change his story is more in the nature of *Giglio* material than it is *Brady* material.  The standard for reviewing *Giglio* error (*i.e.*, a violation of the duty to reveal the existence of a "deal" with a witness, or some false testimony of a witness regarding his credibility that was known to the prosecutor to be false) requires a defendant to show a reasonable likelihood that the violation affected the judgment of the jury. *See Occhicone v. Crosby*, 455 F.3d 1306, 1308-09 (11th Cir. 2006).  No reasonable likelihood arises that this evidence, if it existed and was presented to the jury, would have affected the judgment of the jury in any way.  In fact, it is harmless beyond a reasonable doubt.  Consequently, this claim lacks merit.

Therefore, the motion to take sworn testimony from Dye (Doc. #35) is due to be denied as well and the court will enter a separate order to that effect.

Petitioner also claims that the court failed to fully address Boyd's claim that the prosecution was required to produce a "Nagra" tape to trial counsel. He also claims that the State "indicated" it had evidence of other threats made to various witnesses in the case, which it failed to produce to petitioner. (Claim II(F)). This claim was addressed, at least in part, by the court in its earlier Memorandum Opinion. (*See* Doc. #66, Memorandum Opinion, at 176-77). Besides noting that the claim was procedurally barred, the court stated in a footnote:

> Even if this claim had been considered in State court, it would not have resulted in any relief. The tape was never used by the State in its prosecution of Boyd, and a tape of Boyd threatening a witness in the case can hardly be considered *Brady* or *Giglio*-type evidence. Likewise, petitioner does not provide any information concerning how the State "indicated" to the defense that it had more such evidence. As a consequence, the claim is too vague to grant relief.

(Doc. #66, Memorandum Opinion, at 177 n.34). Thus, this court addressed this claim and found it to be without merit. The court stands by its earlier analysis of this claim.

Petitioner also claims that the court erred in not ruling that he should be allowed to take the testimony of Jeffrey Honeycutt. According to petitioner, Honeycutt would testify – contrary to the testimony of Quintay Cox at trial that

Boyd taped the victim's legs to a park bench on the night of the murder – that Cox told him that he and Boyd stood back while Marcel Ackles and Shawn Ingram taped the victim's legs to the bench and burned him alive. Honeycutt would testify that Cox never said anything to him about Boyd taping the victim's legs.

Petitioner further states that while Honeycutt initially expressed a willingness to provide a sworn statement to the court concerning this information, he since has refused on the ground that he is afraid he might be retaliated against by the State. According to petitioner, this evidence is relevant because, if Boyd was not an active participant, then his execution is unwarranted under *Enmund v. Florida*, 458 U.S. 782 (1982).[2]

One problem with this testimony is that no mention of it was made in Boyd's § 2254 petition (Doc. #1) or his amended § 2254 petition (Doc. #11). The first time petitioner mentioned the existence of Mr. Honeycutt's information is in petitioner's reply to respondent's motion for summary judgment (Doc. #28 at 45) and amended response (Doc. #31 at 46-47). Petitioner states, in his motion to take

---

[2] The court notes that petitioner claims that this evidence is important because, despite insisting he has a valid alibi defense, this testimony might keep petitioner from being executed if he were to be convicted in a retrial. Petitioner asserted in his petition that trial counsel was ineffective for presenting the mutually exclusive defenses of alibi and coercion. The court cannot discern why the presentation by trial counsel of the mutually exclusive defenses of alibi and coercion was ineffective assistance, while the presentation of the mutually exclusive defenses of alibi and non-participation would not be.

Honeycutt's deposition, that Honeycutt met with Boyd's counsel in September 2005 and provided this information at that time.  (Doc. #39, Motion to Take Sworn Testimony of Jeffrey Honeycutt, at 2-3).   This meeting was a full month before respondent filed his responsive pleading to petitioner's amended petition for a writ of habeas corpus.  Despite this information, petitioner failed to file a motion to amend his habeas petition even though respondent did not file his brief regarding the motion for summary judgment until November 21, 2005.  Waiting until he filed his reply brief to bring this evidence to the attention of the court was improper.  *See United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (holding that a defendant waives a claim that he raises for the first time in his reply brief).  Consequently, even if a sworn statement of Honeycutt were obtained by petitioner, the admission of this "new" evidence as a basis for habeas relief was waived.

A new trial is warranted based on circumstances coming to light after trial only if the following five-part test is satisfied: (1) the evidence was in fact discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a different result.  *United States v. Lee*, 68 F.3d 1267

(11th Cir. 1995); *United States v. Thompson*, 422 F.3d 1285, 1294 (11th Cir. 2005).

Nowhere in any of his filings regarding Honeycutt does petitioner state when he first became aware of the statements allegedly made to Honeycutt by Cox. However, in his reply brief, petitioner states that Honeycutt was a trustee at the Talladega County Jail who shared a cell with Cox while Boyd and the co-defendants were awaiting trial and/or sentencing. (Doc. #28 at 46). Boyd's date of conviction was March 16, 1995. Thus, this information had been in existence for approximately ten years. Because petitioner has failed to state when this information first came to his attention, he has failed to demonstrate that he exercised due care to obtain it and make its existence known to the court. However, assuming that petitioner did, in fact, exercise due care, such testimony still would not be a basis for a new trial because it is merely impeaching the testimony of Cox. Evidence that would impeach a government witness, but which was not known to the government at the time of trial, must meet the five-part test set out above. *United States v. Garcia*, 13 F.3d 1464 (11th Cir. 1994). It does not.

In addition, this claim is unexhausted. It has never been presented to the State court in any Rule 32 proceeding. Rule 32.1(e), Ala.R.Crim.P., allows a defendant to seek relief from a conviction or sentence on the grounds of newly

discovered evidence such as this statement.   However, Boyd is procedurally

barred from asserting his claims in State court, pursuant to Rule 32.2(c) of the

Alabama Rules of Criminal Procedure, which provides, in part:

> The court shall not entertain a petition based on the
> grounds specified in Rule 32.1(e) unless the petition is
> filed within the applicable one-year period specified in
> the first sentence of this section, or within six (6) months
> after the discovery of the newly discovered material
> facts, ***whichever is later***; provided, however, that the
> one-year period during which a petition may be brought
> shall in no case be deemed to have begun to run before
> the effective date of the precursor of this rule, i.e., April
> 1, 1987.

Ala.R.Crim.P. 32.2(c) (emphasis added).   Petitioner could have and should have

presented this evidence to the State court but has never done so.   Because Rule

32.2(c)'s six-month limitations period[3] has expired, Boyd is barred from raising

the claim in State court.   Accordingly, the claim is procedurally defaulted for

purposes of federal habeas review.   *See Henderson v. Campbell*, 353 F.3d 880,

891 (11th Cir. 2003) (holding that where habeas petitioner who asserts

unexhausted claims is "barred by firmly established and consistently applied

procedural rules from raising them, the claims are procedurally defaulted"

(footnote omitted)).

---

[3] The six-month limitation period is measured from September 2005 when petitioner's counsel interviewed Honeycutt.

In *Castille v. Peoples*, 489 U.S. 346 (1989), the Supreme Court held that a federal habeas court could hold claims to be procedurally defaulted and therefore exhausted "if it is clear that [the] claims are procedurally barred under [state] law." 489 U.S. at 351.  The Supreme Court further has held that the rule requiring state court procedural bar holdings to be clearly and expressly stated "is simply inapplicable in a case such as this one, where the claim was never presented to the state court." *Teague v. Lane*, 489 U.S. 288, 298-99 (1989).

In *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), the Court reiterated that the clear-expression rule  "does not apply if the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Thus, any issue unexhausted in State court for which an attempt to exhaust would result in a State procedural bar is also procedurally barred from relief in federal court pursuant to 28 U.S.C. § 2254(b)(1)(A).  *Accord Bailey v. Nagle*, 172 F.3d 1299 (11th Cir. 1999).  Consequently, this issue is also barred from consideration for this reason.  Therefore, the Motion to Take Sworn Testimony from Jeffrey Honeycutt (Doc. #39) is due to be denied, and will be accomplished by separate order.

Petitioner asserts also that the court failed to rule on his Motion for Discovery of Prosecution Files and Depositions of State Witnesses.  (Doc. #42). Even assuming petitioner's claims to be true–to the extent they are not directly contradicted by the record–petitioner has failed to assert any issue sufficient to survive summary judgment.  Therefore, this motion is due to be denied and will be done by separate order.  For the same reason, petitioner's Motion for an Evidentiary Hearing (Doc. #33) and Motion for Funds for Expert Services Pursuant to 21 U.S.C. § 848(q)(9) (Doc. #37) are due to be denied.  The court will enter a separate order to this effect.

In all other respects, the Court's Memorandum Opinion (Doc. #66) is AFFIRMED and petitioner's Motion to Alter Judgment is DENIED.

DONE this 22nd day of October, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE